# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KAREN M. SUBER,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **SECOND AMENDED COMPLAINT** |
| | § | |
| | § | |
| **v.** | § | Case No. 1:20-cv-8177 – AJN (Netburn) |
| | § | |
| **VVP SERVICES, LLC,** | § | |
| **VISION VENTURE PARTNERS, LLC,** | § | |
| **ELEVEN STONES, LP,** | § | |
| **AMIT RAIZADA,** | § | **JURY TRIAL DEMANDED** |
| **PROMETHEUS VENTURES, LLC, AND** | § | |
| **STRATTON SCLAVOS,** | § | |
| | § | |
| **Defendants.** | § | |

Plaintiff Karen Suber ("**Ms. Suber**" or "**Plaintiff**") by her undersigned attorneys, brings this action against Defendants VVP Services, LLC ("**VVP Services**"), Vision Venture Partners, LLC ("**Vision Venture Partners**"), Eleven Stones, LP ("**Eleven Stones**"), Amit Raizada ("**Mr. Raizada**" or "**Defendant Raizada**"), Prometheus Ventures, LLC ("**Prometheus Ventures**"), and Stratton Sclavos ("**Mr. Sclavos**" or "**Defendant Sclavos**" and collectively, with the other defendants, "**Defendants**"). This action centers on a cascade of economic and professional harms effected upon Plaintiff by Defendants' series of coordinated material misrepresentations, omissions, and falsehoods and fraudulent dealings upon which Plaintiff reasonably and justifiably relied to her detriment.

This Complaint details and exhibits, among other things, Defendants' violations of an employment contract that promised, among other inducements to performance, from the time of the Recruiting Period starting in June 2017, *see infra* ¶ 43, considerable equity under a

program that Plaintiff herself had been recruited to establish following her lucrative and promising career as a New York City attorney. Plaintiff seeks relief for economic and professional harms arising from her previous employment, including harms arising from civil rights violations and a defamatory smear campaign that negatively affected Plaintiff's professional standing after she voluntarily resigned from VVP Services upon learning that she had been lured to the job, in California, as part of Defendants' elaborate fraudulent scheme to misuse Plaintiff's skills for Defendants' pecuniary benefit and strategic advantage, all-the-while continuously denying Plaintiff the lucrative compensation on which she reasonably and justifiably relied as a result of Defendants' material misrepresentations, omissions, and falsehoods deliberately deployed to induce Plaintiff to accept employment as the Deputy General Counsel of VVP Services.[1]  In fact, Defendant Raizada, in a written communication, specifically told one African-American professional who had challenged Raizada's misconduct: "because you're a nigger."

**Corporate-Fraud and Conspiracy Substantiated, Generally**.  In the corporate-fraud and conspiracy connection, the pleadings set forth in this Second Amended Complaint are corroborated by certain allegations that materialized in an action brought by world-renowned professional basketball player and actor Ulrich "Rick" Fox ("**Rick Fox**" or "**Mr. Fox**"),[2] who,

---

[1] It is important to note at the outset that the pleadings in this Complaint reflect the culmination of almost three years of painstakingly methodical investigations on the part of Ms. Suber and others in respect of Defendants' conduct.  After all, Ms. Suber resigned from VVP Services, LLC on January 22, 2018 at approximately 9:30 a.m. pacific daylight time.  Yet, Ms. Suber did not file the initial complaint in this proceeding until almost three years later, on October 2, 2020.

[2] Mr. Fox is a professional basketball player who played with the Boston Celtics and the Los Angeles Lakers (including on three NBA-Championship teams with the Lakers) who has become a successful esports entrepreneur and entertainment and media personality.

on or about September 30, 2019, sued certain defendants, including at least some of the Defendants in this case, for fraud, breach of contract, breach of the duty of good faith and fair dealing, conspiracy, defamation, intentional infliction of emotional distress, invasion of privacy, and unjust enrichment, alleging a pattern of financial crime that defrauded Fox and the New York Yankees ("**New York Yankees**" or "**Yankees**"), among others, and that included illicit drug purchases and "parties." *See infra* ¶¶ 57, 58, and 59.

## I.      PRELIMINARY STATEMENT

1.      Plaintiff Ms. Suber is a Harvard Law School graduate (*cum laude*) and a senior mergers and acquisitions attorney who enjoyed practicing law at prestigious law firms in New York, New York, with eleven years at Skadden, Arps, Slate, Meagher & Flom LLP and Gibson, Dunn & Crutcher LLP.  She adapted in her practice the quantitative, analytical, and diplomatic gifts developed over decades since earning the Masters of Applied Mathematics from the University of Michigan and her Bachelors in Mathematics and Economics from Alma College.

2.      In June of 2017, while at Gibson, Dunn & Crutcher LLP, Ms. Suber learned of what appeared to be a potentially lucrative opportunity working as the lead transactional attorney for a new venture, Defendant VVP Services, with current and future investments dedicated (or to be dedicated) to the esports, entertainment, hospitality, and real estate industries. During the following month, Ms. Suber participated in interviews with Mr. Raizada and other principals of VVP Services regarding the nature of the proposed employment. Mr. Raizada and others represented to Ms. Suber that (i) Vision Venture Partners, VVP Services and their related entities had been established by individuals with a successful track record of starting new companies, (ii) the mission of Vision Venture Partners and VVP Services was to become a major player in the burgeoning e-sports field as well as the entertainment, hospitality

and real estate spaces, (iii) Defendants then-possessed large amounts of capital to use to grow the venture; and (iv) Ms. Suber would take the lead on structuring and documenting additional fundraising efforts, complex commercial transactions such as joint venture agreements and other forms of collaboration agreements, esports player contracts, and sponsorship and branding arrangements, among other similar types of agreements, for the new venture and its portfolio companies as well as direct investments with strategic partners.

3.      The proposed job paid significantly less than Ms. Suber's job at Gibson, Dunn & Crutcher LLP and would require relocation from New York to California. Mr. Raizada and others represented to Ms. Suber that these costs would be more than offset by an equity stake in the new venture (including existing portfolio companies) and contemplated future ventures. Ms. Suber was told she herself would be responsible for structuring and drafting the equity program pursuant to which she would acquire this stake.

4.      In August 2017, Ms. Suber received and accepted an offer of employment from VVP Services at a substantially lower salary and subsequently incurred significant expense relocating to California.

5.      Over the ensuing months, Ms. Suber would learn that all of these representations were false, and that Defendants never had any intention that Vision Venture Partners, VVP Services or their affiliated companies would operate as legitimate businesses. Indeed, as Ms. Suber would learn, Defendant Raizada had a history of forming fraudulent businesses. In fact, Defendants never intended to structure the promised equity program, which was only ever expressly discussed from time to time, because Defendants Raizada and Sclavos deliberately prioritized other work projects over the drafting and implementation of the equity program. Because Vision Venture Partners, VVP Services and their affiliates comprised a fraudulent

enterprise, the VVP Fraudulent Enterprise (as defined *infra* ¶ 19), Ms. Suber did not end up performing the work Defendants had represented that Ms. Suber would perform.

6.      During her employ, Ms. Suber was also subject to discriminatory and abusive behavior by Mr. Raizada (acting with and through Eleven Stones, Vision Venture Partners and VVP Services and on behalf of Mr. Sclavos), including verbal threats (and including various times at which Defendant Raizada was in close physical proximity to Ms. Suber so as to be physically threatening and intimidating), exclusion from meetings, prohibition from direct contact with important clients of color because of Mr. Raizada's belief that Ms. Suber's allegiances were to those clients rather than to him, and other disparate treatment from other employees that she believes was the result of Mr. Raizada's discriminatory beliefs. Mr. Raizada would eventually face calls from a prominent esports company to resign as his schemes came to light amidst his documented, targeted, written usage of a racial epithet against African-American people and captured in national headlines, and subsequent litigation against Mr. Raizada by others confirmed that Ms. Suber's experience was part of a pattern.

7.      As a result of the misrepresentations and the discriminatory behavior, Ms. Suber resigned from VVP Services in January 2018. Subsequent to her resignation, Defendant Sclavos made defamatory statements to important individuals in Ms. Suber's line of work indicating that Ms. Suber had been let go because of performance issues rather than having resigned for cause as discussed herein.

8.      Plaintiff has sustained damages, harm and injury as a result of Defendants' conduct, and Plaintiff hereby brings claims for:

a.      fraud in the inducement under New York State law;

b.      fraud in the inducement under California State law;

5

c.      intentional misrepresentation in violation of California Civil Code Sec. 1710(1);

d.      negligent misrepresentation in violation of California Civil Code Sec. 1710(2);

e.      intentional misrepresentation by concealment in violation of California Civil Code Sec. 1710(3);

f.      intentional misrepresentation by promissory fraud in violation of California Civil Code Sec. 1710(4);

g.      negligent misrepresentation under New York state law;

h.      violation of California Labor Code Sec. 970;

i.      breach of contract under California State law;

j.      wrongful termination, via constructive discharge, of her employment, in violation of public policy under California State law;

k.      defamation under New York State law;

l.      discrimination in violation of 42 U.S.C. §1981;

m.      unfair business practices under California Civil Code Sec. 17200;

n.      civil conspiracy under New York State law; and/or

o.      civil conspiracy under California State law.


9.      Plaintiff Ms. Suber's allegations are based upon personal knowledge as to her own acts and observations and upon information and belief as to all other matters alleged herein. Plaintiff and each of the Defendants may be referred to herein as a "**Party**" and, collectively, as the "**Parties**."

## II.    <u>THE PARTIES</u>

10.    Plaintiff Ms. Suber is a resident of New York, New York.  Ms. Suber is biracial being African American and Caucasian.

11.    **VVP SERVICES, LLC** is a Florida limited liability company that has or has had at all times relevant to this complaint (1) principal places of business at (a) 3801 Collins Avenue, Apartment No. 1205, Miami Beach, Florida, 33140, and (b) 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210, and (2) mailing addresses of (a) 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210, and (b) 9663 Santa Monica Blvd. No. 661, Beverly Hills, California 90210.  The manager of VVP Services is Vision Venture Partners, LLC.  *See* **Exhibit 1(A) – (F)**.[3]  VVP Services cannot act without the approval, or a form of corporate action, by Vision Venture Partners.

12.    **VISION VENTURE PARTNERS, LLC** is a Florida limited liability company that at all times relevant to this complaint has or has had principal places of business at (1) 3801 Collins Avenue, Apartment No. 1205, Miami Beach, Florida, 33140, (2) 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210, and (3) 110 Washington Avenue, No. 2409, Miami Beach, Florida, 33139.  Prior to November 1, 2019, the manager of Vision Venture Partners was listed as SBV, LLC, a Florida limited liability company, and from and after November 1, 2019, and at least through July 25, 2020, the manager of Vision Venture Partners is listed as Ravi Srivastava, the brother-in-law of Amit Raizada. *See* **Exhibit 2(A)-(F)**. *See also* https://www.vvpllc.com/ (last visited on April 2, 2019, but on March 10, 2021, noted as "ha[ving] been disabled") (the "**VVP Website**").[4]

---

[3] The contents of all Exhibits are incorporated herein by reference as if expressly stated herein.

[4] As of August 20, 2020, the VVP Website appears to be no longer accessible through the foregoing URL or website address.  However, the VVP Website was accessible as of the date

(1)     According to the VVP Website, the portfolio of Vision Venture Partners consists (or consisted) of companies "setting the standards in esports, digital entertainment, and lifestyle food and beverage. When we invest, we are invested – our hands-on approach ensures each portfolio company receives the resources they need to win."  *See* **Exhibit 3**.

(2)     According to the VVP Website and other publicly available information, the portfolio of Vision Venture Partners includes direct and/or indirect investments in the following entities or "portfolio companies":

(a)  Vision Esports LP, a Florida limited partnership ("**Vision Esports**" or "**Vision Esports LP**"), whose general partner is ESPT, LLC.[5,6]  *See* **Exhibit**

---

listed above.  In addition, the LinkedIn page of Vision Venture Partners continues to make reference to the VVP Website and its URL.  Please see **Exhibit 4** attached hereto, which shall be referred to herein as the "**LinkedIn Page**."

[5] **ESPT, LLC**, is a Florida limited liability company that has or has had at all times relevant to this Complaint (1) principal places of business at (a) 5875 Collins Avenue, Penthouse 1, Miami, Florida, 33139, and (b) 110 Washington Avenue, No. 2409, Miami Beach, Florida, 33139, and (2) mailing addresses at (a) 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210, and (b) 110 Washington Avenue, No. 2409, Miami Beach, Florida, 33139.  *See* SUN.BIZ.ORG, DIVISION OF CORPORATIONS, AN OFFICIAL STATE OF FLORIDA WEBSITE, available at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityNam e&directionType=Initial&searchNameOrder=ESPT%20L170000094840&aggregateId=flal-l17000009484-17de8275-a40d-4ad4-aef6-3208e955f27a&searchTerm=espt&listNameOrder=ESPT%20L170000094840    (last    visited March 10, 2021).

[6] Note: **PROMETHEUS VENTURES** is the manager of **ESPT**, and **ESPT** is the general partner of **VISION ESPORTS, LP**, a Florida limited partnership.  Note: From the website of the Division of Corporations of the State of Florida, it is clear that **ESPT** is the general partner of two other Florida limited partnerships, **VISION ESPORTS II, LP** and **VISION ESPORTS III, LP** (each of which is referenced in this Complaint and in the Fox Complaint (as defined in ¶ 57, *infra*)).  *See* SUN.BIZ.ORG, DIVISION OF CORPORATIONS, AN OFFICIAL STATE OF FLORIDA WEBSITE available at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName &directionType=Initial&searchNameOrder=VISIONESPORTSII%20A170000006700&aggrega teId=domlp-a17000000670-4675dec0-3309-4a8a-8da3-

**5(A)-(D)**.[7]

(b) Twin Galaxies, LLC, a Florida limited liability company ("**Twin Galaxies**"), whose name was changed to EF Esport, LLC on November 12, 2019.

(c) Echo Fox LP, a Florida limited partnership ("**Echo Fox**");

(d) HD Films, LLC d/b/a Vision Entertainment, a Florida limited liability company ("**HD Films**"), which, on or about August 3, 2018, was merged with and into Twin Galaxies, with Twin Galaxies as the entity surviving the merger.[8]

(e) According to the VVP Website and publicly available information, the New York Yankees are an investor in Vision Esports. *See, e.g.*, **Exhibit 6**. At

---

1a89a08bbf3e&searchTerm=VISION%20ESPORTS&listNameOrder=VISIONESPORTS%20A
170000000260                                                                                                       and
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName
&directionType=Initial&searchNameOrder=VISIONESPORTSIII%20A180000000170&aggreg
ateId=domlp-a18000000017-fdd909ee-cff9-4d98-93ef-
21c90c9cd06e&searchTerm=VISION%20ESPORTS&listNameOrder=VISIONESPORTS%20A
170000000260, respectively (last visited March 10, 2021).

[7] **VISION ESPORTS, LP** is a Florida limited liability company, that has or has had at all times relevant to this complaint (1) principal places of business at 110 Washington Avenue, No. 2409, Miami Beach, Florida, 33139, and 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210. Stratton Sclavos formed or caused to be formed Vision Esports on or about January 24, 2017.

[8] **HD FILMS, LLC** d/b/a as Vision Entertainment, which was a Florida limited liability company that appears, from the website of the Division of Corporations of the State of Florida, to have been merged with and into Twin Galaxies, LLC on or about August 3, 2018 and thereafter ceased to exist as an entity; and Twin Galaxies, LLC, a Florida limited liability company. *See* Articles of Merger for Florida Limited Liability Company available at http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5
C2018%5C0808%5C00225969.Tif&documentNumber=L16000151560 (last visited March 10, 2021).

times relevant to this complaint, the VVP Website was accessible globally, including within the State of New York, and specifically, within this District. Plaintiff is informed that the VVP Website was designed under the direction of Defendants Sclavos and Raizada, working in coordination and concert, and Defendants Sclavos and Raizada approved the contents that was made available through the VVP Website.

(f)   In addition, according to publicly available information, the following organizations are also investors in Vision Esports or another affiliate or associate thereof:[9]

(1)   Evolution Media, the investment firm backed by CAA and private-equity fund TPG Growth;

(2)   Odell Beckham Jr.;

(3)   Kevin Durant and the Durant Company;

(4)   Rich Kleiman;

(5)   St. Louis Cardinals;

(6)   Shamrock Holdings, Inc., which was founded by the late Roy E. Disney in 1978 and serves as the investment vehicle for certain members of the Roy E. Disney Family ("**Shamrock Holdings**"); and

(7)   Seth Bernstein Capital Management, which was founded by Seth

---

[9] *See, e.g.*, https://www.crunchbase.com/organization/vision-esports-lp/investor_financials.

Bernstein ("**Mr. Bernstein**"); among others.[10]

13.     **ELEVEN STONES, LP** is a Florida limited partnership, and at all times relevant to this complaint had (1) a principal place of business at 5875 Collins Avenue, Penthouse 1, Miami, Florida, 33139, and (2) a mailing address of 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210.  The general partner of Eleven Stones is Everglades One, LLC, a Florida limited liability company, with an address of 1400 NE Woods Edge Circle, Lee's Summit, Missouri, 64064 ("**Everglades One**").  Everglades One has a principal place of business and mailing address of 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210, and the manager of Everglades One is Ravi Srivastava, the brother-in-law of Amit Raizada.  *See* **Exhibit 8(A)-(D)** and **Exhibit 9(A)-(B)**.  Eleven Stones is under the control and dominion of Amit Raizada, and Amit Raizada is the alter ego of Eleven Stones.  *See, e.g.*, **Exhibit 10** ("**Email Correspondence**").  *See also* ¶¶ 6, 102, 110, 118, 125, 140, 146 and 154 of the Fox Complaint.

14.     **AMIT RAIZADA** is a natural person with residences or last known residences at (1) 9400 Flicker Way, Los Angeles, California, 90069 and/or at an as-of-yet unascertained location in Newport Beach, California, and (2) 5875 Collins Avenue, Penthouse 1, Miami, Florida 33139.  Mr. Raizada was, and Plaintiff is informed that, Mr. Raizada continues to be, an officer and employee of Vision Venture Partners and VVP Services, with compensation taking the form of both cash and/or perquisites.

15.     **PROMETHEUS VENTURES, LLC** is a California limited liability company

---

[10] *See, e.g.*, the press releases included in **Exhibit 7(A)-(B)**.

with principal places of business at (1) 1305 Collingwood Place, Los Angeles, California, 90069, and (2) 335 North Maple Drive, Suite 353, Beverly Hills, California, 90210. Prometheus Ventures is the entity through which Stratton Sclavos holds his personal and business investments (e.g., his residence), and Mr. Sclavos is the manager of Prometheus Ventures. *See* **Exhibit 11(A)-(B)**. Prometheus Ventures is under the control and dominion of Stratton Sclavos, and Prometheus Ventures is the alter ego of Stratton Sclavos. Defendant Sclavos uses Prometheus Ventures for his personal and business expenses.

16.     **STRATTON SCLAVOS** is a natural person with a residence at 1305 Collingwood Place, Los Angeles, California, 90069.[11] Mr. Sclavos was, and Plaintiff is informed that, Mr. Sclavos continues to be, an officer and employee of Vision Venture Partners and VVP Services, with compensation taking the form of both cash and/or perquisites.

### III.     JURISDICTION AND VENUE

17.     Jurisdiction of this action is proper pursuant to 28 U.S.C. §1332 based on

---

[11] In the initial Complaint [D.E. 1], Plaintiff plead the following: "Through official records filed with the Recorder's Office of Los Angeles County, Plaintiff is informed that Defendant Sclavos lost his home (located at the addressed referenced *supra* this paragraph 16) to foreclosure in or about June 2020. However, Plaintiff is informed that Defendant Sclavos continues to reside in the State of California." While the foregoing is true, after the Complaint [D.E. 1] was filed and during the time in which Plaintiff was endeavoring to locate Sclavos, Plaintiff learned that Sclavos filed suit against certain parties (who, ironically, Plaintiff is informed, are associates of Defendant Raizada) for wrongful foreclosure, among other causes of action. As a result of the settlement of that suit, Sclavos was able to retain an interest in the residence. See Prometheus Ventures, LLC and Sclavos v. CNB Default Loan Acquisitions, LP, et al, Case No. 208CV01332 (Superior Court, Los Angeles County, West District) (Sept. 18, 2020). The complaint (the "**Prometheus-Sclavos Foreclosure Complaint**") (and the response thereto (the "**Foreclosure Motion to Dismiss**")) in the Prometheus Ventures / Sclavos matter will be provided to the Court upon the request and at the discretion of the Court. The Foreclosure Motion to Dismiss supports the dire financial straits and distress of Sclavos, evidencing, among other things, an IRS tax lien in excess of $2,000,000. The Prometheus-Sclavos Foreclosure Complaint and the Foreclosure Motion to Dismiss are attached hereto as **Exhibit 40** and **Exhibit 41**.

diversity of citizenship of the Parties and an amount in controversy in excess of $75,000.00.

    a.    Plaintiff Ms. Suber is a citizen of New York, and she resides within this District.

    b.    Defendants are citizens of and have principal places of business in one or both of California and/or Florida as articulated in *supra* ¶¶ 11 – **Error! Reference source not found.**.

18.    This Court has personal jurisdiction over the Defendants pursuant N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(2) and 302(a)(3)(i)-(ii)).   This Court has personal jurisdiction over the Defendants, because, among other sufficient contacts, Defendants engaged in purposeful conduct aimed at, and within, New York, New York (including within this District) and such purposeful conduct caused harm within New York, New York (including within the District) to Plaintiff Ms. Suber and other third parties:   (a) Defendants have had substantial business contacts throughout New York, New York (including this District), including through (i) Defendants' solicitation of investment funds, and (ii) Defendants' marketing, offering, sale and distribution of securities therein (in apparent violation of The Martin Act, N.Y. Gen. Bus. Law, Article 23-A, §§ 352 – 353) ("**<u>The Martin Act</u>**" or "**<u>New York BlueSky Laws</u>**"); (b) Defendants have committed, or caused to be committed, purposeful and overt acts throughout New York, New York (including this District); and (c) Defendants caused Plaintiff harm, as described herein, in New York, New York (including this District).   In particular, (x) Defendants engaged, or caused to be engaged, the legal recruitment firm of Crossdale Paul, *see infra* ¶ 29, in search of a lead transactional attorney for VVP Services and certain of its related companies; (y) Defendants made, or caused to be made, misrepresentations and omissions of material facts, directly and through Crossdale Paul, to Ms. Suber while Ms. Suber was in New York and within this District; and (z) Ms. Suber ultimately relied on those misrepresentations

and omissions of material facts to her detriment while she resided in New York and within this District.[12]  As detailed below, Defendants, acting individually and in concert, deliberately and purposefully availed themselves of the privilege of conducting activities within the State of New York (and within this District).

19.     As explained in detail in a lawsuit filed on or about September 30, 2019, by Rick Fox in the Superior Court of California for the County of Los Angeles, which is attached hereto as **Exhibit 12** (the "**Fox Complaint**") (as further discussed in *infra* ¶¶ 25-26, 57 -59, 63-64, 76, 95, 165 and 177),[13] Defendants Raizada and Sclavos, themselves and through the other four Defendants Eleven Stones (the alter ego of Defendant Raizada), Prometheus Ventures (the alter ego of Defendant Sclavos), Vision Venture Partners, and VVP Services, were in the process of constructing their multi-year and expansively-scoped fraudulent scheme and enterprise from at least as early as 2016 (the "**VVP Fraudulent Enterprise**"), which VVP Fraudulent Enterprise (including the deliberate concealment thereof) is continuing. The Defendants established the

---

[12] Note that Defendant Raizada represented to Ms. Suber that he owned a townhouse in the West Village in New York, New York.  However, given Defendant Raizada's misrepresentations and that Ms. Suber has not been able to find a real property in New York, New York registered in the name of Mr. Raizada or in the name of one of his known holding companies, Ms. Suber reserves the right, pending additional diligence regarding Mr. Raizada, to assert that the Court has jurisdiction over Mr. Raizada pursuant to N.Y.C.P.L.R. § 302(a)(4).

[13] *Rick Fox, 1744 Ventures, LLC and Axin Digital Sports Group, LLC* v. *Amit Raizada, Eleven Stones, LP, Stratton Sclavos, Ravi Srivastava, Vision Venture Partners, LLC and VVP Services, LLC and Does 1 through 10* (Case No. #19STCV34802, September 30, 2019).  *See also* GlobeNewswire, "In Stunning Lawsuit Former NBA Star and Echo Fox Founder Rick Fox says Racism, Deception, and Fraud By Partners Amit Raizada and Stratton Sclavos Brought Down the Esports Powerhouse" (October 3, 2019) at https://markets.businessinsider.com/news/stocks/in-stunning-lawsuit-former-nba-star-and-echo-fox-founder-rick-fox-says-racism-deception-and-fraud-by-partners-amit-raizada-and-stratton-sclavos-brought-down-the-esports-powerhouse-1028575313# (last visited March 10, 2021).

VVP Fraudulent Enterprise for a specific common purpose, i.e., to enrich themselves at the expense of third-party investors in portfolio companies affiliated with Vision Venture Partners and VVP Services through Defendants' coordinated and concerted efforts.  Illustrations of the VVP Fraudulent Enterprise are presented in **Exhibit 13(A)-(C)** (the "**Fraudulent Enterprise Diagrams**").[14] In addition, the VVP Fraudulent Enterprise comprises a civil conspiracy under the laws of the State of New York and the State of California (the "**VVP Conspiracy**").  *See, e.g.*, ¶¶ 173-185 of the Fox Complaint. All of the Defendants are inextricably linked to one another through the VVP Fraudulent Enterprise and the VVP Conspiracy, with the actions of the Defendants connected; that is, actions of a Defendant in furtherance of the VVP Fraudulent Enterprise and the VVP Conspiracy are attributed to all of the Defendants. Significantly, Defendants' affirmative acts of concealment of the VVP Fraudulent Enterprise and the VVP Conspiracy continued through the filing of the Fox Complaint, in or about September 30, 2019, and at least through November 2020.  Plaintiff is informed that Defendants are continuing to attempt to conceal their fraudulent enterprise and conspiracy.[15]

20.    As part of the VVP Fraudulent Enterprise and the VVP Conspiracy, and for a substantial period of time, Defendants Raizada and Sclavos, with and through the four entity Defendants (and the employees and agents thereof), marketed, offered, sold, and distributed private, unregistered securities, in one or more investment vehicles (entities) that Defendants

---

[14] **Exhibit 13(A)-(C)** are being filed separately.

[15] Plaintiff asserts that the at the absolute earliest that the applicable statute of limitations could have begun to run on any of the causes of action plead herein is September 30, 2019 upon the filing of the Fox Complaint.  That said, Plaintiff is informed that the affirmative and public acts of one or more Defendants in furtherance of the VVP Conspiracy have continued, and consequently, the statute of limitations has not begun to run on any of the causes of action plead herein.

created, to natural persons and entities in the State of New York, including within this District

("**New York Securities Marketing, Sale and Distribution**"). In engaging in the New York

Securities Marketing, Sale, and Distribution, Defendants purposefully availed themselves of

the New York BlueSky Laws. Defendants marketed, offered, sold, and distributed the securities

themselves and through **several agents**, each of which agent acted within the State of New

York and within this District.  Those several agents, include, among others, Mr. Bernstein and

his financial management firm, Seth Bernstein Capital Management and Mohammad Ali

Rashid ("**Mr. Rashid**").[16]

21.     **Defendants Raizada and Sclavos Acting in Coordination and Concert and**

**within New York (Including the District)**. In connection with and in furtherance of the New

York Securities Marketing, Sale, and Distribution, the VVP Fraudulent Enterprise and the VVP

Conspiracy, Plaintiff Ms. Suber is informed that, Defendants Raizada and Sclavos, acting in

concert and coordination, engaged in the following activities throughout the course of 2017 and

at least through February 2018:

a.     From in or about March 2017 to in or about October 2017, Defendant Sclavos

was frequently in communication via electronic mail and via telephone with

representatives of the New York Yankees and Mr. Bernstein in order to negotiate and

finalize certain material documents as between an entity involved in the VVP Fraudulent

---

[16] Ms. Suber is informed that, from within the State of New York and within this District, Mr. Rashid, (A) as an agent of Defendants Raizada and Sclavos, acting for themselves and for Eleven Stones and Prometheus Ventures, and (B) as an agent of Vision Venture Partners and VVP Services, engaged in New York Securities Marketing, Sale and Distribution and the marketing of securities to natural persons and entities outside of the State of New York, including Shamrock Holdings, which has a principal place of business in the State of California. Mr. Rashid's activities were in furtherance of the VVP Fraudulent Enterprise and the VVP Conspiracy.

Enterprise and an entity controlled by the New York Yankees, all in connection with marketing, offering, sale, and distribution of private securities, and the solicitation of funds from the New York Yankees for investment, in a Vision Esports Entity.  During this time, Defendant Sclavos initiated, convened, and participated in meetings with representatives of the New York Yankees and/or Mr. Bernstein in New York (including within this District) in furtherance of the New York Securities Marketing, Sale, and Distribution.[17]

b.       In or about mid-September 2017, Defendants Raizada and Sclavos caused certain agreements in furtherance of the New York Securities Marketing, Sale and Distribution to be drafted and, then, distributed to the New York Yankees.

c.       Throughout the latter half of September 2017, Defendants Raizada and Scalvos caused the New York Yankees Agreements to be negotiated, finalized and executed, and then, those Defendants caused the finalized and executed documentation to be distributed to the New York Yankees.  See **Exhibit 14** for two of the agreements, each of which is an agreement with a _multi-year term_ (the "**New York Yankees Agreements**").[18]

d.       On or about October 2, 2017 and upon execution of the New York Yankees Agreements, among other documents, Mr. Sclavos caused one or more representatives of the New York Yankees to wire funds for their investment in a Vision Esports Entity from an account at a financial institution believed to be in New York to an account belonging to Vision Venture Partners and/or VVP Services located outside of New York.

---

[17] See the Detailed Resignation Letter (**Exhibit 24**).

[18] **Exhibit 14** is being filed separately.

e.      Defendant Raizada coordinated the funding plan for Vision Esports, LP as evidenced by the email correspondence in **Exhibit 15 (the "Funding Plan Email")**. [19] In the Funding Plan Email, Defendant Raizada is clearly coordinating the funding of Vision Esports, LP with an agent (whose name and email address are readily apparent therein and shall be referred to herein as "**JG**") acting on behalf of Defendants Raizada, Sclavos, Vision Venture Partners, and VVP Services.   JG, at times relevant to this complaint, was located in New York (including within this District), JG was an investment banker; and JG used his connections to help Defendants Raizada and Sclavos market, offer, sell and distribute securities, including as part of the New York Securities Marketing, Sale and Distribution.

f.      Defendant Raizada was at the center of marketing the securities of Vision Esports, LP to the New York Yankees, among other investors within New York (including within this District).  *See, e.g.,* **Exhibit 16**, which is a tweet from Raizada in which he exclaims, "Today is a great day for Vision Venture Partners" as he announces the investment by the New York Yankees in Vision Esports, LP."  *See also, e.g.*, the various press releases relating to the investment by the New York Yankees in **Exhibit 17 (**the "**New York Press Releases**"). Defendant Raizada's name is referenced throughout, *see, e.g.*, "Prominent VVP Partner Amit Raizada Invests in Team Echo Fox," page 1 of the New York Press Releases.[20] Consider also the statements in "The Growth of Esports Business:  Yankees Buys Equity in Vision Esports," pages 4 - 5 of

---

[19] **Exhibit 15** is being filed separately.

[20] ("Amit Raizada and his team at VVP are not the only ones who are showing an interest in Echo Fox's potential for success.  The New York Yankees have recently made an equity investment in Echo Fox's parent company.").

the New York Press Releases in **Exhibit 17**.  ('Yankees Sign with Rick Fox & Amit Raizada" …').  Furthermore, consider the statements in "Blurring the Line Between the Virtual and the Real Worlds," pages 6-8 of the New York Press Releases in **Exhibit 17**.[21]

g.      Defendant Sclavos was at the center of marketing the securities of Vision Esports, LP to the New York Yankees, among other investors within New York (including within this District).  See the information contained in the New York Press Releases.

22.     **Mr. Rashid, as an Agent of Defendants Acting within New York (Including the District)**.  In connection with and in furtherance of the New York Securities Marketing, Sale and Distribution, the VVP Fraudulent Enterprise and the VVP Conspiracy, Ms. Suber is informed that, at the direction of Defendants Raizada and Sclavos, Mr. Rashid engaged in the following activities throughout the course of 2017 and at least through February 2018:

a.      From his office in New York and from within this District, Mr. Rashid solicited funds from natural persons and entities in New York for investment in one or more of the Vision Esports Entities.

b.      From his office in New York, Mr. Rashid courted the investment professionals employed by Shamrock Holdings, including Mr. Robbins (as defined and discussed *infra* ¶¶ 68-69, 77-78 and 164-165), and Mr. Rashid invited one or more of those investment professionals to meet him at the offices of Vision Venture Partners and VVP Services, then-located in Beverly Hills, California in fall 2017 (in or about October 2017) in order to encourage the investment by Shamrock Holdings in one or more Vision Esports

---

[21] ("There's a whole new ballgame in town and some of the biggest players in more established realms of sporting activity have been quietly stepping up to the plate. While they are not the first to plunge into the world of online sports, the Yankees certainly made a huge splash when they recently announced that they were investing in Rick Fox and Amit Raizada's enterprise – a diversified eSports holding company known as Vision Esports.")

Entities.

c.  Mr. Rashid engaged in the financial modeling that was used to produce financial metrics that were included in the materials used in the New York Securities Marketing, Sale. and Distribution, including term sheets and information memoranda / private placement memoranda.

23.  **Mr. Bernstein, as an Agent of Defendants Acting within New York (Including the District)**.  In connection with and in furtherance of the New York Securities Marketing, Sale and Distribution, the VVP Fraudulent Enterprise and the VVP Conspiracy, Plaintiff is informed that, at the direction of Defendants Raizada and Sclavos, Mr. Bernstein engaged in the following activities:

a.  Mr. Bernstein, solicited funds from natural persons and entities in New York (including within this District), including the New York Yankees, from the beginning of 2017 at least through February 2018.[22]

b.  From within New York (including within this District), Mr. Bernstein offered guarantees to certain Preferred Investors who invested funds in one or more Vision Esports Entities.  *See* discussion of Preferred Investors *infra* ¶ 68.  See also the Detailed Resignation Letter (**Exhibit 24**).

c.  Mr. Bernstein conferred and coordinated with Defendants Raizada and Sclavos regarding the New York Securities Marketing, Sale and Distribution.

24.  Through marketing, offering, sale, and distribution of securities, including the New York Securities Marketing, Sale, and Distribution, Defendants raised $38 million (the

---

[22] *See e.g.*, **Exhibit 18** (Email correspondence from Mr. Bernstein in respect of the New York Yankees).

"**$38 Million Fundraise**").  A material portion of the resulting $38 Million Fundraise came from persons in the State of New York (including within this District), including, among other natural persons and entities, the New York Yankees, Mr. Bernstein, Odell Beckham, Jr., Kevin Durant and Rich Kleiman as has been disclosed in the public domain.  *See, e.g.*, **Figure 1** of the Fraudulent Enterprise Diagrams (contained in **Exhibit 13(C)**).[23]

25.     As plead by Mr. Fox in the Fox Complaint and as known via information in the public domain, Defendant VVP Services "was established to provide shared services to various entities within the VVP investment world, including Echo Fox, Twin Galaxies, VVP and others," and including investment vehicles such as Vision Esports, LP, Vision Esports II, LP and Vision Esports III, LP (the "**Vision Esports Entities**"), which Defendants Raizada and Sclavos caused to be created.  (See, e.g. ¶¶ 66, 162 of the Fox Complaint.)  Among the services provided by VVP Services was the New York Securities Marketing, Sale, and Distribution on behalf of one or more Vision Esports Entities.  As equity holders in, and high-level officers of, Vision Venture Partners and VVP Services, Defendants Raizada and Sclavos led the New York Securities Marketing, Sale, and Distribution conducted through VVP Services. (See, e.g., ¶¶70, 75, 78, 82, 83, 85, 169 of the Fox Complaint.).   Electronic mail correspondence, text correspondence, telephone call records and expenses (including, among others, expenses for private and commercial air travel) of VVP Services support the foregoing, i.e., that Defendants Raizada and Sclavos, through Vision Venture Partners and VVP Services, reached into the State of New York  and within this District and engaged in the New York Securities Marketing, Sale and Distribution, among other business transactions in the State of New York (including within

---

[23] For additional pleadings about, and insights into the VVP Fraudulent Enterprise and the VVP Conspiracy, *see* **Exhibit 24**, the Detailed Resignation Letter, as defined and discussed in *infra* ¶ 56.

this District).

26.     Given the organization structure which is described in the Fox Complaint and pictured on page 1 of the Fraudulent Enterprises Diagrams, VVP Services, as an entity, could not have acted without approval by a corporate action of Vision Venture Partners.  Vision Venture Partners, as described in the Fox Complaint and indicated on page 1 of the Fraudulent Enterprises Diagrams, was controlled by Defendants Raizada and Sclavos with and through Eleven Stones and Prometheus Ventures, respectively.

27.     **Defendants Vision Venture Partners and VVP Services Acting Within New York State (Including the District)**.  Vision Venture Partners and VVP Services maintained a website, and continue to maintain a current presence on the internet, that allowed them to further the New York Securities Marketing, Sale, and Distribution as well as other aspects of the VVP Fraudulent Enterprise and VVP Conspiracy, and such current presence is readily accessible in the State of New York.

28.     Venue is properly laid in this District pursuant to 28 U.S.C.A. §1391(b)(2) for the reasons discussed *supra* ¶¶ 17-21.g (and throughout this Second Amended Complaint).

## IV.     RELEVANT FACTS

### DEFENDANTS INDUCE PLAINTIFF MS. SUBER TO JOIN THEIR VENTURE THROUGH FRAUDULENT MISREPRESENTATION OF THEIR INTENTIONS, FINANCIAL HEALTH, AND THE NATURE OF PLAINTIFF MS. SUBER'S EMPLOYMENT

29.     On or about June 27, 2017, Ms. Suber learned through a highly reputable New York-based recruiting firm, Crossdale Paul LLC ("**Crossdale Paul**"), founded and led by two Harvard Law School graduates, about an opportunity to serve as the lead transactional attorney for VVP Services and certain of its affiliates. The then-General Counsel of VVP Services,

David Diamond, Esq., also a graduate of Harvard Law School ("**Mr. Diamond**"), with the approval of Defendants Raizada and Sclavos, had engaged Crossdale Paul to recruit an experienced attorney to serve as the lead transactional attorney for VVP Services.[24]

30.     Between June 27, 2017, and July 3, 2017, Ms. Suber had a number of conversations with the principals at Crossdale Paul. During those conversations, Crossdale Paul served as the intermediary between Ms. Suber and representatives of VVP Services, including Mr. Diamond. Among other things, Crossdale Paul informed Ms. Suber on multiple occasions that the partners at VVP Services had informed Crossdale Paul that the partners at VVP Services then-possessed a great deal of capital available and at their disposal to invest in the esports, entertainment, hospitality, and real estate industries.

31.     On or about June 29, 2017, Mr. Diamond interviewed Ms. Suber via phone, and thereafter, Mr. Diamond, with the full knowledge and approval of Mr. Raizada, extended an invitation to Ms. Suber for an in-person interview at the offices of VVP Services located at 335 North Maple Drive, Beverly Hills, California, 90210 (the "**VVP Offices**"). This first in-person interview was held on July 5, 2017. Ms. Suber spent that entire day at the VVP Offices.

32.     During the interview, Defendant Raizada explained to Ms. Suber that VVP Services was formed and indirectly owned and controlled by (1) Mr. Sclavos through his special-purpose vehicle, Prometheus Ventures, (2) Mr. Raizada through his special-purpose vehicles, including Eleven Stones, (3) Rick Fox through another special-purpose vehicle, and

---

[24] Crossdale Paul had no knowledge of Defendants' fraudulent intent and was merely transmitting information provided to it by Defendants. Plaintiff is informed that one or more representatives of VVP Services was in regular contact with representatives of Crossdale Paul throughout the Recruiting Period and that a recruiting fee was due and payable to Crossdale Paul upon Plaintiff's acceptance of employment, and subsequently, such fee was actually paid by VVP Services.

(4) Jace Hall ("**Mr. Hall**"). Mr. Raizada noted that he and Mr. Sclavos **then-possessed** significant capital and liquidity that was "primed and ready" to invest in the portfolio companies then-held through one or more affiliates of VVP Services. In particular, Mr. Raizada discussed some of the sources of his and Mr. Sclavos's "significant fortunes," including from Mr. Sclavos's tenure as the Chief Executive Officer of VeriSign, Inc. ("**VeriSign**") and co-owner of the San Jose Sharks. Mr. Raizada assured Ms. Suber that he and Mr. Sclavos **then-possessed** substantial, personal fortunes that would be used as the bases for investment and building an "esports empire" to rival industry giants Riot Games and Activision Blizzard and a "real estate and hospitality empire" to rival that of his self-proclaimed "friend," Mr. Stephen M. Ross of The Related Companies and owner of the Miami Dolphins. Mr. Raizada also extolled the virtues of Mr. Sclavos as a leader in the tech industry who **then-possessed** extraordinarily sound business judgment that had been the foundation for value creation at VeriSign. Mr. Raizada went on to explain that such judgment is why he "chose" Mr. Sclavos to lead the businesses in which they would invest. Mr. Raizada used a whiteboard to create an image of the extensive corporate structure he and Mr. Sclavos intended to create with the substantial resources that Mr. Raizada represented that he and Mr. Sclavos **then-possessed**.  At that time, Mr. Raizada continued to explain to Ms. Suber that Vision Venture Partners **then-possessed** a strong balance sheet and Vision Venture Partners and VVP Services **then-possessed** a "solid financing footing."

33.     During the first in-person interview, Mr. Diamond took Ms. Suber to lunch at il Pastaio, a Beverly Hills eatery, and during the lunch, Mr. Diamond represented that Mr. Raizada's net worth **at that time** was estimated to be approximately $400 million, and Mr. Sclavos's net worth **at that time** as being several billion dollars. Mr. Diamond assured Ms.

Suber that both Mr. Raizada and Mr. Sclavos then-possessed significant capital and liquidity to support the ongoing development of Vision Venture Partners as a private equity firm and the build-out of the current set of portfolio companies in addition to other portfolio companies in the purported investment pipeline. Mr. Raizada would later that day state that he held **then-possessed** an ownership interest in a West Hollywood restaurant, Catch, and suggest Mr. Diamond take Ms. Suber there for dinner.

34.     During the interview, Ms. Suber had the opportunity to meet Mr. Hall, whom Mr. Raizada introduced as a "partner in Vision Venture Partners." Ms. Suber and Mr. Hall spoke about Mr. Hall's extensive experience in the video game publishing and esports spaces in addition to Mr. Hall's experience as a film and television executive.[25]

35.     During the interview, Mr. Raizada represented to Ms. Suber that the Vision Venture Partners and VVP Services teams **then-boasted** the "best and brightest people" in the esports, entertainment, hospitality, and real estate industries and that she would be working with those "best and brightest" who were **then-engaged** by Vision Venture Partners and/or VVP Services.  Messrs. Raizada and Diamond confirmed that Ms. Suber would have "quality work"

---

[25] *See, e.g.*, http://theggpodcast.com/team-view/jace-hall/ (last visited March 10, 2021) ("Jace Hall is CEO and General Manager of Twin Galaxies, which is a Social Networking platform that facilitates interaction, achievement, recognition, and competition between people involved in the culture and activity of playing video games. Jace is a video game industry legend, having designed and published numerous successful AAA video game titles. He founded video game development studio - Monolith Productions in 1994, bringing such original hit franchises as No One Lives Forever, F.E.A.R., Alien vs. Predator, TRON 2.0 and Condemned: Criminal Origins to market. Jace successfully sold Monolith to Warner Bros. in 2004 and became the founder and General Manager of Warner Brothers Interactive Entertainment. During his tenure, Hall oversaw the development and management of numerous film/television/comic book multi SKU game franchises such as: The Matrix, DC Comics and Harry Potter. He took the company from $60m to $600m in three years, growing and managing his initial staff from 13 to over 600 employees. Additionally, Jace formed HD Films Inc, a film and television production studio, which completed over 40 different projects for feature film, scripted and unscripted TV shows and short-form webisodes with many production partners.")

that would allow her to continue to build her expertise and resume.

36.     Mr. Diamond extended another invitation for Ms. Suber to visit the VVP Offices, and Ms. Suber accepted the invitation. The second in-person interview was held 19 days later, on July 24, 2017. Ms. Suber, again, spent the entire day at the VVP Offices.

37.     During the second interview, Ms. Suber had the opportunity to meet Rick Fox. Ms. Suber's conversation with Rick Fox was consistent with the pre-interview diligence she was able to conduct on him, including his motivation for acquiring, and building out, the esports team known as Echo Fox, which was a very admirable and poignant narrative about Rick Fox's desire to build his relationship with his son, Kyle.[26]

38.     During the second interview, Ms. Suber also met with Christopher Nordling, the then-Chief Operating Officer of VVP Services and certain of its affiliates ("**Mr. Nordling**"). Mr. Nordling had recently left his role as President of MGM Resorts International in Las Vegas, Nevada, to join VVP Services. Mr. Nordling echoed the business plans for Vision Venture Partners, VVP Services, Vision Esports, Echo Fox, HD Films, and Twin Galaxies, citing in particular the business acumen that Mr. Sclavos **then-possessed** as part of the "secret sauce" in the success of the esports, entertainment, and hospitality ventures in which Vision Venture Partners and VVP Services would invest.

39.     During both in-person interviews, Messrs. Raizada and Diamond and Ms. Suber discussed a lawsuit involving another company in which Mr. Raizada served in a high-level

---

[26] *See, e.g.*, Nick Schwartz, "*Rick Fox Explains How Esports Helped Him Connect with his Son,*" March 22, 2016, Fox Sports available at https://www.foxsports.com/buzzer/story/rick-fox-league-of-legends-interview-echo-fox-032216 (last visited August 20, 2020, but unavailable via this link on March 10, 2021). *See* **Exhibit 19**. *See also* Noah Smith, *Rick Fox wanted to get closer to his son, so he bought an esports team,*" *Washington Post*, Dec. 24, 2018, available at https://www.washingtonpost.com/sports/2018/12/24/rick-fox-wanted-get-closer-his-son-so-he-bought-an-esports-team/ (last visited March 10, 2021).

position. The allegations included a breach of fiduciary duty claim because Mr. Raizada had allegedly used corporate money for personal expenses and had engaged in other self-dealing. Ms. Suber asked Messrs. Raizada and Diamond if the allegations were true. Mr. Raizada said "no," and further represented, while holding a legal memorandum that was about four inches thick (including exhibits), that there was, **at that time**, absolutely no basis for liability against him or any of his affiliates, that the claimants "were lying" and that Ms. Suber "had nothing to worry about."  See **Exhibit 20(A)-(B)** [27,28].

40.    Ms. Suber was told by Messrs. Raizada and Diamond on numerous occasions before she accepted VVP Service's offer of employment that, in order to provide a competitive salary, Ms. Suber would participate in the growth of Vision Venture Partners, VVP Services and its affiliates, including Vision Esports, LP and its portfolio companies, Echo Fox, HD Films and Twin Galaxies, through a grant of equity. Both Mr. Raizada and Mr. Diamond spoke of Ms. Suber's being granted a "couple of points" in VVP Services and its related entities, including both existing entities and new entities that were to be launched in the future. Messrs. Raizada and Diamond also said that the "points" would be vested so that if she were to leave VVP Services, she could elect to either (a) keep the equity and "watch it grow" or (b) receive its then-fair market value.  Messrs. Raizada and Diamond later extended the foregoing offer

---

[27] *See* **Exhibit 20(A)**, available at http://germanmay.com/rep-case/raizada-group-lp-et-al-v-phc-holding-company-llc/ (last visited March 10, 2021).

[28] *See* **Exhibit 20(B),** *available at* https://www.thepitchkc.com/news/blog/20981820/amit-raizada-payday-profiteer-hit-with-6-million-verdict-in-civil-case (last visited March 10, 2021) ("In 2014, Raizada's former business partners at Spectrum Business Ventures — Scott Asner and Michael Gortenburg — sued him, via their holding companies, for liquidating various accounts, making unauthorized loans to himself through the company, and racking up exorbitant tabs at restaurants and bars. (Raizada testified under oath that spending $100,000 or $200,000 in an evening at a club entertaining was 'normal and ordinary business.'")

and grant of equity through Crossdale Paul, and the partners of Crossdale Paul can substantiate the offer and grant. Messrs. Raizada and Diamond advised Ms. Suber that the grant of equity would not be formalized until after Ms. Suber was hired, because one of Ms. Suber's principal duties would be to work with Mr. Raizada, Mr. Sclavos, Mr. Nordling, and others to establish and draft the "Vision Venture Partners Equity Participation Plan."

41.     On or about August 8, 2017, VVP Services extended a written offer of employment to Ms. Suber.

42.     On or about August 11, 2017, Ms. Suber accepted the offer of employment, and Ms. Suber executed an offer letter (the "**Offer Letter**"), which made reference to equity compensation.

43.     The period of time between Crossdale Paul's initial contact with Ms. Suber on or about June 27, 2017, and Ms. Suber's start of employment is referred to as the "**Recruiting Period**").

44.     The upshot of the representations and omissions of then-current and material facts made by Messrs. Raizada, Diamond and other individuals throughout the Recruiting Period was that Vision Venture Partners, VVP Services, and their affiliates had been established by individuals with successful track records; that the founding partners intended to be major players in the burgeoning field of esports as well as the entertainment, real estate, and hospitality industries; and that the partners of Vision Venture Partners, VVP Services, and their affiliates **then-possessed**, **and then had access to**, more than enough capital, that was liquid and readily accessible, so that funding of the ventures that Messrs. Raizada, Mr. Diamond, and others described would not be an issue at all into the foreseeable future. In addition, the opportunity to serve as the lead transaction attorney sounded compelling, given Messrs.

Diamond and Raizada's promise of equity as part of Ms. Suber's compensation package. To be clear and for the avoidance of doubt, Messrs. Raizada, Diamond and other individuals throughout the Recruiting Period, made material misrepresentations and omissions of **then-current** material facts to Ms. Suber, and the material misrepresentations (or materially false representations) and omissions were **not about future performance**.

45.     Little did Ms. Suber know that the misrepresentations and omissions of material facts by Mr. Raizada and other agents of VVP Services, Vision Venture Partners, and their affiliates constituted deliberate and material misrepresentations of material facts intended to induce reliance by Ms. Suber and that ultimately affected the decision-making process in which Ms. Suber engaged and upon which Ms. Suber reasonably and justifiably relied when she accepted the role of Deputy General Counsel of VVP Services.

## MS. SUBER BEGINS WORK AND SOON REALIZES THAT VVP SERVICES IS A FRAUDULENT ENTERPRISE

46.     On August 15, 2017, Ms. Suber began working remotely from New York for VVP Services, reporting to Mr. Diamond. On or about September 11, 2017, Ms. Suber began working primarily in Los Angeles, California, at the VVP Offices, and on or about October 13, 2017, she committed to a 12-month lease of an apartment in Los Angeles, California. Prior to and throughout Ms. Suber's tenure, Ms. Suber took certain actions and incurred expenses in connection with her move, including but not limited to paying for temporary housing, entering into a residential lease, moving furniture, house hunting, transportation costs, and other customary relocation expenses from coast to coast.

47.     Defendants Sclavos and Raizada managed and controlled the day-to-day operations of VVP Services and its affiliates. Throughout Ms. Suber's tenure, and as discussed

below, Defendants Raizada and Sclavos continued the material misrepresentations of **then-current** material facts about the businesses, including Vision Venture Partners, VVP Services, Vision Esports and their affiliates that occurred throughout the Recruiting Period.

48.     In or about September 2017 and continuing up through Ms. Suber's Effective Resignation Date, Mr. Raizada asked Ms. Suber to work with Mr. Rashid. For example, in December 2017 and early January 2018, at the direction of Defendant Raizada, Mr. Rashid asked Ms. Suber to prepare certain documentation in connection with a restructuring of several entities owned by each of Defendant Raizada, Mr. Rashid and Rick Fox (the "**Dilutive Entity Restructuring**").  Before preparing the documentation, Ms. Suber asked Mr. Raizada and Mr. Rashid whether Rick Fox, who was out of the office and who Plaintiff believed to be filming a Hallmark Channel production in Vancouver, Canada,[29] had been apprised of the Dilutive Entity Restructuring and whether Rick Fox was aware of the consequences of the Restructuring. Both Defendant Raizada and Mr. Rashid **then-represented** to Ms. Suber that Rick Fox was aware of the Restructuring and the consequences of the Restructuring.  Furthermore, both Defendant Raizada and Mr. Rashid **then-represented** to Ms. Suber that Rick Fox had approved of the Restructuring. Then, Mr. Raizada and Mr. Rashid told Ms. Suber that once she prepared the documentation for the Restructuring, they would walk Rick Fox through the documentation and obtain his signature on each of the documents. Subsequently and after Ms. Suber's Effective Resignation Date – sometime in or about March 2019, Ms. Suber learned from Rick Fox that he had no knowledge of the Dilutive Entity Restructuring or any understanding of its consequence.   Specifically, Rick Fox advised Ms. Suber that he was not aware that the

---

[29] https://www.hallmarkmoviesandmysteries.com/morning-show-mysteries (last visited March 10, 2021).

Restructuring had been effected or that its consequences included the dilution of Rick Fox's equity interests in certain holding companies.  Thus, Defendant Raizada, acting in concert and coordination with Mr. Rashid and in furtherance of the VVP Fraudulent Enterprise and the VVP Conspiracy, sought to, and actually did, defraud Rick Fox.  Defendant Raizada concealed, and caused Mr. Rashid to conceal, from Ms. Suber the true nature and intent behind the Dilutive Entity Restructuring through false representations, all-the-while intending to knowingly and intentionally mislead Ms. Suber.

49.    In October and November 2017, Mr. Sclavos's brother, Steve Sclavos,[30] and Defendant Sclavos's son, Nick Sclavos, became employees of Vision Venture Partners and/or VVP Services.  Defendant Sclavos hired or caused to be hired his brother and son, because Defendant Sclavos could no longer support his brother and his son with Defendant Sclavos's own funds given his illiquidity and/or insolvency.  The hiring of Defendant Sclavos's relatives was a drag on the resources of the cash-strapped VVP Services and the portfolio companies of Vision Venture Partners.  Neither the hiring of Steve Sclavos nor the hiring of Nick Sclavos was disclosed to the investors in the portfolio companies.

50.    In or about October 2017, the New York Yankees announced an investment in Vision Esports, and prior to the consummation and announcement of the investment, Ms. Suber had been tasked with working with Messrs. Raizada, Sclavos, and Diamond and representatives of the New York Yankees to draft the documentation to effect the investment.[31]

---

[30] https://www.linkedin.com/in/steve-sclavos-5167ab111/ (last visited March 1, 2021).

[31] Mike Ozanian, *New York Yankees Take Big Swing At Esports*, October 19, 2017, Forbes, available at https://www.forbes.com/sites/mikeozanian/2017/10/19/new-york-yankees-take-big-swing-at-esports/#1fcfd9502e99 (last visited March 10, 2021) ("Baseball's most valuable team announced today an investment partnership with Vision Esports, the largest single shareholder of three esports-related companies. The two organizations will create and manage

51.     On or about November 22, 2017, Mr. Diamond voluntarily resigned from VVP Services.

52.     On or about November 29, 2017, Defendant Sclavos caused a capitalization table, containing an intentional misstatement of a material fact, to be sent to a potential investor, and that potential investor subsequently, on or about December 4, 2017, made the decision using the mix of information then-available to the investor, which included the erroneous capitalization table, to make an investment.   See **Exhibit 22** ("**Erroneous Capitalization Table**"). [32] Ms. Suber is informed that Defendant Sclavos shared the Erroneous Capitalization Table with other potential investors in and around December 2017 and January 2018, including investors within the State of New York (and including this District).

53.     Between October 2017 and January 21, 2018, as she worked on the various transactions and other work projects for VVP Services, portfolio companies of Vision Venture Partners and Vision Esports, information regarding multiple instances of questionable conduct came to the attention of Ms. Suber that led her to be concerned about the actions of Mr. Raizada, Mr. Sclavos, and others as they conducted the business of Vision Venture Partners, VVP Services, Vision Esports, and other entities, and further led her to believe that the "quality work" she had been promised amounted to aiding and abetting fraud.

54.     The equity compensation program was never drafted, and upon information and belief, Defendants never intended it to be drafted. As such, Ms. Suber never received the "points" of equity she had been promised.

---

an "ecosystem" of esports properties that include Echo Fox, Twin Galaxies, and Vision Entertainment."). *See* **Exhibit 21**.

[32] **Exhibit 22** is being filed separately.

55.     Given the repeated and continuing nature of what Ms. Suber understood to constitute professional misconduct, Ms. Suber, upon the advice of counsel, knew that she could no longer serve as an attorney employed by VVP Services. On January 22, 2018, at or about 9:30 a.m. pacific time (the "**Effective Resignation Date**"), Ms. Suber tendered her resignation. Ms. Suber's initial resignation letter is attached hereto as **Exhibit 23**.[33]

56.     Ms. Suber sent a follow-up letter to VVP Services on or about February 21, 2018 (the "**Detailed Resignation Letter**"), in which she memorialized the instances and nature of the questionable conduct. The Detailed Resignation Letter is attached hereto as **Exhibit 24**.[34] The Detailed Resignation Letter contains further particularized facts, and as contemplated by *supra* **Footnote 3**, the Detailed Resignation Letter (including the who, what, when and where underlying the fraudulent conduct of Defendants) and the statements contained therein are fully incorporated herein such reference.

57.     Although Defendants claim that Ms. Suber's disclosure of the questionable conduct is subject to a confidentiality agreement and therefore all exhibits referring to it should be filed under seal, details of the VVP Fraudulent Enterprise and the VVP Conspiracy were subsequently made public in the Fox Complaint. The defendants in the Fox Complaint include, among other defendants, VVP Services, Vision Venture Partners, Eleven Stones, Amit Raizada, and Stratton Sclavos. In advance of filing the Fox Complaint, Rick Fox made clear to Ms. Suber on a number of occasions that he had observed Mr. Raizada, Mr. Sclavos, and Mr. Rashid engage in deleterious actions, including in respect of Vision Venture Partners, VVP Services, Vision Esports and the Portfolio Companies. Rick Fox considered each of Mr. Raizada, Mr.

---

[33] **Exhibit 23** is being filed separately.

[34] **Exhibit 24** is being filed separately.

Sclavos, and Mr. Rashid "really bad people."  *See* **Exhibit 25** for Rick Fox's text message to Ms. Suber elucidating this point.  Mr. Fox has made statements about Defendants' conduct throughout numerous business and esports news media platforms and in court filings over the course of the last several years.

58.     In the Fox Complaint, Rick Fox pleaded causes of action grounded in fraud, breach of contract, breach of the duty of good faith and fair dealing, conspiracy, defamation, intentional infliction of emotional distress, invasion of privacy, and unjust enrichment, and much of the conduct of Defendants Raizada and Stratton underlying such causes of action as laid out and pleaded by Rick Fox in the Fox Complaint occurred during Ms. Suber's tenure:

a.     Mr. Raizada "skimmed [funds] from [VVP Services which was] supported by investor money for [Mr. Raizada's] own personal benefit." (¶ 85 of the Fox Complaint.)

b.     "As for Sclavos, he was the beneficiary of a $2M loan to himself from investor funds, to pay for his lifestyle inclusive of drugs and parties." (¶ 85 of the Fox

Complaint.)[35, 36, 37]

c.     Twin Galaxies negotiated a deal with Facebook worth $4,000,000. When that money came in, however, the money went into Vision Venture Partners' account rather than Twin Galaxies, per the instructions of Sclavos and Raizada. That money remains unaccounted for by Sclavos and Raizada." (¶ 90 of the Fox Complaint.)

d.     "Beginning on or about September 2017, Sclavos and Raizada used VVP Services to negotiate a deal with Yankee Global Enterprises, LLC ("**Yankees**").[38] The Yankees acquired a limited partner interest in a company called Vision Esports LP, for the purpose of fielding esports teams and production of esports related content. Vision Esports, in turn, placed investments in three companies affiliated with VVP Services,

---

[35] Paragraph 85 from the Fox Complaint Against Raizada reads as follows: "Raizada's employment agreement is another example of him using and skimming from a company supported by investor money for his own personal benefit. In this case, VVPS provides services for Echo Fox, Twin Galaxies, Vision Ventures, and VVP. These companies took on investment capital, including from Vision Esports, LLC and others to support their businesses. At least in the case of Echo Fox, Twin Galaxies and Vision Ventures, they paid for services (from their investor money) at rates instructed and agreed by Sclavos and Raizada to VVPS.  Then VVPS provided the benefits to Raizada and Sclavos, including but not limited to paying for Raizada's entire lifestyle – complete with a $350,000 salary, a Beverly Hills home, and a $100,000/year expense account, as set forth above. As for Sclavos, he was the beneficiary of a $2M loan to himself from investor funds, to pay for his lifestyle inclusive of drugs and parties."

[36] Plaintiff had been informed on or about March 27, 2019, from Mr. Hall, that Mr. Nordling had previously loaned Mr. Sclavos this money under duress and out of the fear of losing his role as then-Chief Operating Officer (and the benefits concomitant therewith).  Ms. Suber also became informed that the loan remained outstanding for more than a year, and during that time, one or more of the portfolio companies was unable to meet its payroll obligations to its employees to the detriment of those employees. Moreover, Mr. Hall informed Ms. Suber that while the loan remained outstanding and one or more of the portfolio companies was unable to meet its payroll obligations to its employees, Mr. Sclavos was traveling outside of the United States on a vacation.

[37] See, e.g., Figures 2 – 3 of the Fraudulent Enterprise Diagrams (contained in **Exhibit 13(B)** attached hereto). See also **Exhibit 26**.

[38] In the Fox Complaint, Rick Fox defines and uses the term "Yankees," which is equivalent to the defined term "New York Yankees" used by the co-plaintiffs in this Complaint. *See supra* page 3.

namely Echo Fox, LP, HD Films, LLC and Twin Galaxies, LLC. The Yankees closed

the deal on October 4, 2017." (¶ 91 of the Fox Complaint.)

e.       "Sclavos and Raizada provided an anti-dilution guaranty to the Yankees as part

of the Vision Esports investment." (¶ 92 of the Fox Complaint.)

f.       "[T]o get around the Vision Esports anti-dilution protection for the Yankees,

Sclavos and Raizada created two other entities – Vision Esports II, LP and Vision

Esports III, LP to raise additional funds for the same investment opportunities and evade

their antidilution commitment to the Yankees." (¶ 93 of the Fox Complaint.)

g.       "[A]s soon as the Yankees and other Vision Esports funds were raised, Sclavos

and Raizada instructed one of the companies funded by those investments to cause a loan

of $2,000,000 to be made to Sclavos for his personal use. Effectively, a portfolio

company of the limited partners in Vision Esports was using investment funds to loan

the money to Sclavos at below market rate." (¶ 94 of the Fox Complaint.)[39]

h.       "[A]t at the same time these funds were being diverted to Sclavos for his

personal use, portfolio companies, such as HD Films and Twin Galaxies, were lacking

financial support for their companies; funds that should have been used to fund the

ongoing company activities were instead being funneled to Sclavos at Raizada's

direction and approval." (¶ 94 of the Fox Complaint.)

i.       "Raizada exercised control and dominion over Sclavos, which continues.

Plaintiffs are informed and believe and thereupon allege that this control arises from

Sclavos's indebtedness to Raizada for funding his lifestyle." (¶ 87 of the Fox

Complaint.)

---

[39] Note:  The loan described here is also referenced herein as the "Sclavos Concealed Loan."

59.     Furthermore, in the Fox Complaint, Rick Fox asserts that Mr. Raizada and co-defendants of Mr. Raizada "duped" Rick Fox and were engaged in a "pattern and practice of self-dealing, deception and breach of every duty and responsibility conceivable, all for their own personal gain," and to the detriment and injury of Rick Fox and his co-plaintiffs *well in advance of the summer of 2017* when Ms. Suber was recruited and hired by VVP Services.  (¶ 14 of the Fox Complaint.)  On October 2, 2019, Rick Fox, while describing the nature of the Fox Complaint to a reporter from the Associated Press, called Mr. Raizada a "con man."[40]

60.     Throughout Ms. Suber's tenure, Mr. Hall continued to represent that Mr. Sclavos **then-possessed** a net worth of several billion dollars and, **at that time**, was flush with liquidity to address any financial or other issue that VVP Services or any of its affiliates may have with respect to ordinary course operations or otherwise, including third-party litigation.[41] Yet Ms. Suber became aware of facts indicating that Defendants had misrepresented their financial ability to carry on the venture, including:

j.      On or about November 27, 2017, Mr. Sclavos granted a lien on his principal residence (1305 Collingwood Place, Los Angeles, California 90069), which, until June 2020, was owned through Prometheus Ventures. *See* **Exhibit 27**. As noted above, Defendant Sclavos lost his principal residence through foreclosure in June 2020 as indicated by official records that are available at the Recorder's Office of Los Angeles County; though, in or about October 2020, Defendants Sclavos recovered an interest in

---

[40] Jake Seiner, *Rick Fox sues esports team partners, alleges rampant fraud*, THE SEATTLE TIMES, October 2, 2019, available at https://www.seattletimes.com/business/rick-fox-sues-esports-team-partners-alleges-rampant-fraud/ (last visited March 10, 2021) ("He's a con man," Fox told The Associated Press by phone Wednesday night.)

[41] Upon information and belief, at the time, Mr. Hall was relying on representations made to him by Defendants Sclavos and Raizada.

his principal residence. See the Foreclosure Motion to Dismiss (*supra* Footnote 11).

k.      Mr. Sclavos was so insolvent during the course of Ms. Suber's tenure that Mr.

Sclavos was compelled to pay cash to settle his account with his local utility or face

cancellation of service.

l.      Mr. Sclavos's highly-coveted "black card" was cancelled for non-payment.

m.      Mr. Sclavos was so insolvent that Mr. Sclavos had to use the credit card of one

of his personal employees to fund expenses incurred in connection with a party at Mr.

Sclavos's home, and it took Mr. Sclavos several months to provide sufficient funds to

that employee so that she could cover the outstanding balance on her credit card.

n.      Mr. Sclavos incurred expenses, such as expenses in connection with trips on

private jets, that he knew at the time he did not intend to make good on.[42]

 61.      Ms. Suber also became aware of Mr. Sclavos's pervasive substance abuse that

prevented him from carrying out his job functions, let alone possessing or using any "business

acumen" at all. Messrs. Diamond, Fox, and Hall informed Ms. Suber that prior to and during

the course of Ms. Suber's tenure, Mr. Sclavos engaged in the regular use of alcohol and illicit

drugs, including cocaine. Mr. Diamond and another employee would joke whenever Mr.

Sclavos's behavior became erratic that Mr. Sclavos "had enjoyed a lot of coffee that day" and

would wonder "just how many cups he had had." The abuse reached such a level that, according

to Rick Fox, he and others staged an intervention in Mr. Sclavos's office on or around July 2017

(notably during the time Ms. Suber was interviewing and prior to the commencement of Ms.

Suber's employment). The intervention was not successful, with Mr. Sclavos declaring it

---

[42] For additional indicia of Mr. Sclavos's illiquidity or insolvency, *see, e.g.*, the Foreclosure
Motion to Dismiss, *supra* Footnote 11.

"unnecessary" and even offering the participants a parting glass of liquor.

62.     Ms. Suber was informed that Jared Jeffries, who was the President of the esports team Echo Fox ("**Mr. Jeffries**"), was aware of Mr. Sclavos's alcohol and drug use as Mr. Jeffries attended numerous parties and other functions at Mr. Sclavos's home at which alcohol and drugs were consumed in significant quantities. *See, e.g.,* a copy of the Facebook iMessenger messages exchanged between Mr. Hall and Ms. Suber on March 19, 2019, which are attached hereto as **Exhibit 28** ("**Facebook Messages**"). In the Facebook Messages, Mr. Hall expressly states that "Amit claims he has a copy of a scan that shows a giant hole inside Stratton's head due to the [drug] use."[43]

## DEFENDANTS' CONDUCT WAS PART OF A PATTERN OR PRACTICE OF STARTING AND CONTINUING FRAUDULENT ENTERPRISES

63.     The Fox Complaint is far from the first time that Defendants Raizada and Sclavos and at least one of their business partners and associates have been accused of this type of misconduct. Following Ms. Suber's resignation, she became aware of more information that made clear that Defendants were engaged in a regular pattern or practice of fraud in connection with the formation of companies. This provided further evidence that, at the time they induced Ms. Suber to work for VVP Services, they never intended for it to be a legitimate company nor for her to perform under the terms that had been promised:

a.     On or about October 25, 2017, after a multi-year investigation, the U.S. Securities and Exchange Commission ("**SEC**") charged "[Mr. Rashid], a former senior partner at

---

[43] Note:   The statements contained in this ¶ 62 are not intended to suggest in any way whatsoever that either Mr. Fox or Mr. Jeffries uses or has ever used drugs, and no inference should be made that either Mr. Fox or Mr. Jeffries uses or has ever used drugs. Plaintiff has no such knowledge, and Plaintiff makes no such allegation.

Apollo Management L.P., with defrauding his fund clients by secretly billing them for approximately $290,000 in personal expenditures, including his family vacations, visits to a hair salon, and purchases of designer clothing and high-end electronics."[44]   The SEC-Rashid Matter is ongoing.  *See SEC v. Rashid, S.D.N.Y., No. 17-cv-8223, 2/11/19.* *Accord* **Exhibit 29(A)-(B)**.  Mr. Rashid has been, and continues to be, a business partner and associate of Defendants Raizada and Sclavos.  In fact, in the SEC-Rashid Matter, the SEC called Mr. Rashid's conduct "egregious."[45] Furthermore, the alleged conduct of Mr. Rashid goes back to 2010.

b.      On or about November 1, 2017, a Kansas City, Missouri, jury found Mr. Raizada guilty of breaching his fiduciary duties to two entities and of for breach of fiduciary duty and civil conspiracy in *Raizada Group, LP et. al. v. PHC Holding Company, LLC, et. al.*, No. 1416-CV14245 (Jackson County, Missouri, November 1, 2017), the lawsuit about which Ms. Suber had previously questioned Mr. Raizada during the Recruiting Period. The jury found that Mr. Raizada had improperly used company funds and engaged in self-dealing, and they awarded actual damages of $611,000 plus punitive damages of $5,500,000.00 against Mr. Raizada (the "**Raizada Breach of Fiduciary Duty Suit**").[46]

c.      On November 1, 2018, Brandon Blum and Daniel Shkolnik commenced an action

---

[44] *See* S.E.C., "Former Private Equity Firm Partner Charged With Secretly Billing Clients for His Vacations and Salon Visits," available at https://www.sec.gov/news/press-release/2017-199 (last visited March 10, 2021) and attached to this Complaint as **Exhibit 29(A)-(B)**.

[45] *SEC* v. *Rashid*, Case No. 1:17-cv-08223-PKC (Plaintiff Securities and Exchange Commission's Post-Trial Reply Memorandum, March 31, 2020, Document No. 208), page 35.

[46] *See* **Exhibit 20(A)-(B)**.

against Mr. Raizada and Mr. Rashid in the United States District Court for the Southern District of California. *See Blum and Shkolnik v. Raizada Ali Rashid*, *et al*., Case 3:18-cv-02513-DMS-BLM. In the complaint filed in connection with the foregoing action, Messrs. Blum and Shkolnik allege breach of contract and fraud claims against Mr. Raizada and his associate, Mr. Rashid. *See* **Exhibit 30** for a copy of the complaint filed in the immediately foregoing action.

64.    In addition to the pleadings in the Fox Complaint that illustrate the nature of the conduct and actions of Defendants Raizada and Sclavos, Ms. Suber is informed that Mr. Raizada also took advantage of Shaun Phillips ("**Mr. Phillips**") and Larry English ("**Mr. English**"), two retired professional athletes who established, and continue to build, a highly regarded real estate and hospitality investment firm and who were temporarily working in the same offices at VVP Services in Beverly Hills. *See* **Exhibit 31**. This further illustrates the pattern of activity in which Defendant Raizada was engaged in respect of myriad individuals and organizations.

65.    On or about April 3, 2019, and April 4, 2019, Josh Schiller, Esq. ("**Mr. Schiller**") of Boies Schiller Flexner LLP ("**Boies Schiller**") communicated with Ms. Suber, via text and telephone, under the guise of representing Vision Esports, LP, in addition to representing the New York Yankees, seeking information about the fraudulent activities in which Mr. Raizada had engaged. Ms. Suber is informed that Mr. Schiller did so at the direction of Mr. Bernstein, an investor in Vision Esports, to engage in fact-finding and damage control in the wake of Mr. Raizada's use of the Racial Epithet referenced in *supra* ¶ 6 and *infra* ¶¶ 73-75 and other concerns Mr. Schiller expressed. In fact, during the call between Mr. Schiller and Ms. Suber on April 4, 2019, Mr. Schiller called Mr. Raizada a "very bad man." Mr. Schiller

led Ms. Suber to believe that Boies Schiller would be conducting a full-scale investigation into Vision Esports, LP and the conduct of Defendants Sclavos and Raizada, all on behalf of all of the investors in Vision Esports.

66.     On April 4, 2019, and at the request of Mr. Schiller, Ms. Suber prepared a draft scope of engagement and investigation (as subsequently amended by email correspondence, the "**Scope of Engagement and Investigation**") that Boies Schiller would purportedly undertake on behalf of Vision Esports and the investors in Vision Esports, including the New York Yankees. The Scope of Engagement and Investigation is attached hereto, including the transmittal email as well as subsequent email correspondence, as **Exhibit 32**.[47]

67.     On or about April 8, 2019, Mr. Bernstein called Ms. Suber to, among other things, vehemently express his dismay at the Scope of the Engagement and Investigation and at his being characterized as an associate of Mr. Raizada. Mr. Bernstein confirmed that Mr. Schiller had forwarded Ms. Suber's email in respect of Vision Esports (including the Scope of Engagement and Investigation) to Mr. Bernstein. Mr. Bernstein also revealed, among other things, that Mr. Schiller and Boies Schiller represented Mr. Bernstein, not Vision Esports, exposing Mr. Schiller's misrepresentation to Ms. Suber.[48]

---

[47] **Exhibit 32** is being filed separately.

[48] On or about April 12, 2019, Ms. Suber sent to Vision Esports, LP, in care of its General Partner, ESPT, LLC and to the limited partners of Vision Esports, LP, a letter detailing her interaction with representatives of Boies Schiller, including Mr. Schiller, and Mr. Bernstein, among other things (the "**Boies-Schiller/Bernstein Letter**"). The Boies/Schiller-Bernstein Letter is attached hereto as **Exhibit 32**, which, out of an abundance of caution, is being filed with the Court under seal as the Defendants may erroneously claim that some of the contents are protected from disclosure by the attorney-client privilege.  That said, most, if not all, of the information contained in the Boies-Schiller/Bernstein Letter is known by third parties, so any privilege that may have applied has been waived.  Note that **Exhibit 32** contains both the Boies-Schiller/Bernstein Letter and the Scope of Engagement and Investigation, with the Scope of Engagement and Investigation attached to the Letter as Exhibit E, commencing on page 13 of 17 of the entire **Exhibit 32**.

68.     On or about April 8, 2019, Ms. Suber learned from David K. Robbins, Esq. ("**Mr. Robbins**"), an investment advisor working on behalf of Shamrock Holdings, the following:

a.     Mr. Robbins informed Ms. Suber that he was concerned about the actions Defendants Raizada and/or Sclavos had taken, without the approval or consent of any of the investors in Vision Esports, to change the "investment waterfall" for cash distributions arising from and relating to the investments in and of Vision Esports in favor of Raizada.

b.     Mr. Robbins was aware that certain investors in Vision Esports were treated preferentially (together, the "**Preferred Investors**") compared to one or more other investors in Vision Esports, including Shamrock Holdings (together, the "**Non-Preferred Investors**").  Mr. Robbins informed Ms. Suber that, in effect, the investment in Vision Esports by the Preferred Investors was guaranteed by Mr. Bernstein so that the Preferred Investors had no risk of losing their initial investment even though (i) the Preferred Investors and the Non-Preferred Investors invested in the same class of securities of Vision Esports, and (ii) the Non-Preferred Investors, including Shamrock Holdings, were not aware of this distinction until in or about April 2019, well after the close of the first round of funding for Vision Esports in or about the third week of February 2018, highlighting a potential violation of The Martin Act.

c.     In each case, Mr. Robbins informed Ms. Suber that he had the documentation to

substantiate his claims.[49]  Attached as **Exhibit 42**[50] is an email from an attorney for an investor in Vision Esports, and in that email, the investor's attorney clearly references the "Backstop Agreement" between Mr. Bernstein, on the one hand, and the investor, on the other hand.

69.     On or about June 7, 2019, Mr. Robbins advised Ms. Suber that he had information about the actions of Mr. Sclavos and/or Mr. Raizada, which actions occurred subsequent to Ms. Suber's tenure, that put the limited partners of Vision Esports at a material and significant economic disadvantage relative to Mr. Raizada.  In support of Mr. Robbins' characterizations, *see, e.g.*, **Exhibit 33**. ("basically [the limited partners of Vision Esports] said they had not received any updates at all"; "They were horrified at the things that Rick told them"; And as they looked at all of the operating agreements for Echo fox that were changed in favor of Mr. Raizada they seemed to realize that they were getting shafted.").[51]

70.     In or about June 2019, at the request of the limited partners of Vision Esports, LP, the law firm of Greenberg Traurig LLP began an investigation into Vision Esports, LP and Defendant Raizada. Ms. Suber also provided the Scope of Engagement and Investigation to Greenberg Traurig.

---

[49] See also the Detailed Resignation Letter (**Exhibit 24**).

[50] Note:  The numbering for Exhibit No. 42 is clearly out-of-sequence; however, this is being done for convenience so as not to change the Exhibit numbering as between the First Amended Complaint and the Second Amended Complaint.  Exhibit 42 will be filed separately and under seal.

[51] Note:  There is no Exhibit 34.  The Exhibit numbering scheme in the First Amended Complaint is being maintained, because certain Exhibits have been shared with the Defendants in advance.

## DEFENDANTS SUBJECT MS. SUBER TO DISCRIMINATORY TREATMENT
## THROUGHOUT HER EMPLOYMENT

71.     Messrs. Raizada and Diamond made mention of Ms. Suber's race on a regular basis during her employment with VVP Services. On several occasions, Mr. Raizada expressed his concern that Ms. Suber was spending "too much time talking" to Mr. Phillips and Mr. English.  On several occasions, Mr. Raizada told Ms. Suber that she was "more concerned about Shaun and Larry" than with Mr. Raizada, because Ms. Suber, Mr. Phillips, and Mr. English are of the same race, identifying, like Ms. Suber, as African-American.

72.     In addition to being prevented from communicating with important investors, Ms. Suber also found herself systematically excluded from important meetings. She also learned that she was being paid significantly less than her colleagues and was not receiving certain fringe benefits that they were.  *See, e.g.*, **Exhibit 35**, the "**List of Comparators**."[52]

73.     Subsequent events make clear the character of Mr. Raizada's racism. For example, on or about April 1, 2019, Mr. Raizada referred to Mr. Hall using a racial epithet beginning with the letter "n" ("**Racial Epithet**") in writing. *See* **Exhibit 36**.

74.     On or about May 15, 2019, as a result of Mr. Raizada's use of the Racial Epithet in respect of Mr. Hall as noted in ¶ 73 above, Riot Games gave Echo Fox an ultimatum:  Remove Mr. Raizada from the Echo Fox's ownership structure or face the requirement to sell Echo Fox's extremely lucrative slot in the League of Legends Championship Series.[53]  Specifically, the

---

[52] **Exhibit 35** is being filed separately.

[53]Jacob Wolf, *LCS Directs Echo Fox to Remove Partner who Used Racist Epithet*, ESPN, May 15, 2019, available at https://www.espn.com/esports/story/_/id/26755683/lcs-directs-echo-fox-remove-partner-used-racist-epithet (last visited March 10, 2021). ("The League of Legends Championship Series concluded its preliminary investigation into allegations that a member of the Echo Fox ownership group used a racist epithet and will give the team 60 days to remove that owner from the organization's cap table, the league announced Wednesday.")

Commissioner of the League of Legends Championship Series, Chris Greeley, said in respect of the foregoing:

> "Hate speech, threats and bigotry have no place in the LCS," League Championship Series commissioner Chris Greeley said on Twitter. 'We have directed Echo Fox to take appropriate corrective action within 60 days. If Echo Fox does not take action by removing any individuals whose actions violate League rules and agreements within the required time period, the League will take formal action that may adversely impact the future of Echo Fox in the LCS.'"[54]

75.     On or about August 15, 2019, Echo Fox forfeited its extremely valuable slot in the League of Legends Championship Series to Riot Games, because Echo Fox did not satisfy the ultimatum as described in *supra* ¶ 74 that Riot Games issued in connection with Mr. Raizada's use of the Racial Epithet.  In or about September 2019, Riot Games ultimately sold the League Championship Series slot to Evil Geniuses for $33 million (the "**LCS Cash Proceeds**").[55]

---

[54] Tweets made through the Twitter account of LoL Esports, which is under the control of League Championship Series Commissioner Chris Greeley of Riot Games available at https://twitter.com/lolesports/status/1128691522327552000?lang=en (last visited March 10, 2021). *See* **Exhibit 37**.

[55] Jacob Wolf, *Echo Fox LCS Slot Sale Funds of $30.5 Million to be Distributed by Court*, ESPN, October 11, 2019, available at https://www.espn.com/esports/story/_/id/27822082/echo-fox-lcs-slot-sale-funds-305-million-distributed-court (last visited March 10, 2021).  ("On Sept. 26, Riot Games agreed to sell the Echo Fox slot to Evil Geniuses for a total of $33 million -- $30.5 million due to Echo Fox and $2.5 million due directly to Riot. That ended a saga that put the slot in jeopardy after Riot notified Echo Fox in May that it would have 60 days to remove co-founder and shareholder Amit Raizada from its cap table because of racist language he used towards former Echo Fox CEO Jace Hall.").  *See* **Exhibit 38**.

76.     Mr. Raizada also referred to Rick Fox using a racially-charged and hate-filled phrase. Rick Fox details the use of racially-charged hate-filled phrases used by Mr. Raizada in the Fox Complaint. *See* ¶ 20 of the Fox Complaint, which is excerpted below.

> 5  |  20.  If anyone dares stand up to Raizada or refuse to do what he wants, he
> 6  | gets angry and attempts to punish them, deride them, and intimidate them into
> 7  | submission. Echo Fox CEO Jace Hall and Fox both received offensive, racist texts
> 8  | from Raizada, including calling Hall a "Nigger" and Fox a "Sand Nigger." Other
> 9  | former business partners have received anti-Semitic text messages.

## DEFENDANT SCLAVOS DEFAMES PLAINTIFF TO CONCEAL THE VVP FRAUDULENT ENTEPRISE AND THE VVP CONSPIRACY

77.     On or about April 8, 2019, Ms. Suber learned from Mr. Robbins, among other things, that Mr. Sclavos knowingly and intentionally made false statements to Mr. Robbins, other representatives of Shamrock Holdings, and other investors in Vision Esports, LP and its affiliates about Ms. Suber's departure from VVP Services.

78.     Specifically, Mr. Sclavos told Mr. Robbins that Defendants Sclavos and Raizada terminated Ms. Suber for cause when, in fact, as previously plead and described herein, **Ms. Suber *voluntarily resigned***. These statements, made to important individuals in the professional field in which Ms. Suber carries out a trade or business, and injurious to Ms. Suber's ability to continue carrying on that trade or business, constitute defamation *per se.*

79.     Such false statements were made over the course of several weeks; such false statements continued after Mr. Robbins informed Ms. Suber of their initial occurrence up through and including at least October 2019 (and maybe even through the date hereof); and such false statements, and the harm emanating therefrom, remain uncorrected and unaddressed

as of the date hereof.

80.     These knowingly and intentionally false statements were made by Mr. Sclavos

in coordination and in concert with Defendant Raizada[56] and the four entity Defendants in order

to conceal, and thereby in furtherance of, the VVP Fraudulent Enterprise and VVP Conspiracy.

81.     Also, these acts of defamation by Mr. Sclavos were committed by Mr. Sclavos

as an individual and in his capacity as the manager of Prometheus Ventures, which was acting

as the manager of ESPT, which, in turn, was acting in its capacity of the general partner of

Vision Esports LP.


**DEFENDANTS RAIZADA AND SCLAVOS, ACTING FOR THEMSELVES AND THE
OTHER DEFENDANTS, HAD A DUTY IN THE CONTEXT OF A "SPECIAL
RELATIONSHIP" TO GIVE MS. SUBER "CORRECT INFORMATION";
DEFENDANTS RAIZADA AND SCLAVOS POSSESSED EXCLUSIVE AND SUPERIOR
KNOWLEDGE OF MATERIAL FACTS NOT AVAILABLE TO MS. SUBER**


82.     The special relationship arose because during the Recruiting Period, Defendant

---

[56] Defendant Raizada is extremely familiar with defamation and complaints / lawsuits against him.  *See, e.g.*, the Fox Complaint.  *See also AG613, LLC d/b/a 18 Capital Group, et al v. Raizada, et al* (Case No. 1816-CV26329, Cir. Ct. of Jackson County Missouri at Kansas City, Division 14).  In fact, in the *AG613, LLC d/b/a 18 Capital Group* case, which is in an action of defamation brought against Raizada and others by Raizada's former business partners, Raizada, in or about fall 2017, tried to have an employee of VVP Services, Haley Hey, a public relations / media consultant, publish and share defamatory articles about Raizada's former business partners with media outlets.  Ms. Hey, however, refused to do so, and Raizada caused the article to be published and shared through other means with media outlets.  See **Exhibit 39** for the sworn Affidavit of Haley Hey ("Amit Raizada asked me to type two of the articles that are the subject of this lawsuit. … I typed the articles on my computer as requested, but I told Mr. Raizada that I would not share the articles with any media.  After I declined to share the articles with anyone, VVP Services replaced my computer." (See ¶ 13 of the "**Hey Affidavit**").  The *AG613, LLC d/b/a 18 Capital Group* case is ongoing.))  Defendant Raizada used the two articles that are at issue in the *AG613, LLC d/b/a 18 Capital Group* case to cast Raizada's former business partners in a negative light in connection with the Raizada Breach of Fiduciary Duty Suit.  The Hey Affidavit is illustrative of the nature, type, kind and quality of work that Defendant Raizada "fostered."

Raizada was, and thereafter through Ms. Suber's Effective Resignation Date, Defendants

Raizada and Sclavos made false representations to Ms. Suber and withheld material information

from Ms. Suber in order to, first, induce Ms. Suber to accept, and, then, to continue on in, the

role of Deputy General Counsel with VVP Services.  Defendants Raizada and Sclavos were at

the "helm" of the management and operation of Vision Venture Partners and VVP Services

and, as such, they possessed "superior knowledge" and "exclusive knowledge" regarding (a)

the VVP Fraudulent Enterprise, (b) the VVP Conspiracy, (c) their intentional and willful actions

to conceal the VVP Fraudulent Enterprise and the VVP Conspiracy, and (d) Defendant

Sclavos's prolific illegal drug use and lack of both business acumen and sound judgment.

Through their continuing and material misrepresentations and omissions of material facts

described in the foregoing paragraphs, Defendants Raizada and Sclavos alone knew that Ms.

Suber, at any moment, could be forced to resign as Deputy General Counsel of VVP Services,

as contemplated by the Rules of Professional Conduct; Defendants alone knew that they could,

would and ultimately did use Ms. Suber's work product in the furtherance of their fraudulent

enterprise and conspiracy, which they established at least as early as 2016. By their active

concealment of the VVP Fraudulent Enterprise, Defendants Raizada and Sclavos intended to,

and ultimately did, maintain their "superior knowledge" and "exclusive knowledge" over Ms.

Suber until her Effective Resignation Date and beyond.  It was not until post-employment due

diligence conducted by Ms. Suber that Ms. Suber began to understand part of the true scope

and nature of the VVP Fraudulent Enterprise, the extent of the VVP Conspiracy and the efforts

of Defendants Raizada and Sclavos to conceal their fraudulent activities.

   83.  Defendants Raizada and Sclavos maintained their "superior knowledge" and

"exclusive knowledge" and continued their active concealment, because they needed to recruit

employees to work at VVP Services and the other portfolio companies in order to continue to carry-on and perpetrate the VVP Fraudulent Enterprise and the VVP Conspiracy.

84.    In November 2017, Mr. Hall explained to Ms. Suber that Defendant Raizada had asked Mr. Hall to make introductions between Defendant Raizada and individuals with the technical skills (i.e., "hackers") to change the appearance of results arising from a search using search engines such as Google.  According to Mr. Hall, Mr. Raizada wanted to use individuals with these technical skills to conceal search engine results that cast, or could cast, Mr. Raizada in a less-than-favorable light such as results, among others, yielding various articles about disputes between Mr. Raizada and his former business partners, which disputes alleged breaches of fiduciary duties, among other unbecoming conduct (*see* the discussion of the Raizada Breach of Fiduciary Duty Suit *supra* ¶ 63).  Mr. Hall explained to Ms. Suber that Mr. Hall did, in fact, put Mr. Raizada in touch with hackers in order to conceal certain facts that portrayed Mr. Raizada in a negative light in advance of the October 2017 trial in the Raizada Breach of Fiduciary Duty Suit, which was held in Kansas City, Missouri.  Note that these acts of concealment impaired others, including third party investors in the Vision Esports Entities, Plaintiff and other then-newly hired employees of VVP Services, from conducting a complete investigation of Defendant Raizada and his professional background.

85.    *As a result, Defendants Raizada and Sclavos, acting with and through the four entity Defendants, had a duty not to engage any in-house lawyer at all and not hire Ms. Suber*, but at a minimum, Defendants had a duty to expressly tell Ms. Suber that Vision Venture Partners and VVP Services constituted a fraudulent enterprise.  With the referral of the opportunity to serve as the lead transactional attorney coming through **TWO HARVARD LAW SCHOOL GRADUATES** and to work for **YET ANOTHER HARVARD LAW**

**SCHOOL GRADUATE** who then-served as General Counsel, Defendants Raizada and Sclavos, on behalf of themselves and the four entity Defendants, adeptly covered their tracks and intentionally concealed the fraudulent enterprise by concealed and suppressed then-current and existing material facts from Ms. Suber and many, many other individuals.  And again, so sophisticated, elaborate and obfuscated was Defendants' fraudulent enterprise and conspiracy, and the continued concealment thereof, that Rick Fox, himself a primary "mark" of Defendants' fraud, **_did not discover_** Defendants' fraudulent enterprise, schemes and conspiracy, or the material detriments effected upon him, **_until late 2018_**.  *See, e.g.*, the Fox Complaint, generally.

<u>DEFENDANT SCLAVOS, IN CONCERT AND IN COORDINATION WITH OTHER DEFENDANTS, FRAUDULENTLY INDUCED AND CAUSED DAMAGE, HARM AND INJURY TO OTHER INDIVIDUALS</u>

86.     **Plaintiff provides the following information set forth in ¶¶ 86-90 to illustrate to the Court that fraudulent conduct is a pervasive pattern with all of the Defendants**:  In late 2018, Mr. Mossholder was fraudulently induced by Defendant Sclavos, who was acting in concert and in coordination with other Defendants, to loan material amounts of money to certain portfolio companies affiliated with Vision Venture Partners, LLC, specifically, (a) Echo Fox, LP, (b) Twin Galaxies, LLC, and (c) Defendant Prometheus Ventures, LLC (the three such material loans, the "**Mossholder Material Loans**." When made, the **_principal amount of the Loans totaled over $800,000, or an amount that represented approximately 88 percent of Mr. Mossholder's total savings!_**  Defendant Sclavos induced Mr. Mossholder to make the Mossholder Material Loans in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, because Defendant Raizada and Sclavos needed liquidity to keep the Enterprise and Conspiracy afloat.  In order to induce Mr. Mossholder to make the

Mossholder Material Loans, Defendant Sclavos included as consideration, among other provisions, for **_each_** of the Loans (a) a return of 15 percent per annum (calculated on a daily basis), and (b) a personal guaranty from Defendant Sclavos (the guaranties together, the "**Sclavos Personal Guaranties**").  The Sclavos Personal Guaranties corresponding to the two Loans were, in each case, executed by each of Mr. Mossholder and Defendant Sclavos.

87.    During the negotiation of the Loans, and up through the time of the execution of the promissory notes, the execution of the Sclavos Personal Guaranties and the funding of the Loans by Mr. Mossholder (through the Fedwire Transfer System), which events were substantially contemporaneous, Defendant Sclavos continued to represent to Mr. Mossholder that Defendant Sclavos **then-possessed** the net worth and financial wherewithal to **then-support** the Sclavos Personal Guaranties, i.e., that the Sclavos Personal Guaranties actually **then-possessed** some value as consideration offered to induce Mr. Mossholder to make the Loans.  However, the foregoing were intentional, deliberate and material misrepresentations of **then-existing** material facts by Defendant Sclavos, because Defendant Sclavos was then and continues to be illiquid and/or insolvent.  Furthermore, not only did Defendant Sclavos materially misrepresent the net worth and financial wherewithal Sclavos **then-possessed** to Mr. Mossholder, Defendant Sclavos **_actively, intentionally and deliberately concealed_** from Mr. Mossholder that Sclavos was, at that time, illiquid, if not insolvent.  Furthermore, Defendant Sclavos and others associated with Defendants Vision Venture Partners and VVP Services, concealed the **then-existing** Sclavos Drug Problem from Mr. Mossholder.  So tremendously convincing were Defendant Sclavos's misrepresentations and concealments of **then-existing** material facts that Mr. Mossholder sourced the funds – initially almost one million dollars – from monies earmarked for his hard-earned retirement funds.  If Mr. Mossholder had known

about Sclavos's precarious financial situation (to the point of illiquidity and/or insolvency), if Mr. Mossholder had known about the Sclavos Drug Problem or about any of the other conduct engaged in by Defendants and in furtherance of the VVP Fraudulent Enterprise and the VVP Conspiracy, Mr. Mossholder never would have made the Loans.  Mr. Mossholder reasonably and justifiably relied to his detriment on the material misrepresentations and concealments of **<u>then-existing</u>** material facts, and in doing so, Mr. Mossholder has suffered damages, harm and injury, well in excess of the principal balance outstanding under the Loans.

88.     In accordance with the terms of the promissory notes, (a) the outstanding principal and interest under the Twin Galaxies Loan and (b) the outstanding principal and interest under the Prometheus Ventures Loan were due and payable on April 2, 2019.  However, in the case of each such Loan, the principal and interest were not then-paid to Mr. Mossholder, and as a result, each of Twin Galaxies and Prometheus Ventures, as borrowers, triggered an Event of Default under their respective Loans.  In addition to causing "all accrued interest, costs, expenses, charges, disbursements and fees" under the Loans to be immediately due, the Event of Default triggered the applicable interest rate to be automatically increased to 18 to 20 percent per annum.   In addition, under the terms of the Sclavos Personal Guaranties corresponding to the Twin Galaxies Loan and the Prometheus Ventures Loan, Mr. Mossholder was entitled to collect all such amounts due and payable under the Loans from Defendant Sclavos, and Defendant Sclavos became obligated to pay Mr. Mossholder all such amounts.

89.     Defendant Sclavos has not paid Mr. Mossholder the amounts due to Mr. Mossholder under the Sclavos Personal Guaranties, because, of course, Sclavos is, on paper, illiquid and/or insolvent, subject to the forthcoming sale of the residence in which he continues to hold an ownership interest, which residence is currently listed at $29,500,000 and other funds

believed to be hidden from judgment and other creditors through trusts and structures crafted

with the aid of Defendant Raizada.[57]

90.     In 2018, 2019, and 2020, on multiple occasions and during the course of Mr.

Mossholder's employ with Defendant VVP Services, VVP Services was not able to meet its the

payroll obligations to several of its employees, including Mr. Mossholder, in violation of

Sections 202, 204 and 210 of the California Labor Code and in violation of the Mossholder

Employment Agreement.  As a result of such failures to pay, Defendant VVP Services continues

to owe Mr. Mossholder his salary from that time frame in an amount of approximately $50,000,

which is exclusive of statutory penalties applicable under the California Labor Code.

## CAUSES OF ACTION[58]

## V.     CAUSE OF ACTION 1:  FRAUD IN THE INDUCEMENT UNDER NEW STATE YORK LAW
### (*against all Defendants*)

91.     Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding

paragraph as though fully set forth herein.

---

[57] *See* Zillow Group, Inc. real-time listing at https://www.zillow.com/homedetails/1305-Collingwood-Pl-Los-Angeles-CA-90069/20799161_zpid/ (last visited March 10, 2021).

[58] Plaintiff reserves the right to state additional causes of action and requested relief, including in the form of all remedies available at law and in equity, as Plaintiffs uncover additional diligence and information through discovery and their continuing investigations of Defendants' conduct.  For example, Ms. Suber believeS that Defendant VVP Services is withholding healthcare insurance premium rebates, which Blue Shield of California issued to VVP Services for further distribution to Ms. Suber, who was insured through the VVP Services Blue Shield of California plan.  The premium rebates relate to certain requirements under the Affordable Care Act and "Medical Loss Ratio Rebates."  See, e.g., https://www.blueshieldca.com/bsca/bsc/public/common/PortalComponents/member/StreamDocumentServlet?fileName=BSCA_MLR_Talking_Points-FAQs.pdf (last visited March 10, 2021).

92.     An employee who was induced to go to work for an employer in reliance upon pre-employment then-current misrepresentations or omissions of material facts by the employer is entitled to sue that employer for fraud and/or misrepresentation.

93.     MISREPRESENTATIONS OR OMISSIONS OF THEN-CURRENT/EXISTING MATERIAL FACTS BY DEFENDANT RAIZADA DURING THE RECRUITING PERIOD AND MS. SUBER'S TENURE.  During the Recruiting Period and continuing at least through the end of Ms. Suber's tenure, Defendant Raizada, acting for himself, with and through the other Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, together with agents acting for, on behalf of or at the direction of Defendant Raizada, articulated, and made, myriad misrepresentations of then-current material facts, and omitted to state then-current material facts.

94.     MISREPRESENTATIONS OR OMISSIONS OF THEN-CURRENT/EXISTING MATERIAL FACTS BY DEFENDANT SCLAVOS DURING MS. SUBER'S TENURE.  During Ms. Suber's tenure, Defendant Sclavos, acting for himself, with and through the other Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, and together with agents acting for, on behalf of or at the direction of Defendants Sclavos, articulated, and made, myriad misrepresentations of then-current material facts, and omitted to state then-current material facts.

95.     EXEMPLAR MISREPRESENTATIONS AND OMISSIONS, AND CONCEALMENT, OF THEN-CURRENT/EXISTING MATERIAL FACTS.  Among the misrepresentations and omissions of then-current / existing material facts that Defendants Raizada and/or Sclavos, acting for themselves, with and through the other Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, together with agents acting for, on behalf of or at the direction

of Defendants Raizada and Sclavos, made or failed to make, include, without limitation, the following, among many others:

a.  **FINANCIAL WHEREWITHAL AND BUSINESS ACUMEN OF THE INDIVIDUAL PARTNERS BEHIND VISION VENTURE PARTNERS AND THE FINANCIAL HEALTH OF VISION VENTURE PARTNERS AND VVP SERVICES**

   i.  **EXEMPLAR MISREPRESENTATIONS OF THEN-CURRENT FACTS**

   (1)    Mr. Raizada and Mr. Sclavos **then-possessed** significant capital and liquidity to support the development of Vision Venture Partners and VVP Services.

   (2)    Mr. Sclavos **then-possessed** substantial, personal fortunes that would be used as the bases for investment and building an "esports empire" to rival Riot Games and Activision Blizzard and a "real estate and hospitality empire" to rival that of his self-proclaimed "friend," Mr. Stephen M. Ross of The Related Companies.

   (3)    "Mr. Sclavos is a billionaire with a net worth of several billion dollars."

   (4)    Vision Venture Partners **then-possessed** a strong balance sheet, and Vision Venture Partners and VVP Services **then-possessed** a "solid financing footing."

   ii.  **COMPARE: ACTUAL THEN-CURRENT MATERIAL FACTS**

   (1)    Mr. Raizada did not appear to have a material net worth, because as pleaded in the Fox Complaint, Mr. Raizada used the resources of VVP Services, Vision Venture Partners and/or its affiliates to support Mr. Raizada's life style.

   (2)    Mr. Sclavos did not, then, and does not, now, have a net worth that is

several billion dollars, and Mr. Sclavos, prior to and during Ms. Suber's tenure, was illiquid if not insolvent.  As previously pleaded herein, Mr. Sclavos at times was unable to pay his utility bills, had at least one credit card revoked (his "black card") and had to use the credit card of one of his employees to pay one of Mr. Sclavos's lavish parties at home.

(3)     Mr. Sclavos was not, then, and is not, now, a billionaire.

(4)     Vision Venture Partners did not then-possess a strong balance sheet, and neither Vision Venture Partners nor did VVP Services then-possess a "solid footing," because these entities were at the heart of the VVP Fraudulent Enterprise and VVP Conspiracy, as discussed herein and as supported by the factual allegations of Defendants Raizada's and Sclavos's close associate, Rick Fox (who was also a primary "mark" of the fraudulent enterprise).

### b.   MR. RAIZADA'S PRIOR HISTORY RELATING TO BREACH OF FIDUCIARY DUTY

#### i.   EXEMPLAR MISREPRESENTATIONS OF THEN-CURRENT FACTS

(1)      Mr. Raizada asserted that he did not engage in any conduct that could be construed as having breached the fiduciary duty of his former partners in connection with PHC's breach of fiduciary duty claims.

(2)     Mr. Raizada asserted that his former partners were lying about him in connection with PHC's breach of fiduciary duty claims.

#### ii.   COMPARE:  ACTUAL THEN-CURRENT MATERIAL FACTS

(1)     Mr. Raizada was held liable for jury award in the amount of $6.1 million

resulting from PHC's breach of fiduciary duty claims.  Interestingly, the Raizada

Breach of Fiduciary Duty Suit, as defined in ¶ 63.b, *supra*, was commenced by Mr.

Raizada.  However, quickly into that proceeding, the presiding judge dismissed Mr.

Raizada's claims, and the proceeding continued with only the causes of action of

the counterclaim Plaintiff (formerly the defendants), and it was from those

counterclaim causes of action that the $6.1 million judgement arose.  That sequence

of events speaks volumes about Mr. Raizada.

### c.  NATURE, KIND, CHARACTER AND QUALITY OF THE WORK IN WHICH MS. SUBER WOULD ENGAGE AT VVP SERVICES AND WITH WHOM MS. SUBER WOULD WORK.

#### i.  EXEMPLAR MISREPRESENTATIONS, OMISSIONS AND CONCEALMENT OF THEN-CURRENT FACTS

(1)    During the first in-person interview, Mr. Raizada provided Ms. Suber

with examples of the kind, nature and type of work – the "quality" of work – in

which VVP Services **then-engaged**, for example, an "esports league agreement"

and a "joint venture agreement."  Mr. Raizada advised Ms. Suber that was exactly

the kind, nature, type and quality of work with which Ms. Suber would be engaged

as the lead transactional lawyer for VVP Services.  Defendants Raizada and Sclavos

omitted to tell Ms. Suber a material fact when they failed to disclose that Ms. Suber

would be working with, and taking direction from, Mr. Rashid, who, as detailed

above, was, and continues to be, the subject of an SEC enforcement proceeding, the

SEC-Rashid Matter (as described above), and who, in coordination and concert with

Defendant Raizada, orchestrated the Dilutive Entity Restructuring that was intended

to, and ultimately did, inflict financial harm upon Rick Fox.

(2)     Defendants Raizada and Sclavos (as did other agents of VVP Services and Vision Venture Partners) failed to mention that Defendant Sclavos had a **then-current and then-significant** drug problem ("**Sclavos Drug Problem**"). In order to ensure continuance of the omission regarding his drug problem, Mr. Sclavos was, a great deal of the time, kept in his office, with his assistant acting as gatekeeper for those who wanted to see Mr. Sclavos for business reasons.

### ii.  <u>COMPARE:  ACTUAL THEN-CURRENT MATERIAL FACTS</u>

(1)     Not long after Ms. Suber began working for VVP Services, Ms. Suber found herself in an environment in which Defendants engaged in ongoing misconduct and not the legitimate business that would have necessitated the transactional work Mr. Raizada expressly described to Ms. Suber. Defendant Raizada deliberately failed to tell Ms. Suber that any such conduct could or would occur at VVP Services or any of its affiliates, including without limitation, the Dilutive Entity Restructuring discussed in ¶ 48 *supra* and the Sclavos Concealed Loan discussed in Footnote 37, ¶ 58, *supra*.

(2)     After Ms. Suber resigned from VVP Services, Ms. Suber learned from both Rick Fox and Mr. Hall, who worked closely with Mr. Sclavos, that Defendant Sclavos's then-current drug problem was severe and comprised his decision-making abilities. The Sclavos Drug Problem undoubtedly affected Defendant Sclavos's business judgment.

96.     **DEFENDANTS RAIZADA AND SCLAVOS KNEW THE MISREPRESENTATIONS AND OMISSIONS WERE FALSE AND MISLEADING**. The misrepresentations and omissions, individually

and in the aggregate, resulted in misrepresentations of then-current material facts to Ms. Suber. At the time Defendants Raizada and Sclavos, acting for themselves, with and through the other Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, made the misrepresentations and omissions of material facts, Defendants knew the material facts conveyed through the misrepresentations and omissions were false and misleading, and they had no reasonable grounds for believing those false and misleading facts to be true.

97.     **DEFENDANTS RAIZADA AND SCLAVOS MADE THE MISREPRESENTATIONS AND COMMITTED THE OMISSIONS WITH THE INTENTION OF INDUCING MS. SUBER'S RELIANCE UPON THOSE MISREPRESENTED AND OMITTED MATERIAL FACTS**.  Defendants Raizada and Sclavos, acting for themselves, with and through the other Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, made the misrepresentations and omissions of then-current material facts with the intention of inducing Ms. Suber's reliance upon those misrepresented and omitted material facts.    Individual defendants made these misrepresentations as both principals of defendant companies, for which the companies are vicariously liable, and as an overt act pursuant to and in furtherance of an agreement and coordinated efforts between the defendants to carry out their plan to create a fraudulent enterprise, the VVP Fraudulent Enterprise, and the VVP Conspiracy.

98.     **MS. SUBER REASONABLY RELIED AND WAS JUSTIFIED IN ACTING IN RELIANCE**.  Ms. Suber did not know the misrepresentations and omissions of material facts made by Defendants Raizada and Sclavos were false, and Ms. Suber's not knowing was directly affected (and exacerbated) by Defendants Raizada's and Sclavos's coordinated and active concealment of their "superior knowledge" and "exclusive knowledge" of the then-current material facts.  Ms. Suber reasonably relied, and was justified in acting in reliance, upon those

misrepresentations and omissions of then-current material facts in accepting the offer of employment from VVP Service and executing the Offer Letter.  If Ms. Suber had known of the misrepresentations and omissions of then-current material facts, she never would have accepted the role with VVP Services, and Ms. Suber never would have relocated to Los Angeles, California.

99.     All conduct alleged in the foregoing paragraphs under this Cause of Action 1 constitutes fraud in the inducement in violation of the laws of the State of New York.

100.     **DEFENDANTS' CONDUCT CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER**. Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services and which conduct included, without limitation, making misrepresentations and committing omissions of then-current material facts, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

### VI.     CAUSE OF ACTION 2:  FRAUD IN THE INDUCEMENT UNDER CALIFORNIA STATE LAW
*(against all Defendants)*

101.     Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

102.     All conduct alleged under Cause of Action 1 constitutes fraud in the inducement in violation of the laws of the State of California.

103.     **DEFENDANTS' CONDUCT CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER**. Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven

Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services and which conduct included, without limitation, making misrepresentations and committing omissions of then-current material facts, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

## VII. CAUSE OF ACTION 3: INTENTIONAL MISREPRESENTATION BY MISREPRESENTATION OF FACT (CAL. CIV. CODE. SEC. 1710(1))
*(against all Defendants)*

104. Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

105. All conduct alleged under Cause of Action 1 additionally constitutes a violation of California Civil Code Section 1710(1).

106. **DEFENDANTS' CONDUCT CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER.** Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services and which conduct included, without limitation, making misrepresentations and committing omissions of then-current material facts, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

## VIII. CAUSE OF ACTION 4: NEGLIGENT MISREPRESENTATION (CAL. CIV. CODE. SEC. 1710(2))
*(against all Defendants)*

107. Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

108.    All conduct alleged under Cause of Action 1 additionally constitutes a violation of California Civil Code Section 1710(2).

109.    Defendants made false representations, or misrepresentations, without having any grounds to believe they were true.

110.    Defendants made those false representations, or misrepresentations, in the course of a business or professional relationship.

111.    The misrepresentations and omissions, individually and in the aggregate, resulted in misrepresentations of then-current, or existing, material facts to Ms. Suber. At the time Defendants made the misrepresentations and omissions of then-current, or existing, material facts, Defendants knew the material facts conveyed through the misrepresentations and omissions were false and misleading.

112.    Defendants made the false representations, or misrepresentations, and omissions of then-current material facts with the intention of inducing Ms. Suber's reliance upon those misrepresented and omitted facts.  Individual defendants made these misrepresentations as both principals of defendant companies, for which the companies are vicariously liable, and as an overt act pursuant to and in furtherance of an agreement between the defendants to carry out their plan to create a fraudulent enterprise.

113.    If Ms. Suber had known of the misrepresentations and omissions of material facts, she never would have accepted the role with VVP Services, and among other things, Ms. Suber never would have relocated to Los Angeles, California.

114.    Ms. Suber reasonably relied upon those misrepresentations and omissions of material facts in accepting the offer of employment from VVP Service and executing the Offer Letter.

115.   **DEFENDANTS' CONDUCT CAUSED INJURY AND DAMAGE TO MS. SUBER**.
Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven
Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture
Partners and VVP Services and which conduct included, without limitation, making
misrepresentations and committing omissions of then-current material facts, all in furtherance
of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages,
harm and injury.

## IX.   CAUSE OF ACTION 5:  INTENTIONAL MISREPRESENTATION BY CONCEALMENT (CAL. CIV. CODE. SEC. 1710(3))
(*against all Defendants*)

116.   Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding
paragraph as though fully set forth herein.

117.   **DEFENDANTS INTENTIONALLY CONCEALED OR SUPPRESSED MATERIAL FACTS**.
Defendants Raizada and Sclavos, acting for themselves, with and through the four entity
Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy,
intentionally concealed and suppressed then-current and existing material facts from Ms. Suber,
for example, as described *supra* ¶ 95, including without limitation, the concealment of the kind,
character, type and quality of work Ms. Suber would be tasked with doing, including the
Dilutive Entity Restructuring as defined and discussed *supra* ¶ 48, which Dilutive Entity
Restructuring was intended to benefit only Defendant Raizada, Defendant Eleven Stones and
Mr. Rashid, all at the expense of, and to the detriment of, Rick Fox.  Defendants Raizada and
Sclavos, acting for themselves, with and through the four entity Defendants and in furtherance
of the VVP Fraudulent Enterprise and VVP Conspiracy, also actively, continuously and

deliberately concealed the Sclavos Drug Problem. Throughout the course of Ms. Suber's tenure, Defendant Raizada personally threatened Ms. Suber to "stay away" from Defendant Sclavos, because Defendant Sclavos was "too busy to be bothered with a lawyer"; however, Defendant Raizada used the foregoing reason to masque that, at any given point in time, Defendant Sclavos could be in his office using one or more legal or illegal drugs.  And, at one point, in or about December 2017, Defendant Raizada made, and caused to be made, an announcement that Defendant Sclavos could not be seen without an appointment.

118.   **DEFENDANTS RAIZADA AND SCLAVOS AND THE FOUR ENTITY DEFENDANTS WERE UNDER A DUTY TO DISCLOSE THE MATERIAL FACTS**.  Defendants Raizada, Sclavos and the four entity Defendants had a duty to disclose to Ms. Suber the concealed and suppressed then-current and existing material facts as explained  *supra* ¶¶ 82-85.

119.   **DEFENDANTS INTENTIONALLY CONCEALED AND SUPPRESSED MATERIAL FACTS WITH THE INTENT TO DEFRAUD MS. SUBER**. Defendants Raizada, Sclavos, and the four entity Defendants intentionally concealed the material facts with the intent to defraud Ms. Suber so that she would act in reliance as a result of not knowing the concealed and suppressed then-current and existing material facts.   Specifically, Defendants intentionally concealed the material facts with the intent to defraud Ms. Suber so that Ms. Suber would not know that her work product could be, would be, and ultimately was, used in furtherance of their fraudulent scheme and enterprise as discussed further *supra* ¶¶ 82-85.

120.   **PLAINTIFF MS. SUBER WAS UNAWARE AND WOULD HAVE ACTED DIFFERENTLY IF PLAINTIFF MS. SUBER HAD KNOWN OF THE CONCEALED AND SUPPRESSED FACTS**.  Ms. Suber was unaware of the concealed and suppressed material facts, and Ms. Suber would have acted differently had she been aware of the concealed and suppressed material facts.

Furthermore, given that Ms. Suber had been recruited through one of the premier legal recruiting firms in the nation, founded by two fellow alumni of Harvard Law School, and given that Ms. Suber would be working for yet another fellow alum of Harvard Law School, then-General Counsel Mr. Diamond, Ms. Suber had no reason to believe that any material facts were being concealed or suppressed.

121. **DEFENDANTS' CONCEALMENT AND SUPPRESSION OF MATERIAL FACTS CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER**.  Defendants Raizada's and Sclavos's concealment and suppression of then-current and existing material facts, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

## X. CAUSE OF ACTION 6:  INTENTIONAL MISREPRESENTATION BY PROMISSORY FRAUD (CAL. CIV. CODE. SEC. 1710(4))
*(against all Defendants)*

122. Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

123. **DEFENDANTS MADE A PROMISE**.   As pleaded herein, prior to the acceptance by Ms. Suber of the offer of employment from VVP Services, Defendant Raizada, acting for, on behalf of, the other Defendants, promised Ms. Suber an equity participation in the venture through the "Vision Venture Partners Equity Participation Plan," discussed in detail *supra* ¶ 40, which equity participation would survive Plaintiff's departure from VVP Services. Defendant Raizada made this promise, on behalf of his co-conspirator Defendant Sclavos, with Defendant Raizada and Sclavos being principals of Defendant entities, for which the entities are vicariously liable, and as an overt act pursuant to and in furtherance of an agreement between the Defendants to carry out their plan to create a fraudulent enterprise, i.e., the VVP Fraudulent

Enterprise and the VVP Conspiracy.

124.    Defendants omitted that promise from Ms. Suber's Offer Letter on the basis that it required future drafting of an equity participation program and plan by Ms. Suber. Defendant Raizada expressly said that the only reason that an equity participation program did not already exist is that Defendant Raizada and Defendant Sclavos needed an attorney like Ms. Suber to draft the program plan.

125.    **DEFENDANTS DID NOT INTEND TO PERFORM THE PROMISE AT THE TIME DEFENDANTS MADE THE PROMISE**.  Defendants' promise was false when made and Defendants never intended to perform, or carry out the promise.  In fact, it is clear that the failure to create an equity participation program, as they promised Ms. Suber, was part of the VVP Fraudulent Enterprise and VVP Conspiracy crafted by Defendants.

126.    **PLAINTIFF MS. SUBER WAS UNAWARE OF THE FALSITY OF DEFENDANTS' PROMISE**. Ms. Suber was unaware of the falsity of the promise made in respect of the equity participation program, the "Vision Venture Partners Equity Participation Plan," discussed in detail *supra* ¶ 40.  The Defendants' misrepresentations and omissions, and given Defendants' concealment and suppression, of material facts in respect of the VVP Fraudulent Enterprise and the VVP Conspiracy, was intended to keep Ms. Suber unaware.

127.    **PLAINTIFF MS. SUBER ACTED IN RELIANCE UPON DEFENDANTS' PROMISE AND WAS JUSTIFIED IN DOING SO**. Ms. Suber reasonably relied upon that promise in accepting the offer of employment from VVP Service and executing the Offer Letter, and Ms. Suber was justified in doing so.

128.    **DEFENDANTS' CONDUCT CAUSED INJURY AND DAMAGE TO MS. SUBER**. Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven

Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services and which conduct included, without limitation, making promises known to be false and which promises Defendants had no intention of performing or carrying-out, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

## XI.   CAUSE OF ACTION 7:  NEGLIGENT MISREPRESENTATION UNDER NEW YORK STATE LAW
### *(against all Defendants)*

129.   Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

130.   **DEFENDANT HAD A DUTY, AS A RESULT OF A SPECIAL RELATIONSHIP, TO GIVE CORRECT INFORMATION TO PLAINTIFF MS. SUBER**.  Defendants Raizada, Sclavos and the four entity Defendants had a duty to give Ms. Suber correct information and a duty not to make misrepresentations of then-current and existing material facts as explained *supra* ¶¶ 82-85. Defendants had such a duty as explained *supra* ¶¶ 82-85 and under the Special Facts Doctrine.[59]

131.   **DEFENDANTS MADE MISREPRESENTATIONS THAT DEFENDANTS KNEW WERE FALSE AND MISLEADING**.  Defendants Raizada and Sclavos, acting for themselves, with and through the four entity Defendants and in furtherance of the VVP Fraudulent Enterprise and

---

[59] Mariano v. CVI Invs. , 19-2929, at *6 (2d Cir. Apr. 20, 2020) ("The special facts doctrine requires that (1) the defendant must have failed to disclose a "material fact [that] was information 'peculiarly within [the] knowledge' of [the defendant]" and (2) "that the information was not such that could have been discovered by [the plaintiff] through the 'exercise of ordinary intelligence,'" Jana L. v. W. 129th St. Realty Corp., 802 N.Y.S.2d 132, 135 (1st Dep't 2005) (quoting Black v. Chittenden, 69 N.Y.2d 665, 669 (1986)), and the defendant "knows that the other [party] is acting on the basis of [this] mistaken knowledge," Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n, 731 F.2d 112, 123 (2d Cir. 1984). "). *See also* Sports Tech. Applications, Inc. v. MLB Advanced Media, L.P., 2020 N.Y. Slip Op. 6973 (N.Y. App. Div. 2020).

VVP Conspiracy, intentionally misrepresented and omitted then-current and existing material facts to Ms. Suber, for example, as described *supra* ¶ 95, and at the time, Defendants knew that the then-current and existing material facts, as misrepresented by Defendants, were false and misleading.  As discussed above and *supra* ¶ 95, Defendants did so in respect of material facts relating to, among other things:

    a.    the financial wherewithal and business acumen of the individual partners behind Vision Venture Partners and VVP Services and the financial health of Vision Venture Partners and VVP Services;

    b.    Mr. Raizada's prior history relating to his breach of fiduciary duties owned to his former business partners; and

    c.    the nature, kind, character and quality of work in which Ms. Suber would engage while employed by VVP Services and with whom Ms. Suber would work.

   132.   For example:

    a.    In respect of the financial wherewithal and business acumen of the individual partners behind Vision Venture Partners and VVP Services and the financial health of Vision Venture Partners and VVP Services, Defendants Raizada and Sclavos knew with certainty that Mr. Sclavos had been suffering financial difficulties and was illiquid (if not insolvent) for a significant time period of time in advance of the solicitation for employment and subsequent hiring of Ms. Suber.  It is clear that Defendants Raizada and Sclavos had such knowledge, because the Controller of VVP Services and long-time associate of Mr. Raizada, managed Mr. Sclavos's business and personal financial accounts, including paying Mr. Sclavos's utility bills for his Hollywood Hills residence, including when one or more utilities in the course of 2017 sought to terminate service

for non-payment.  Furthermore, Defendant Raizada and other agents of Vision Venture Partners and VVP Services knew of the Sclavos Drug Problem, because Defendant Raizada, those agents and others conducted "an intervention" in the Beverly Hills, California office of VVP Services in July 2017.

b.       In respect of Mr. Raizada's prior history relating to his breach of fiduciary duties owned to his former business partners, Mr. Raizada knew that his affirmative conduct led to the $6.1 million judgment against him in the Raizada Breach of Fiduciary Duty Suit.  In fact, disputes arising from that Suit continue to be litigated in Kansas City, Missouri as of the date hereof.

c.       In respect of the nature, kind, character and quality of work in which Ms. Suber would engage while employed by VVP Services and with whom Ms. Suber would work, Defendants Raizada and Sclavos knew that, in order to maintain and further the VVP Fraudulent Enterprise and the VVP Conspiracy, they would ask employees of VVP Services, including Ms. Suber, to engage in work that was seemingly innocuous but ultimately had deleterious effects, including without limitation and for example, the Dilutive Entity Restructuring and the Sclavos Concealed Loan.

133.    **INFORMATION SUPPLIED IN THE MISREPRESENTATIONS WAS KNOWN BY DEFENDANTS TO BE DESIRED BY THE PLAINTIFF MS. SUBER IN PLAINTIFF MS. SUBER'S CONSIDERATION, AND ULTIMATE ACCEPTANCE, OF THE EMPLOYMENT OFFER**.  The information supplied in the misrepresentations made by Defendant Raizada and other representatives of VVP Services was known by Defendants Raizada, Vision Venture Partners and VVP Services to be desired by the Ms. Suber, because Ms. Suber asked specific questions about the topics and issues addressed in Defendants' misrepresentations, including without

limitation and for example, the business judgment and acumen of the partners of Vision Venture Partners, the financial health of the enterprise (including Vision Venture Partners, VVP Services and the portfolio companies), and the nature, kind, character and quality of work in which Ms. Suber would engage while employed by VVP Services and with whom Ms. Suber would work.

134.     **PLAINTIFF MS. SUBER INTENDED TO RELY AND ACT UPON THE INFORMATION SUPPLIED IN THE MISREPRESENTATIONS**.  As any reasonable person would, Ms. Suber intended to rely upon the topics and issues addressed in Defendants' misrepresentations, including without limitation and for example, the business judgment and acumen of the partners of Vision Venture Partners, the financial health of the enterprise (including Vision Venture Partners, VVP Services and the portfolio companies), and the nature, kind, character and quality of work in which Ms. Suber would engage while employed by VVP Services and with whom Ms. Suber would work.

135.     **PLAINTIFF MS. SUBER REASONABLY RELIED ON UPON THE INFORMATION SUPPLIED IN THE MISREPRESENTATIONS TO HER DETRIMENT**.  The information supplied in the misrepresentations was not such that could have been discovered by Ms. Suber through the exercise of ordinary intelligence, because as discussed *supra* ¶ 85, so sophisticated, elaborate and obfuscated was Defendants' fraudulent enterprise and conspiracy, and the continued concealment thereof, that even a "partner" and "close associate" of Defendants Raizada and Sclavos – ***Rick Fox, himself a primary "mark" and "prey" of Defendants' fraud*** – did not discover Defendants' fraudulent enterprise, schemes and conspiracy, or the material detriments effected upon him or others, until late 2018.

136.     **DEFENDANTS' CONDUCT CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER.**

Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

## XII.   CAUSE OF ACTION 8:  SOLICITATION OF EMPLOYEE BY MISREPRESENTATION
### (CAL. LABOR CODE SEC. 970)
*(against all Defendants)*

137.   Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

138.   **DEFENDANTS MADE KNOWINGLY FALSE REPRESENTATIONS, OR MISREPRESENTATIONS, CONCERNING WORK.**  Defendant Raizada, acting for himself and on behalf of Defendant Sclavos, with and through the four entity Defendants and in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, intentionally misrepresented and omitted then-current and existing material facts from Ms. Suber, for example, as described *supra* ¶ 91, and at the time, Defendants knew that the then-current and existing material facts, as misrepresented by Defendants, were false and misleading.

139.   Defendants intentionally misrepresented both (1) the kind, character and existence of the work; and (2) the compensation for that work.

140.   Defendants knew the representations, when made to Ms. Suber, were not true; Defendants made knowingly false representations to Ms. Suber.

141.   **DEFENDANTS INTENDED TO INDUCE PLAINTIFF TO RELOCATE TO CALIFORNIA FROM NEW YORK.**  Defendants deliberately made the misrepresentations to induce Plaintiff Ms. Suber to relocate from New York to California, were reasonably relied upon by Ms. Suber

and did induce Ms. Suber to relocate to from New York to California. Ms. Suber would not have relocated in the absence of these misrepresentations.

142.   **DEFENDANTS' CONDUCT CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER.** Plaintiff Ms. Suber incurred damages as a result of the move and is entitled to double damages pursuant to California Labor Code Section 972.

## XIII.   CAUSE OF ACTION 9:  PROMISSORY ESTOPPEL
### *(against all Defendants)*

143.   Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

144.   Equity and justice require that Defendant be required to perform the promise that Defendants made to Ms. Suber.

145.   **DEFENDANTS MADE A PROMISE TO PLAINTIFF MS. SUBER**. Defendants promised Ms. Suber that she would receive an equity share as part of her compensation through an equity participation that was to be known as the "Vision Venture Partners Equity Participation Plan," discussed in detail *supra* ¶ 40.

146.   **DEFENDANTS KNEW THE PROMISE WAS REASONABLY EXPECTED TO INDUCE ACTION**.  Equity participation in a company or group of companies, or "equity compensation" is a common and widespread strategy for companies to attract and retain employees.  Equity compensation is a desirable form of compensation to a job candidate and prospective employee, and in nearly all roles such as the role Ms. Suber accepted, that of Deputy General Counsel, "equity compensation" must be part of the compensation package.  In addition, Ms. Suber explained to Defendant Raizada and Mr. Diamond that equity compensation was an essential part of the overall compensation package.

147.     **DEFENDANTS MADE PROMISE WITH THE INTENT THAT PLAINTIFF MS. SUBER WOULD ACT**.   Given the discussion among Mr. Raizada, Mr. Diamond and Ms. Suber, Defendant Raizada knew that equity compensation was an essential part of the overall compensation package to Ms. Suber, and Defendant Raizada knew if he made the promise of equity compensation to Ms. Suber that Ms. Suber would accept the role offered to her.

148.     **INJUSTICE CAN ONLY BE AVOIDED BY ENFORCEMENT OF DEFENDANTS' PROMISE TO PLAINTIFF MS. SUBER**.   Defendants knowingly and intentionally established the VVP Fraudulent Enterprise and the VVP Conspiracy long before Ms. Suber even knew of any of the Defendants.   Defendants needed to engage employees, including employees such as Ms. Suber, to try to conceal their fraudulent enterprise as a "legitimate business."   And in order to engage Ms. Suber, Defendants, specifically Defendant Raizada, with the knowledge of, on behalf of and for the benefit of the other Defendants, promised Ms. Suber equity compensation to induce her to accept the role with VVP Services and relocated from New York, New York to Los Angeles, California.   Ms. Suber was forced to voluntarily resign as discussed above after only six months, and Ms. Suber was left with not only no form of equity compensation whatsoever, but Ms. Suber was saddled with extensive relocation costs and expenses, among other damages suffered by Ms. Suber.   Injustice can be avoided if Defendants are required to perform their promise and to perform their promise with respect to the nature of the enterprise, which they described in their false and misleading representations.

## XIV.   CAUSE OF ACTION 10:  BREACH OF CONTRACT
*(against all Defendants)*

149.     Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

150.     Plaintiff Ms. Suber and Defendants agreed that Ms. Suber would draft an equity participation program and plan and receive an equity share as part of her compensation.

151.     Ms. Suber commenced work and performed as agreed.

152.     Defendants, without justification, never moved forward with the equity participation program and never awarded Ms. Suber the equity share to which she was entitled.

153.     Ms. Suber was compelled to resign for the reasons set forth herein prior to being able to realize any of the equity compensation.

154.     **DEFENDANTS' BREACH CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER.** Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

### XV.    CAUSE OF ACTION 11:
### WRONGFUL TERMINATION, VIA CONSTRUCTIVE DISCHARGE
*(against all Defendants)*

155.     Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

156.     Defendants took affirmative actions and intentionally created a working environment that forced Ms. Suber to resign from her role as Deputy General Counsel.

157.     Plaintiff Ms. Suber made Defendants or their representatives aware of the working environment, and Defendants or their representatives failed to address the working environment.

158.     From the misconduct as detailed herein, including without limitation, the

Sclavos Concealed Loan, and in the Detailed Resignation Letter (**Exhibit 24**), it is crystal clear that Ms. Suber's working environment was such that no reasonable person would have had any choice other than to resign.

159.    Ms. Suber's working conditions become so intolerable that any reasonable person in Ms. Suber's position would have been compelled to resign.  This is particularly true when combined with the racially hostile work environment Ms. Suber faced as described in ¶¶ 71, 72, and 73.  *See also, e.g.*, the Detailed Resignation Letter (**Exhibit 24**).

160.    **DEFENDANTS' CONDUCT CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER.** As a result of Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, Ms. Suber suffered damages, harm and injury, and the wrongful termination via constructive discharge in violation of public policy was a substantial factor in causing the harm to, and injury and damages to be suffered by, Ms. Suber.

## XVI.   CAUSE OF ACTION 12:  DEFAMATION
*(against all Defendants)*

161.    Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

162.    Defendants Sclavos and Prometheus Ventures, acting with and through Vision Venture Partners and VVP Services, and acting on behalf of Defendant Raizada[60] and Eleven Stones, on one or more occasions, made known one or more false statements about Ms. Suber

---

[60] Plaintiff is informed that Defendant Sclavos did the bidding of Defendant Raizada, because Defendant Sclavos was indebted to Defendant Raizada.  *See, e.g.*, ¶ 182 of the Fox Complaint.

to third parties, and Defendants Sclavos, acting for and on behalf of the other Defendants, made

such false statements deliberately and with negligence without the knowledge of Ms. Suber.

The false statements were made in furtherance of the VVP Fraudulent Enterprise and the VVP

Conspiracy and to conceal the conduct of Defendants.

163.    Specifically, Defendants Sclavos and Prometheus Ventures, acting with and

through Vision Venture Partners and VVP Services, and acting on behalf of Defendant Raizada

and Eleven Stones, on one or more occasions knowingly and intentionally made known one or

more false statements about Ms. Suber to third parties:

d.      Mr.  Robbins;

e.      Other representatives of Shamrock Holdings; and

f.      Other investors in Vision Esports, LP and its affiliates.

164.    Defendant Sclavos told Mr. Robbins and others that Defendants Sclavos and

Raizada terminated Ms. Suber for cause when, in fact, as previously plead, described and

documented herein, Ms. Suber, resigned from VVP Services for cause (as further described

herein).  Defendant Sclavos did so deliberately, and without the knowledge of Ms. Suber, in

order to conceal, and in furtherance of, the VVP Fraudulent Enterprise and the VVP Conspiracy

that was established by Defendant Raizada (by, with and through Defendant Eleven Stones)

and by Defendant Sclavos (by, with and through Defendant Prometheus Ventures).

165.    On the occasions Defendant Sclavos made the false statements about Ms. Suber

to third parties, Defendant Sclavos intended and meant to maliciously degrade and humiliate

Ms. Suber, because Defendant Sclavos wanted to intentionally and materially damage the

reputation of Ms. Suber in the eyes of Mr. Robbins and others, because Ms. Suber possessed

and could share material facts with Mr. Robbins and others that would shed light on the actions

and behaviors of Defendants, including actions and behaviors described above and described in the Fox Complaint.

166.  **DEFENDANTS' BREACH CAUSED INJURY, HARM AND DAMAGE TO MS. SUBER. DEFENDANTS' CONDUCT CAUSED INJURY AND DAMAGE TO MS. SUBER**.  Defendants Raizada's and Sclavos's conduct, which conduct was for and on behalf of Eleven Stones and Prometheus Ventures, which conduct was effected with and through Vision Venture Partners and VVP Services and which conduct included, without limitation, making defamatory statements in respect of Ms. Suber as described above, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, caused Ms. Suber to suffer damages, harm and injury.

## XVII.  CAUSE OF ACTION 13:  DISCRIMINATION – 42 U.S.C. §1981
### (*against all Defendants*)

167.  Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

168.  By the above acts, Defendants Raizada and Sclavos, acting with and through Defendants Vision Venture Partners and VVP Services, have violated 42 U.S.C. § 1981 by discriminating against Ms. Suber because of her race, African-American.

169.  Ms. Suber was treated disparately vis-à-vis non-African American counterparts and comparators.

170.  Mr. Raizada regularly taunted Ms. Suber about her racial background and her business relationships with Messrs. Phillips and English, and as a result, Mr. Raizada treated Ms. Suber differently than other employees of VVP Services who were Caucasian, including compensating her at less than comparable non-African-American co-employees and extending fewer fringe benefits to which the non-African-Americans were entitled in their employment.

171. On a weekly basis during the course of Ms. Suber's employment, Defendant Raizada personally warned and threatened, or caused Ms. Suber to be personally warned and threatened, to "stay away" from Rick Fox, Mr. English and Mr. Phillips.

172. Defendant Raizada and Sclavos, together, set the compensation for Ms. Suber and the other employees of VVP Services, including those listed on the "List of Comparators." *See* ¶ 72, *supra*, and **Exhibit 35**.

173. Defendants acts were with malice and reckless disregard for Ms. Suber's federally protected civil rights.

174. **DEFENDANTS' CONDUCT CAUSED DAMAGES, HARM AND INJURY TO MS. SUBER.** Defendants' conduct, including Defendants' discriminatory practices, caused Ms. Suber to suffer damages, harm and injury.

## XVIII. CAUSE OF ACTION 14: CIVIL CONSPIRACY UNDER NEW YORK STATE LAW
### (*against all Defendants*)

175. Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

176. Defendants Raizada, Eleven Stones, Sclavos and Prometheus Ventures entered, or caused to be entered, into several agreements in connection with the formation, and operation, of Vision Venture Partners and VVP Services, the very foundation of the VVP Fraudulent Enterprise and VVP Conspiracy. Up through at least November 2020, Defendants Raizada and Sclavos, acting with and through Defendants Eleven Stones and Prometheus Ventures, continued to enter into agreements and/or other instruments in respect of Vision Venture Partners and VVP Services as well as other entities associated therewith, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy, including among other

agreements and instruments, a settlement agreement with Rick Fox in resolution of the issues raised in the Fox Complaint, and another agreement in respect of the LCS Cash Proceeds discussed in ¶ 75, *supra*.

177.     Defendants Raizada, Eleven Stones, Sclavos and Prometheus Ventures, acting with and through Vision Venture Partners and VVP Services, as alleged above, committed wrongful acts and took actions in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy.  *For example, among many, many other examples*: Defendants Raizada and Sclavos orchestrated the Sclavos Concealed Loan;  Defendants Raizada and Sclavos caused one or more agreements to be entered into in respect of such Sclavos Concealed Loan; and Defendants Raizada and Sclavos used the Fedwire Transfer System to effect the Sclavos Concealed Loan. Defendants Raizada, Vision Venture Partners and VVP Services made misrepresentations and omissions of material facts, all in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy. Defendants Sclavos, Vision Venture Partners and VVP Services made defamatory statements about Ms. Suber in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy and, in particular, to conceal the VVP Fraudulent Enterprise and VVP Conspiracy.  See also, e.g., ¶¶ 173-185 of the Fox Complaint.  Defendant Raizada orchestrated the Dilutive Entity Restructuring in respect of Rick Fox.

178.     **DEFENDANTS' CONDUCT CAUSED DAMAGES, HARM AND INJURY TO MS. SUBER.** As a result of Defendants' coordinated and concerted acts alleged above, including, without limitation, the VVP Fraudulent Enterprise and VVP Conspiracy, Ms. Suber has suffered damages, harm and injury.

## XIX.   CAUSE OF ACTION 15:  CIVIL CONSPIRACY UNDER CALIFORNIA STATE LAW
*(against all Defendants)*

179.    Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

180.    All conduct alleged under Cause of Action 14 additionally constitutes a civil conspiracy under the laws of the State of California.

181.    **DEFENDANTS' CONDUCT CAUSED DAMAGES, HARM AND INJURY TO MS. SUBER.** As a result of Defendants' coordinated and concerted acts alleged above, including, without limitation, the VVP Fraudulent Enterprise and VVP Conspiracy, Ms. Suber has suffered damages, harm and injury.

## XX.    CAUSE OF ACTION 16:  UNFAIR OR DECEPTIVE BUSINESS PRACTICES IN VIOLAITON OF CAL. CIVIL CODE SEC. 17200
*(against all Defendants)*

182.    Plaintiff Ms. Suber incorporates by reference and re-alleges each preceding paragraph as though fully set forth herein.

183.    Defendants' conduct was unfair, deceptive, and fraudulent in violation of California Civil Code Section 17200.

## XXI.    PRAYER FOR RELIEF MADE BY PLAINTIFF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, and award the following relief:

A.    An award of all appropriate damages in favor of Ms. Suber and against Defendants for damages sustained as a result of Defendants actions in the foregoing causes of action, in an amount to be determined at trial, including double damages and

punitive damages where applicable and any applicable pre- and post-judgment interest;

B.   A declaration by the Court that, to the extent the Court finds that there was any agreement as between Plaintiff Suber, on the one hand, and any of the Defendants, on the other hand, including, without limitation VVP Services, LLC, any such agreement is, and has been, rescinded;

C.   A declaration by the Court confirming that there is no, and there never was an, attorney-client relationship as between Plaintiff, on the one hand, and any of the Defendants, on the other hand;

D.   A declaration by the Court that Plaintiff Suber is entitled to the equity compensation which she was promised;

E.   An accounting of profits of all portfolio companies, including, without limitation, Vision Esports, LP and its associates, by Defendants so that Plaintiff Suber can determine the equity compensation which she was promised and to which she is entitled;

F.   An award of Plaintiff Ms. Suber's costs and reasonable attorney's fees and expenses; and

G.   Such other or further relief as the Court may deem appropriate, just, and equitable, including, without limitation, any and all remedies at law or in equity in favor of Plaintiff and against Defendants, jointly and severally, including, without limitation, the aforementioned rescission requested by Plaintiff Ms. Suber.

[*Remainder of Page Intentionally Left Blank*]

## VII.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury on all issues so triable.

Dated:  March 10, 2021.

**THE AMOS JONES LAW FIRM**

/s/*Amos N. Jones*

_____

**Amos N. Jones,** Esquire
*pro hac vice*
D.C. Bar No. 974919
AMOS JONES LAW FIRM
1150 K ST NW
Washington, D.C. 20005-6809
Tel.: (202) 351-6187
Fax: (202) 478-1654
E-mail: jones@amosjoneslawfirm.com

/s/*Su Mi Park*

_____

**Su Mi Park**, Esquire
*pro hac vice*
D.C. Bar No. 155118
AMOS JONES LAW FIRM
1150 K ST NW
Washington, D.C. 20005
Tel.: (202) 492-1845
Fax: (202) 478-1654
E-mail: park@amosjoneslawfirm.com

## **CERTIFICATE OF SERVICE**

I certify that on March 10, 2021, I caused the foregoing Second Amended Complaint

to be filed with the Clerk of the Court and served upon all counsel of record via the Court's

CM/ECF system.

/s/ Su Mi Park

Su Mi Park
AMOS JONES LAW FIRM
1150 K Street NW
Washington DC 20005-6809
Phone: (202) 492-1845
park@amosjoneslawfirm.com

# **EXHIBITS**

**EXHIBIT LIST**

| Exhibit | Exhibit Description |
|---|---|
| 1 | **VVP SERVICES, LLC** |
| A | WEBPAGE FOR VVP SERVICES, LLC AT THE SUN.BIZ.ORG, DIVISION OF CORPORATIONS OF THE STATE OF FLORIDA |
| B | 2020 ANNUAL REPORT FOR VVP SERVICES, LLC / REINSTATEMENT |
| C | 2019 ANNUAL REPORT FOR VVP SERVICES, LLC |
| D | 2018 ANNUAL REPORT FOR VVP SERVICES, LLC |
| E | 2017 ANNUAL REPORT FOR VVP SERVICES, LLC |
| F | ARTICLES OF ORGANIZATION FOR VVP SERVICES, LLC |
| 2 | **VISION VENTURE PARTNERS, LLC** |
| A | WEBPAGE FOR VISION VENTURE PARTNERS, LLC AT THE SUN.BIZ.ORG, DIVISION OF CORPORATIONS OF THE STATE OF FLORIDA |
| B | 2020 ANNUAL REPORT FOR VISION VENTURE PARTNERS, LLC / REINSTATEMENT |
| C | 2019 ANNUAL REPORT FOR VISION VENTURE PARTNERS, LLC |
| D | 2018 ANNUAL REPORT FOR VISION VENTURE PARTNERS, LLC |
| E | 2017 ANNUAL REPORT FOR VISION VENTURE PARTNERS, LLC |
| F | ARTICLES OF ORGANIZATION FOR VISION VENTURE PARTNERS, LLC |
| 3 | EXCERPT FROM THE WEB SITE OF VISION VENTURE PARTNERS, LLC |
| 4 | LINKED IN PAGE FOR VISION VENTURE PARTNERS, LLC |
| 5 | **VISION ESPORTS, LP** |
| A | WEBPAGE FOR VISION ESPORTS, LP AT THE SUN.BIZ.ORG, DIVISION OF CORPORATIONS OF THE STATE OF FLORIDA |
| B | 2019 ANNUAL REPORT FOR VISION ESPORTS, LP |
| C | 2018 ANNUAL REPORT FOR VISION ESPORTS, LP |
| D | Certificate of Limited Partnership for VISION ESPORTS, LP |

| Exhibit | Exhibit Description |
|---|---|
| 6 | PUBLIC ANNOUNCEMENT REGARDING THE INVESTMENT BY THE NEW YORK YANKEES IN VISION ESPORTS |
| 7 | **PRESS RELEASES RE: FUNDRAISING ACTIVITIES OF DEFENDANTS AND VISION ESPORTS** |
| A | PRESS RELEASE RE:  FUNDRAISING ACTIVITIES OF DEFENDANT STRATTON SCLAVOS AND VISION ESPORTS (INCLUDING VISION ESPORTS, LP, VISION ESPORTS II, LP AND VISION ESPORTS III, LP) |
| B | PRESS RELEASE RE: VISION ESPORTS LP FOUNDED BY RICK FOX, AMIT RAIZADA AND STRATTON SCLAVOS RAISES 38M |
| 8 | **ELEVEN STONES, LP** |
| A | 2020 ANNUAL REPORT FOR ELEVEN STONES, LP |
| B | 2019 ANNUAL REPORT FOR ELEVEN STONES, LP |
| C | CERTIFICATE OF LIMITED PARTNERSHIP FOR ELEVEN STONES, LP |
| D | CERTIFICATE OF AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP FOR ELEVEN STONES, LP |
| 9 | **EVERGLADES ONE, LLC** |
| A | 2020 ANNUAL REPORT FOR EVERGLADES ONE, LLC |
| B | ARTICLES OF ORGANIZATION FOR EVERGLADES ONE, LLC |
| 10 | EMAIL CORRESPONDENCE<br>**Filed Separately**<br>*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 11 | **PROMETHEUS VENTURES, LLC** |
| A | 2020 ANNUAL REPORT FOR PROMETHEUS VENTURES, LLC |
| B | ARTICLES OF ORGANIZATION FOR PROMETHEUS VENTURES, LLC |
| 12 | *Rick Fox, 1744 Ventures, LLC and Axin Digital Sports Group, LLC v. Amit Raizada, Eleven Stones, LP, Stratton Sclavos, Ravi Srivastava, Vision Venture Partners, LLC and VVP Services, LLC and Does 1 through 10* (September 30, 2019)<br>**Filed Separately** |

| Exhibit | Exhibit Description |
|---|---|
| 13(A), (B, (C) | **THE FRAUDULENT ENTERPRISE DIAGRAMS**<br><br>***Filed Separately***<br><br>*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 14 | NEW YORK YANKEES AGREEMENTS<br><br>***Filed Separately***<br><br>*(Filed Under Seal)* |
| 15 | THE FUNDING PLAN EMAIL<br><br>***Filed Separately***<br><br>*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 16 | TWEET FROM AMIT RAIZADA IN RESPECT OF THE NEW YORK YANKEES |
| 17 | THE NEW YORK PRESS RELEASES<br><br>(PRESS RELEASES EVINCING THE NEXUS BETWEEN DEFENDANT AMIT RAIZADA AND THE STATE OF NEW YORK THROUGH THE NEW YORK SECURITIES MARKETING, SALE AND DISTRIBUTION AS WELL AS OTHER MEANS OF TRANSACTING BUSINESS) |
| 18 | EMAIL CORRESPONDENCE FROM MR. BERNSTEIN IN RESPECT OF THE NEW YORK YANKEES |
| 19 | NEWS ARTICLE RE:  RICK FOX EXPLAINS HOW ESPORTS HELPED HIM CONNECT WITH HIS SON |
| 20 | **PRIOR JUDGMENT AGAINST DEFENDANT RAIZADA (BREACH OF FIDUCIARY DUTY)** |
| A | DESCRIPTION OF THE $6.1 MM JUDGMENT AGAINST DEFENDANT RAIZADA IN CONNECTION WITH CERTAIN BREACHES OF FIDUCIARY DUTIES |
| B | NEWS ARTICLE RE:  AMIT RAIZADA, PAYDAY PROFITEER, HIT WITH $6 MILLION VERDICT IN CIVIL CASE |
| 21 | NEWS ARTICLE RE:  NEW YORK YANKEES TAKE BIG SWING AT ESPORTS |
| 22 | ERRONEOUS CAPITALIZATION TABLE<br><br>***Filed Separately***<br><br>*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |

| Exhibit | Exhibit Description |
|---|---|
| 23 | INITIAL RESIGNATION LETTER OF PLAINTIFF MS. SUBER, DATED JANUARY 22, 2018 – *Filed Separately* <br><br> *(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 24 | DETAILED RESIGNATION LETTER OF PLAINTIFF MS. SUBER, DATED FEBRUARY 21, 2018 – *Filed Separately* <br><br> *(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 25 | TEXT MESSAGE EXCHANGED FROM MR. FOX TO MS. SUBER |
| 26 | PROMISSORY NOTE FOR THE SCLAVOS CONCEALED LOAN <br> *Filed Separately* <br><br> *(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 27 | LIENS GRANTED BY PROMETHEUS VENTURES / STRATTON SCLAVOS IN RESPECT OF HIS PRINCIPAL RESIDENCE |
| 28 | FACEBOOK IM BETWEEN MR. HALL AND MS. SUBER REGARDING DEFENDANT SCLAVOS'S DRUG USE |
| 29 | **SEC-RASHID MATTER** |
| A | PRESS RELEASE ISSUED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION RE: *SEC-RASHID MATTER* (SEC V. RASHID, S.D.N.Y., NO. 17-CV-8223, 2/11/19) |
| B | SEC-RASHID MATTER (SEC V. RASHID, S.D.N.Y., NO. 17-CV-8223, 2/11/19) <br> *Filed Separately* |
| 30 | BLUM AND SHKOLNIK V. RAIZADA ALI RASHID, ET AL., CASE 3:18-CV-02513-DMS-BLM <br> *Filed Separately* |
| 31 | TEXT MESSAGE FROM MR. FOX TO MS. SUBER RE: MR. PHILLIPS AND MR. ENGLISH |
| 32 | BOIES-SCHILLER/BERNSTEIN LETTER & SCOPE OF ENGAGEMENT AND INVESTIGATION <br> *Filed Separately* <br><br> *(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)* |
| 33 | FACEBOOK IMESSENGER MESSAGES BETWEEN MR. HALL AND MS. SUBER REGARDING INVESTORS SURPRISE UPON REALIZING "THEY WERE GETTING SHAFTED" |
| 34 | INTENTIONALLY LEFT BLANK TO MAINTAIN NUMBERING SCHEME IN THE COMPLAINT |

| Exhibit | Exhibit Description |
|---------|---------------------|
| 35 | LIST OF COMPARATORS – *Filed Separately*<br><br>*(Filed Under Seal)* |
| 36 | DATED APRIL 1, 2019 (1:12:21 PM PDT), FROM DEFENDANT RAIZADA TO MR. HALL IN WHICH DEFENDANT RAIZADA USES A RACIAL EPITHET TO DESCRIBE MR. HALL |
| 37 | TWEETS MADE BY LOL ESPORTS (LEAGUE CHAMPIONSHIP SERIES COMMISSIONER CHRIS GREELEY OF RIOT GAMES) |
| 38 | NEWS ARTICLE RE: ECHO FOX LCS SLOT SALE FUNDS OF $30.5 MILLION TO BE DISTRIBUTED BY COURT |
| 39 | AFFIDAVIT OF HALEY HEY IN AG613, LLC D/B/A 18 CAPITAL GROUP, ET AL V. RAIZADA, ET AL (CASE NO. 1816-CV26329, CIR. CT. OF JACKSON COUNTY MISSOURI AT KANSAS CITY, DIVISION 14)<br><br>*Filed Separately* |
| 40 | PROMETHEUS-SCLAVOS FORECLOSURE COMPLAINT<br><br>*Filed Separately* |
| 41 | FORECLOSURE MOTION TO DISMISS<br><br>*Filed Separately* |
| 42 | EMAIL REFERENCING A "BACKSTOP AGREEMENT"<br><br>*Filed Separately*<br><br>*(Filed Under Seal)* |

**Exhibit 1 - A[61]**

**VVP Services, LLC**



---

[61] SUN.BIZ.ORG, DIVISION OF CORPORATIONS, AN OFFICIAL STATE OF FLORIDA WEBSITE available at
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&
directionType=Initial&searchNameOrder=VVPSERVICES%20L160002015250&aggregateId=flal-
l16000201525-a3a498eb-46b6-414a-ac3b-
1ecd45c172ec&searchTerm=vvp%20services&listNameOrder=VVPSERVICES%20L1600020152
50 (last visited March 10, 2021).

## Exhibit 1 - B[62]

## VVP Services, LLC

| | |
|---|---|
| **2020  FLORIDA LIMITED LIABILITY COMPANY REINSTATEMENT** | **FILED** |
| DOCUMENT# L16000201525 | **Nov 03, 2020** |
| **Entity Name:** VVP SERVICES, LLC | **Secretary of State** |
| | **4844959907CR** |

**Current Principal  Place of Business:**

9663 SANTA MONICA BLVD #661
BEVERLY HILLS, CA  90210

**Current Mailing Address:**

9663 SANTA MONICA BLVD #661
BEVERLY HILLS, CA  90210  US

**FEI Number:** 61-1812843                                  **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND RD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

| SIGNATURE:  DONNA MOCH | | 11/03/2020 |
|---|---|---|
| | Electronic Signature of Registered Agent | Date |

**Authorized Person(s) Detail :**

| Title | MGR |
|---|---|
| Name | VISION VENTURE PARTNERS, LLC |
| Address | 9663 SANTA MONICA BLVD #661 |
| City-State-Zip: | BEVERLY HILLS  CA  90210 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

| SIGNATURE: STRATTON SCLAVOS | MANAGER | 11/03/2020 |
|---|---|---|
| Electronic Signature of Signing Authorized Person(s) Detail | | Date |

---

[62] *Id.*

## Exhibit 1 - C[63]

## VVP Services, LLC

**2019  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L16000201525

**Entity Name:** VVP SERVICES, LLC

**FILED**
**Apr 08, 2019**
**Secretary of State**
**4650979951CC**

**Current Principal  Place of Business:**

3801 COLLINS AVE
APT 1205
MIAMI BEACH,  AL  33140

**Current Mailing Address:**

335 N MAPEL DRIVE
SUITE 353
BEVERLY HILLS,  CA  90210  US

**FEI Number: 61-1812843**

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND RD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

_____

Electronic Signature of Registered Agent                                                                            Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | VISION VENTURE PARTNERS, LLC |
| Address | 3801 COLLINS AVE, APT 1205 |
| City-State-Zip: | MIAMI BEACH  FL  33140 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: NATALIE FEKE                                              AUTHORIZED PERSON          04/08/2019

Electronic Signature of Signing Authorized Person(s) Detail                                                Date

[63] *Id.*

## Exhibit 1 - D[64]

## VVP Services, LLC

| 2018  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT | FILED |
|---|---|
| DOCUMENT# L16000201525 | Jun 27, 2018 |
| Entity Name: VVP SERVICES, LLC | Secretary of State |
| | CC7353049795 |

**Current Principal  Place of Business:**

3801 COLLINS AVE
APT 1205
MIAMI BEACH,  AL  33140

**Current Mailing Address:**

335 N MAPEL DRIVE
SUITE 353
BEVERLY HILLS,  CA  90210  US

**FEI Number: 61-1812843**                    Certificate of Status Desired:  No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND RD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

_____
Electronic Signature of Registered Agent                                                    Date

**Authorized Person(s) Detail :**

| Title | MGR |
|---|---|
| Name | VISION VENTURE PARTNERS, LLC |
| Address | 3801 COLLINS AVE, APT 1205 |
| City-State-Zip: | MIAMI BEACH  FL  33140 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: NATALIE FEKE                                      AUTHORIZED SIGNER          06/27/2018

_____
Electronic Signature of Signing Authorized Person(s) Detail                                    Date

---

[64] *Id.*

## Exhibit 1 - E[65]

## VVP Services, LLC

**2017 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**
DOCUMENT# L16000201525

Entity Name: VVP SERVICES, LLC

**Current Principal Place of Business:**
3801 COLLINS AVE
APT 1205
MIAMI BEACH, AL 33140

**Current Mailing Address:**
335 N MAPEL DRIVE
SUITE 353
BEVERLY HILLS, CA 90210 US

FEI Number: 61-1812843

Name and Address of Current Registered Agent:

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND RD
PLANTATION, FL 33324 US

**FILED**
Jul 10, 2017
Secretary of State
CC5361391798

Certificate of Status Desired: No

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                        Date

**Authorized Person(s) Detail :**

Title           MGR

Name        VISION VENTURE PARTNERS, LLC

Address     3801 COLLINS AVE, APT 1205

City-State-Zip:   MIAMI BEACH FL 33140

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: STRATTON SCLAVOS                           MAMBER                    07/10/2017

Electronic Signature of Signing Authorized Person(s) Detail                                        Date

---

[65] *Id.*

## Exhibit 1 - F[66]

## VVP Services, LLC

### Electronic Articles of Organization
### For
### Florida Limited Liability Company

L16000201525
FILED 8:00 AM
November 02, 2016
Sec. Of State
kpcardwell

### Article I

The name of the Limited Liability Company is:

VVP SERVICES, LLC

### Article II

The street address of the principal office of the Limited Liability Company is:

3801 COLLINS AVE
APT 1205
MIAMI BEACH, .  33140

The mailing address of the Limited Liability Company is:

3801 COLLINS AVE
APT 1205
MIAMI BEACH, .  33140

### Article III

The name and Florida street address of the registered agent is:

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND RD
PLANTATION, FL.  33324

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature:  CONNIE BRYAN

### Article IV

The name and address of person(s) authorized to manage LLC:

L16000201525
FILED 8:00 AM
November 02, 2016
Sec. Of State
kpcardwell

Title:  MGR
VISION VENTURE PARTNERS, LLC
3801 COLLINS AVE, APT 1205
MIAMI BEACH, FL.  33140

### Article V

The effective date for this Limited Liability Company shall be:

11/01/2016

Signature of member or an authorized representative

Electronic Signature: MICHAEL WOLF

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

---

[66] *Id.*

**Exhibit 2-A[67]**

### Vision Venture Partners, LLC



---

[67] SUN.BIZ.ORG, DIVISION OF CORPORATIONS, AN OFFICIAL STATE OF FLORIDA WEBSITE available at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionTyp e=Initial&searchNameOrder=VISIONVENTUREPARTNERS%20L160001793160&aggregateId=flal-l16000179316-d28cefe5-8feb-4a5a-8bcb-407ad46c8f5b&searchTerm=vision%20venture%20partners&listNameOrder=VISIONVENTUREPARTNERS %20L160001793160 (last visited March 10, 2021).

**Exhibit 2-B** [68]

**Vision Venture Partners, LLC**

| | |
|---|---|
| **2020  FLORIDA LIMITED LIABILITY COMPANY REINSTATEMENT** | **FILED** |
| DOCUMENT# L16000179316 | **Nov 03, 2020** |
| **Entity Name:** VISION VENTURE PARTNERS, LLC | **Secretary of State** |
| | **5627699566CR** |

**Current Principal  Place of Business:**

9663 SANTA MONICA BLVD#661
#2409
BEVERLY HILLS, CA  90210

**Current Mailing Address:**

9663 SANTA MONICA BLVD#661
#2409
BEVERLY HILLS, CA  90210  US

**FEI Number:** 81-4015879                         **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   DONNA MOCH                                                              11/03/2020
                Electronic Signature of Registered Agent                                Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | SCLAVOS, STRATTON |
| Address | 9663 SANTA MONICA BLVD#661 #2409 |
| City-State-Zip: | BEVERLY HILLS  CA  90210 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: STRATTON SCLAVOS                              MANAGER                11/03/2020
            Electronic Signature of Signing Authorized Person(s) Detail                         Date

---

[68] SUN.BIZ.ORG, DIVISION OF CORPORATIONS, AN OFFICIAL STATE OF FLORIDA WEBSITE available at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionTyp e=Initial&searchNameOrder=VISIONVENTUREPARTNERS%20L160001793160&aggregateId=flal-l16000179316-d28cefe5-8feb-4a5a-8bcb-407ad46c8f5b&searchTerm=vision%20venture%20partners&listNameOrder=VISIONVENTUREPARTNERS%20L160001793160 (last visited March 10, 2021).

**Exhibit 2-C[69]**

## Vision Venture Partners, LLC

| | |
|---|---|
| **2019  FLORIDA LIMITED LIABILITY COMPANY REINSTATEMENT** | **FILED** |
| DOCUMENT# L16000179316 | **Nov 01, 2019** |
| **Entity Name:** VISION VENTURE PARTNERS, LLC | **Secretary of State** |
| | **4083400368CR** |

**Current Principal  Place of Business:**

110 WASHINGTON AVE
#2409
MIAMI BEACH,  FL  33139

**Current Mailing Address:**

110 WASHINGTON AVE
#2409
MIAMI BEACH,  FL  33139  US

**FEI Number:** 81-4015879                                                     **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

| SIGNATURE:  DONNA MOCH | 11/01/2019 |
|---|---|
| Electronic Signature of Registered Agent | Date |

**Authorized Person(s) Detail :**

| Title | MGR |
|---|---|
| Name | SRIVASTAVA, RAVI |
| Address | 110 WASHINGTON AVE |
| | #2409 |
| City-State-Zip: | MIAMI BEACH  FL  33139 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath, that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

| SIGNATURE: RAVI SRIVASTAVA | MANAGER | 11/01/2019 |
|---|---|---|
| Electronic Signature of Signing Authorized Person(s) Detail | | Date |

---

[69] *Id.*

## Exhibit 2-D[70]

### Vision Venture Partners, LLC

**2018  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L16000179316

**Entity Name:** VISION VENTURE PARTNERS, LLC

**FILED**
**Apr 12, 2018**
**Secretary of State**
**CC8942358169**

**Current Principal  Place of Business:**

3801 COLLINS AVE
APT 1205
MIAMI BEACH,  FL  33140

**Current Mailing Address:**

335 N MAPLE DRIVE SUITE 380
BEVERLY HILLS, CA  90210  US

**FEI Number:** 81-4015879                **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL  33324  US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida

SIGNATURE:

_____
Electronic Signature of Registered Agent                                              Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | SBV, LLC |
| Address | 3801 COLLINS AVE |
| City-State-Zip: | MIAMI BEACH  FL  33140 |

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath, that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes, and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE: ANGELA CORRELL                          AUTHORIZED SIGNER          04/12/2018
_____
Electronic Signature of Signing Authorized Person(s) Detail                             Date

---

[70] *Id.*

**Exhibit 2-E**[71]

## Vision Venture Partners, LLC

| | |
|---|---|
| **2017 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT** | **FILED** |
| DOCUMENT# L16000179316 | Mar 20, 2017 |
| **Entity Name:** VISION VENTURE PARTNERS, LLC | Secretary of State |
| | CC4118761939 |

**Current Principal Place of Business:**

3801 COLLINS AVE
APT 1205
MIAMI BEACH, FL 33140

**Current Mailing Address:**

3801 COLLINS AVE
APT 1205
MIAMI BEACH, FL 33140

**FEI Number:** 81-4015879                          **Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida*

SIGNATURE: _____

Electronic Signature of Registered Agent                                         Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | SBV, LLC |
| Address | 3801 COLLINS AVE |
| City-State-Zip: | MIAMI BEACH  FL  33140 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: SBV LLC                                    MANAGER                 03/20/2017

Electronic Signature of Signing Authorized Person(s) Detail                              Date

---

[71] *Id.*

## Exhibit 2-F[72]

## Vision Venture Partners, LLC

**Electronic Articles of Organization
For
Florida Limited Liability Company**

L16000179316
FILED 8:00 AM
September 26, 2016
Sec. Of State
ndmccleessam

### Article I

The name of the Limited Liability Company is:

VISION VENTURE PARTNERS, LLC

### Article II

The street address of the principal office of the Limited Liability Company is:

3801 COLLINS AVE
APT 1205
MIAMI BEACH, FL.  33140

The mailing address of the Limited Liability Company is:

3801 COLLINS AVE
APT 1205
MIAMI BEACH, FL.  33140

### Article III

The name and Florida street address of the registered agent is:

CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL.  33324

Having been named as registered agent and to accept service of process for the above stated limited
liability company at the place designated in this certificate, I hereby accept the appointment as registered
agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes
relating to the proper and complete performance of my duties, and I am familiar with and accept the
obligations of my position as registered agent.

Registered Agent Signature:   CONNIE BRYAN

### Article IV

The name and address of person(s) authorized to manage LLC:

L16000179316
FILED 8:00 AM
September 26, 2016
Sec. Of State
ndmccleessam

Title:  MGR
SBV, LLC
3801 COLLINS AVE
MIAMI BEACH, FL.  33140

### Article V

The effective date for this Limited Liability Company shall be:

09/26/2016

Signature of member or an authorized representative

Electronic Signature: MICHAEL WOLF

I am the member or authorized representative submitting these Articles of Organization and affirm that the
facts stated herein are true.  I am aware that false information submitted in a document to the Department
of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to
file an annual report between January 1st and May 1st in the calendar year following formation of the LLC
and every year thereafter to maintain "active" status.

---

[72] *Id.*

**Exhibit 3**

**Excerpt From the VVP Website**



  TEAM  PORTFOLIO  FOUNDATION  NEWS  INVESTOR UPDATES

# PORTFOLIO

We invest in established entrepreneurs that are building companies targeting the Generation Always consumer – today's new consumer who is always connected, always social, always fun, always mobile, always interacting, always multitasking, always serious, always aware.

Today, our portfolio consists of companies setting the standards in esports, digital entertainment, and lifestyle food and beverage. When we invest, we are invested – our hands-on approach ensures each portfolio company receives the resources they need to win.

## Esports

## Entertainment







The above image was available at <u>https://www.vvpllc.com/portfolio</u> (last visited April 2, 2019).

**Exhibit 4**

**The LinkedIn Page for Vision Venture Partners**



**Exhibit 5-A[73]**

**Vision Esports, LP**



[73] SUN.BIZ.ORG, DIVISION OF CORPORATIONS, AN OFFICIAL STATE OF FLORIDA WEBSITE, available at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Init ial&searchNameOrder=VISIONESPORTS%20A170000000260&aggregateId=domlp-a17000000026-aa6d39ef-3493-4f0e-8042-e49462ecc69a&searchTerm=vision%20esports&listNameOrder=VISIONESPORTS%20A170000000260 (last visited March 10, 2021).

## Exhibit 5 - B[74]

## Vision Esports, LP

**2019  FLORIDA LIMITED PARTNERSHIP REINSTATEMENT**

DOCUMENT# A17000000026

**Entity Name:** VISION ESPORTS, LP

**Current Principal  Place of Business:**

110 WASHINGTON AVE
SUITE 2409
MIAMI BEACH, FL 33139

**Current Mailing Address:**

110 WASHINGTON AVE
 SUITE 2409
MIAMI BEACH, FL  33139 US

**FEI Number: 82-1335777**

**Name and Address of Current Registered Agent:**

CT CORPORATION SERVICES
1200 SOUTH PINE ISLAND RD
PLANTATION, FL  33324 US

**FILED**
**Oct 17, 2019**
**Secretary of State**
**0507940490CR**

**Certificate of Status Desired:** No

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:  ANGELA CORRELL                                                           10/17/2019

                    Electronic Signature of Registered Agent                              Date

**General Partner Detail :**

| | |
|---|---|
| Document # | L17000009484 |
| Name | ESPT, LLC |
| Address | 110 WASHINGTON AVE SUITE 2409 |
| City-State-Zip: | MIAMI BEACH  FL  33139 |

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a general partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE: ANGELA CORRELL                         AUTHORIZED SIGNER         10/17/2019

            Electronic Signature of Signing General Partner Detail                        Date

---

[74] *Id.*

## Exhibit 5-C[75]

## Vision Esports, LP

**2018  FLORIDA LIMITED PARTNERSHIP ANNUAL REPORT**

DOCUMENT# A17000000026

**Entity Name:** VISION ESPORTS, LP

**Current Principal  Place of Business:**

200 E BROWARD BLVD
STE. 1110
CORAL GABLES, FL  33146

**Current Mailing Address:**

335 N MAPLE DRIVE
 380
BEVERLY HILLS,  CA  90210  US

**FEI Number:** 82-1335777

**Name and Address of Current Registered Agent:**

CT CORPORATION SERVICES
1200 SOUTH PINE ISLAND RD
PLANTATION, FL  33324  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

              Electronic Signature of Registered Agent                                          Date

**FILED**
**Apr 12, 2018**
**Secretary of State**
**CC4152005963**

**Certificate of Status Desired:**  No

**General Partner Detail :**

| | |
|---|---|
| Document # | L17000009484 |
| Name | ESPT, LLC |
| Address | 3760 BIRD RD, UNIT 516 |
| City-State-Zip: | CORAL GABLES  FL  33146 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under
oath; that I am a general partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes; and that my name
appears above, or on an attachment with all other like empowered.*

SIGNATURE: ANGELA CORRELL                                    AUTHORIZED SIGNER          04/12/2018

                  Electronic Signature of Signing General Partner Detail                                      Date

---

[75] *Id.*

**Exhibit 5-D**[76]

**Vision Esports, LP**

## Certificate of Limited Partnership

A17000000026
FILED
January 24, 2017
Sec. Of State
ncausseaux

Name of Limited Partnership:
VISION ESPORTS, LP

Street Address of Limited Partnership:
200 E BROWARD BLVD
STE. 1110
CORAL GABLES, FL.  33146

Mailing Address of Limited Partnership:
1305 COLLINGWOOD PL
LOS ANGELES, CA.  90069

The name and Florida street address of the registered agent is:
CT CORPORATION SERVICES
1200 SOUTH PINE ISLAND RD
PLANTATION, FL.  33324

I certify that I am familiar with and accept the responsibilities of registered agent.

Registered Agent Signature:  MADONNA CUDDIHY

The name and address of all general partners are:
Title:  G
ESPT, LLC
3760 BIRD RD, UNIT 516
CORAL GABLES, FL.  33146

The effective date for this Limited Partnership shall be:
01/30/2017

Signed this Twenty Fourth day of January, 2017

I (we) declare the I (we) have read the foregoing and know the contents thereof and that the facts stated herein are true and correct.

General Partner Signature: STRATTON SCLAVOS

The individual(s) signing this document affirm(s) that the facts stated herein are true and the individual(s) is/are aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.

---

[76] *Id.*

**Exhibit 6**

**VVP Website:  Public Announcement Regarding the Investment by the New York Yankees in Vision Esports**

 TEAM     PORTFOLIO     FOUNDATION     NEWS     INVESTOR UPDATES

November 22, 2017



# How The New York Yankees Will Shape Esports

If there are still brands sitting in the outfield wondering whether esports is a legitimate business to explore, the New York Yankees have provided a great reason to swing for the fences. The iconic Major League Baseball team is the latest traditional sports organization to enter into esports by investing in Vision Esports (part of Vision Venture Partners), the umbrella company for Rick Fox's Echo Fox, Jace Hall's Twin Galaxies and Vision Entertainment, which creates video content for esports.

Stratton Sclavos, general partner at Vision Venture Partners, told *AListDaily* that the Yankees bring great credibility to the esports world in general and Vision Esports in particular, thanks to the team's global brand recognition.

"Their endorsement signals to the world that esports is going mainstream," Sclavos explained. "We've already seen tremendous new interest in Vision Esports and our three portfolio companies since the Yankees' announcement."

Sclavos said that the Yankees' marketing and sponsorship teams have longstanding business relationships with in-demand non-endemic brands, so the introductions and bundling opportunities alone are invaluable.

Click here for the full article.

**Exhibit 7-A**

**Press Releases Regarding Fundraising Activities of Stratton Sclavos and The Vision Esports, LP, Including List of Investors Participating in the Fundraising[77]**



---

[77] https://variety.com/2018/digital/news/vision-esports-funding-evolution-media-1202706616/ (last visited March 10, 2021).

**Exhibit 7-B[78]**



# Vision Esports LP Founded by Rick Fox, Amit Raizada and Stratton Sclavos Raises 38M

## Techcrunch Breaks news on the 38 Million Dollar E Sports Investment for Amit Raizada, Fox, and Entrepreneur Sclavos



February 28, 20°8 01:09 FT | **Source:** E-Sports News

Los Angeles, California , Feb. 28, 2018 (GLOBE NEWSWIRE) – What started with an esports team is now quickly becoming an esports empire, backed by some of the biggest names in sports and money managers for entertainment family dynasties and Hollywood power brokers according to a recent **TechCrunch news story**.

Vision Esports LP, the esports conglomerate launched by Stratton Sclavos, Rick Fox and Amit Raizada has just closed on a $38 million investment from a host of investors led by the Creative Artists Agency and TPG Growth joint venture Evolution Media.

Esports visionaries like Fox, Sclavos, and Amit Raizada are no stranger to taking chances. Raizada a well respected LA entrepreneur, built SBV, his business venture firm, and now ESports with former NBA star Rick Fox and entrepreneur Sclavos

"At Vision Esports 'We Play to Win' and we know that esports are Pro Sports, with the same ecosystem components and business drivers," said Stratton Sclavos, Managing General Partner, Vision Esports. "Our investors are some of the smartest and most accomplished names in sports and media and they share our passion, committing not only capital but also their organizational resources and relationships in our quest to change the professional sports landscape."

The Team Echo Fox founder and executive Rick Fox is also his partner in previous ventures that were rewarded with handsome profits. This recent investment is backed by Vision Ventures, and at the helm are industry experts like Jace Hall and Stratton Sclavos. Sclavos is a former CEO of Verisign who played an instrumental role in its IPO. Jace Hall is one of best marketers in egaming with a talent for game design

Rick Fox's Team Echo Fox is set to benefit from Sclavos & Raizada's shrewd business acumen, his impeccable timing and his diligence. He has served as Fox's mentor of sorts, schooling the former LA Lakers' player in the basics of formulating an effective and attractive franchise plan and in the hiring of the business executives who have the right skills for the job. This has also resulted in the creation of an impressive stable of egaming crews that play in such games as Call of Duty and Gears of War. In 2016, the team signed Torque, which played in the Counter-Strike Global Offensive. A year later, Jared Jeffries joined the organization as president

With Sclavos, Fox, and Amit Raizada's help, the team is poised to be one of the largest gaming teams, especially with access to the world's best gaming coaches and top-of-the-line gaming facilities and equipment. With a strong executive core and unparalleled insight into traditional and egaming, Team Echo is on its way to becoming one of the leading esports companies in the field today.

**About Vision Esports**

Vision Esports is an esports investment fund and management company.

Vision Esports is a special purpose investment vehicle (SPV) established by Vision Venture Partners, a private equity firm based in Los Angeles and founded by Rick Fox, Amit Raizada and Stratton Sclavos. Vision Esports has a mandate to raise a substantial amount of capital to directly invest in Echo Fox, Twin Galaxies, and Vision Entertainment with the intent of becoming the single largest shareholder in each company. The General Partners of Vision Esports, LP are Stratton Sclavos, Jace Hall and Chris Nordling

---

[78] https://www.globenewswire.com/news-release/2018/02/28/1396615/0/en/Vision-Esports-LP-Founded-by-Rick-Fox-Amit-Raizada-and-Stratton-Sclavos-Raises-38M.html (last visited March 10, 2021).

## Exhibit 8-A

## Eleven Stones, LP

**2020  FLORIDA LIMITED PARTNERSHIP ANNUAL REPORT**

DOCUMENT# A15000000206

**Entity Name:** ELEVEN STONES, LP

**Current Principal  Place of Business:**

110 WASHINGTON AVE #2409
MIAMI BEACH,  FL  33139

**Current Mailing Address:**

110 WASHINGTON AVE #2409
MIAMI BEACH,  FL  33139  US

**FEI Number: 61-1760658**

**Name and Address of Current Registered Agent:**

GENOVESE JOBLOVE & BATTISTA, P.A.
200 E. BROWARD BLVD., STE. 1110
FORT LAUDERDALE, FL  33301  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

_____
Electronic Signature of Registered Agent                                          Date

**General Partner Detail :**

| | |
|---|---|
| Document # | |
| Name | EVERGLADES ONE, LLC |
| Address | 110 WASHINGTON AVE #2409 |
| City-State-Zip: | MIAMI BEACH  FL  33139 |

**FILED**
**Apr 13, 2020**
**Secretary of State**
**5960631807CC**

**Certificate of Status Desired:** No

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a general partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE: RAVI SRIVASTAVA                              MEMBER                    04/13/2020

_____
Electronic Signature of Signing General Partner Detail                     Date

## Exhibit 8-B

## Eleven Stones, LP

<u>2019  FLORIDA LIMITED PARTNERSHIP ANNUAL REPORT</u>

DOCUMENT# A15000000206

**Entity Name:** ELEVEN STONES, LP

**Current Principal  Place of Business:**

5875 COLLINS AVE
PENTHOUSE 1
MIAMI, FL  33139

**Current Mailing Address:**

335 N MAPLE DRIVE SUITE 380
BEVERLY HILLS, CA  90210  US

**FEI Number:** 61-1760658

**Name and Address of Current Registered Agent:**

GENOVESE JOBLOVE & BATTISTA, P.A.
200 E. BROWARD BLVD., STE. 1110
FORT LAUDERDALE, FL  33301  US

**FILED**
**Apr 05, 2019**
**Secretary of State**
**4899284480CC**

**Certificate of Status Desired:** No

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

_____                     Date

Electronic Signature of Registered Agent

**General Partner Detail :**

Document #

| | |
|---|---|
| Name | EVERGLADES ONE, LLC |
| Address | 1400 NE WOODS EDGE CR |
| City-State-Zip: | LEE'S SUMMIT  MO  64064 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a general partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: NATALIE FEKE                              AUTHORIZED PERSON          04/05/2019

Electronic Signature of Signing General Partner Detail                                        Date

**Exhibit 8-C**

**Eleven Stones, LP:  Certificate of Limited Partnership**

CERTIFICATE OF LIMITED PARTNERSHIP
FOR
FLORIDA LIMITED PARTNERSHIP
OR
LIMITED LIABILITY LIMITED PARTNERSHIP

1. Eleven Stones, LP

(Name of Limited Partnership or Limited Liability Limited Partnership, which must include an Acceptable Limited Partnership suffixes. Limited Partnership, Limited, L.P., LP, or Ltd. Acceptable Limited Liability Limited Partnership suffixes: Limited Liability Limited Partnership, l or LLLP.

2. c/o Genovese Joblove & Battista, P.A., 200 E. Broward Blvd., Ste. 1110
(Street address of initial designated office)

Fort Lauderdale, FL 33301

3. Genovese Joblove & Battista, P.A.
(Name of Registered Agent for Service of Process)

4. 200 E. Broward Blvd., Ste. 1110
(Florida street address for Registered Agent)

Fort Lauderdale, FL 33301

5. I hereby accept the appointment as registered agent and agree to act in this capacity. I further comply with the provisions of all statutes relative to the proper and complete performance of my du and I am familiar with and accept the obligations of my position as registered agent.

By: _____
Signature of Registered Agent

6. c/o Genovese Joblove & Battista, P.A., 200 E. Broward Blvd., Ste. 1110
(Mailing address of initial designated office)

Fort Lauderdale, FL 33301

7. If limited partnership elects to be a limited liability limited partnership, check bo

Page 1 of 2

8. Name and business address of each general partner:

| Name: | Business Address: |
|---|---|
| Ravi Srivastava | 270 Eunice Ave |
| | Mountain View, CA 94040 |

9. Effective date, if other than the date of filing _____

(Effective date cannot be prior to nor more than 90 days after the date the document is filed by the Florida Department of State.)

Signed this _26th_ day of _March_, _2015_.

Signature of each general partner: I/We submit this document and affirm that the facts stated herein are true. I/We am/are aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.

_____

Filing Fees:
Certified Copy (optional):
Certificate of Status (optional):

$1,000.00 ($965 Filing Fee and $35 Registered Agent Fee)
$52.50
$8.75

Page 2 of 2

FILED
2015 MAR 26 PM 1: 45

## Exhibit 8-D

## Eleven Stones, LP:  Certificate of Amendment to Certificate of Limited Partnership

**CERTIFICATE OF AMENDMENT
TO
CERTIFICATE OF LIMITED PARTNERSHIP
OF**

Eleven Stones, LP

Insert name currently on file with Florida Department of State

Pursuant to the provisions of section 620.1202, Florida Statutes, this Florida limited partnership or limited liability limited partnership, whose certificate was filed with the Florida Department of State on _____ Eleven Stones, LP _____ , assigned Florida document number _____ A15000000206 _____ , adopts the following certificate of amendment to its certificate of limited partnership.

This amendment is submitted to amend the following:

**A.  If amending name, enter the new name of the limited partnership or limited liability limited partnership here:**

_____

New name must be distinguishable and contain an acceptable suffix.

*Acceptable Limited Partnership suffixes: Limited Partnership, Limited, L.P., LP, or Ltd.*
*Acceptable Limited Liability Limited Partnership suffixes: Limited Liability Limited Partnership, L.L.L.P. or LLLP.*

**B.  If amending mailing address and/or principal office address, enter new mailing address and/or principal office address here:**

New Principal Office Address:        _____
*(Must be STREET address)*             _____

New Mailing Address:                    _____
*(May be post office box)*                _____

**C.  If amending the registered agent and/or registered office address on our records, enter the name of the new registered agent and/or the new registered office address here:**

Name of New Registered Agent:        _____

New Registered Office Address:        _____
                                                       *Enter Florida street address*

                                                       _____, Florida _____
                                                            *City*                                    *Zip Code*

FILED

Page 1 of 3

**Exhibit 8-D** (*cont'd*)

**Eleven Stones, LP:  Certificate of Amendment to Certificate of Limited Partnership**

---

**New Registered Agent's Signature, If changing Registered Agent:**

*I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statues relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

_____
If Changing Registered Agent, Signature of New Registered Agent

**D.  If amending the general partner(s), enter the name and business address of each general partner being added or removed from our records:**

| Title | Name | Address | Type of Action |
|-------|------|---------|----------------|
| GP | Ravi Srivastava | 270 Eunice Ave<br>Mountain View, CA 94040 | ☐ Add<br>☑ Remove |
| GP | Everglades One, LLC | 1400 NE Woods Edge Cr<br>Lee's Summit, MO 64064 | ☑ Add<br>☐ Remove |
| | | | ☐ Add<br>☐ Remove |
| | | | ☐ Add<br>☐ Remove |
| | | | ☐ Add<br>☐ Remove |
| | | | ☐ Add<br>☐ Remove |

**E.  If the limited partnership or limited liability limited partnership is amending its "limited liability limited partnership" status, enter change here:**

☐  This Limited Partnership hereby elects to be a "Limited Liability Limited Partnership."

☐  This Limited Partnership hereby removes its "Limited Liability Limited Partnership" status.

**(NOTE:** *If adding or removing" limited liability limited partnership" status, all general partners must sign this amendment.)*

**Page 2 of 3**

**Exhibit 8-D** (*cont'd*)

**Eleven Stones, LP:  Certificate of Amendment to Certificate of Limited Partnership**

F.  If amending any other information, enter change(s) here:  *(Attach additional sheets, if necessary.)*

_____

_____

_____

_____

Effective date, if other than the date of filing: _____
*(Effective date cannot be prior to nor more than 90 days after the date this document is filed by the Florida Department of State.)*

**Signature(s) of a general partner or all general partners\*:**

(\***NOTE:**  Only one current general partner is required to sign this document unless the limited partnership is adding or removing a "limited liability limited partnership" election statement.  Chapter 620, F.S., requires all general partners to sign when adding or removing a "limited liability limited partnership" election statement.)

**Signature(s) of all new or dissociating general partner(s), if any:**

Ravi Srivastava

Everglades One, LLC
By: Ravi Srivastava
Ravi Srivastava, Manager

Filing Fee:                              $52.50
Certified Copy (optional):          $52.50
Certificate of Status (optional):    $8.75

FILED
2015 MAR 12 A 8:48
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

Page 3 of 3

## Exhibit 9-A

## Everglades One, LLC, the General Partner of Eleven Stones, LP

**2020  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L13000135384

**Entity Name:** EVERGLADES ONE LLC

**Current Principal  Place of Business:**

110 WASHINGTON AVE #2409
MIAMI BEACH,  FL  33139

**Current Mailing Address:**

110 WASHINGTON AVE #2409
MIAMI BEACH,  FL  33139  US

**FEI Number:** 46-3718680

**Name and Address of Current Registered Agent:**

NRAI SERVICES, INC
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL  33324  US

**FILED**
**Apr 13, 2020**
**Secretary of State**
**4896809061CC**

**Certificate of Status Desired:** No

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

                      Electronic Signature of Registered Agent                                Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | SRIVASTAVA, RAVI |
| Address | 110 WASHINGTON AVE #2409 |
| City-State-Zip: | MIAMI BEACH  FL  33139 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: RAVI SRIVASTAVA                       MEMBER            04/13/2020

          Electronic Signature of Signing Authorized Person(s) Detail                     Date

**Exhibit 9-B**

**Everglades One, LLC -- Articles of Organization**

**Electronic Articles of Organization**
**For**
**Florida Limited Liability Company**

L13000135384
FILED 8:00 AM
September 25, 2013
Sec. Of State
lsellers

**Article I**

The name of the Limited Liability Company is:

EVERGLADES ONE LLC

**Article II**

The street address of the principal office of the Limited Liability Company is:

420 NICHOLS ROAD
SUITE 205
KANSAS CITY, MO, US 64112

The mailing address of the Limited Liability Company is:

420 NICHOLS ROAD
SUITE 205
KANSAS CITY, MO, US 64112

**Article III**

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

**Article IV**

The name and Florida street address of the registered agent is:

NRAI SERVICES, INC.
515 E. PARK AVENUE
TALLAHASSEE, FL. 32301

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature: KATIE WONSCH

**Article V**

The name and address of managing members/managers are:

Title: MGR
RAVI SRIVASTAVA
420 NICHOLS ROAD, SUITE 205
KANSAS CITY, MO. 64112 US

Signature of member or an authorized representative of a member

Electronic Signature: RAVI SRIVASTAVA

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true. I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

L13000135384
FILED 8:00 AM
September 25, 2013
Sec. Of State
lsellers

**Exhibit 10**

**Email Correspondence**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)*

**Exhibit 11-A**

**2020 Annual Report for Prometheus Ventures, LLC**

| Secretary of State<br>Statement of Information<br>(Limited Liability Company) | **LLC-12** | 20-B04141 |
|---|---|---|

**FILED**

In the office of the Secretary of State
of the State of California

MAR 03, 2020

**This Space For Office Use Only**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00**

**Copy Fees –** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)

PROMETHEUS VENTURES, LLC

| **2. 12-Digit Secretary of State File Number** | **3. State, Foreign Country or Place of Organization** (only if formed outside of California) |
|---|---|
| 201522410501 | CALIFORNIA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>1305 Collingwood Place | Los Angeles | CA | 90069 |
| b. Mailing Address of LLC, if different than item 4a<br>1305 Collingwood Place | Los Angeles | CA | 90069 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box<br>1305 Collingwood Place | Los Angeles | CA | 90069 |

**5. Manager(s) or Member(s)** — If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Stratton | | Sciavos | |

b. Entity Name - Do not complete Item 5a

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1305 Collingwood Place | Los Angeles | CA | 90069 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

INDIVIDUAL – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

CORPORATION – Complete Item 6c only. Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b

C T CORPORATION SYSTEM (C0168406)

**7. Type of Business**

a. Describe the type of business or services of the Limited Liability Company
investments

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 03/03/2020 | Stratton Sciavos | Manager | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

**Exhibit 11-B**

**Articles of Organization of Prometheus Ventures, LLC**

| LLC-1 | Articles of Organization of a Limited Liability Company (LLC) |
|---|---|

**201522410501**

To form a limited liability company in California, you can fill out this form, and submit for filing along with:

– A $70 filing fee.

– A separate, non-refundable $15 service fee also must be included, if you **drop off** the completed form.

*Important!* LLCs in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

LLCs may not provide "professional services," as defined by California Corporations Code sections 13401(a) and 13401.3.

Note: *Before* submitting the completed form, you should consult with a private attorney for advice about your specific business needs.

**FILED**
Secretary of State
State of California

**AUG 1 1 2015**

*I cc*

This Space For Office Use Only

**For questions about this form, go to** *www.sos.ca.gov/business/be/filing-tips.htm.*

**LLC Name** (List the proposed LLC name exactly as it is to appear on the records of the California Secretary of State.)

① Prometheus Ventures, LLC
   *Proposed LLC Name*

The name must include: LLC, L.L.C., Limited Liability Company, Limited Liability Co., Ltd. Liability Co. or Ltd. Liability Company; and may not include: bank, trust, trustee, incorporated, inc., corporation, or corp., insurer, or insurance company. For general entity name requirements and restrictions, go to www.sos.ca.gov/business/be/name-availability.htm.

**Purpose**

② The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**LLC Addresses**

③ a. 1570 The Alameda, Suite 100, San Jose — CA — 95126
   *Initial Street Address of Designated Office in CA - Do not list a P.O. Box* | *City (no abbreviations)* | *State* | *Zip*

   b. ___
   *Initial Mailing Address of LLC, if different from 3a* | *City (no abbreviations)* | *State* | *Zip*

**Service of Process** (List a California resident or a California registered corporate agent that agrees to be your initial agent to accept service of process in case your LLC is sued. You may list any adult who lives in California. You may not list an LLC as the agent. Do not list an address if the agent is a California registered corporate agent as the address for service of process is already on file.)

④ a. Leslie J. Daniels, Esq.
   *Agent's Name*

   b. 1570 The Alameda, Suite 100 — San Jose — CA — 95126
   *Agent's Street Address (if agent is not a corporation) - Do not list a P.O. Box* | *City (no abbreviations)* | *State* | *Zip*

**Management** (Check only one.)

⑤ The LLC will be managed by:

[✓] One Manager   [ ] More Than One Manager   [ ] All Limited Liability Company Member(s)

This form must be signed by each organizer. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of organization.

▶ _____   Leslie J. Daniels, Esq.
   *Organizer - Sign here*        *Print your name here*

| Make check/money order payable to: Secretary of State Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | By Mail Secretary of State Business Entities, P.O. Box 944228 Sacramento, CA 94244-2280 | Drop-Off Secretary of State 1500 11th Street., 3rd Floor Sacramento, CA 95814 |
|---|---|---|

Corporations Code §§ 17701.04, 17701.08, 17701.13, 17702.01, Revenue and Taxation Code § 17941
LLC-1 (REV 01/2014)

2014 California Secretary of State
www.sos.ca.gov/business/be

## **Exhibit 12**

## **The Fox Complaint**

*Rick Fox, 1744 Ventures, LLC and Axin Digital Sports Group, LLC v. Amit Raizada, Eleven Stones, LP, Stratton Sclavos, Ravi Srivastava, Vision Venture Partners, LLC and VVP Services, LLC and Does 1 through 10*

(Case No. #19STCV34802; September 30, 2019)

**(Filed Separately)**

**<u>Exhibit 13(A)-(C)</u>**

**<u>The Fraudulent Enterprise Diagrams</u>**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)*

**Exhibit 14**

**New York Yankees Agreements**

**(Filed Separately)**

*(Filed Under Seal)*

**Exhibit 15**

**The Funding Plan Email**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)*

<u>**Exhibit 16**</u>

<u>**Tweet by Defendant Amit Raizada on October 19, 2017**</u>



**Exhibit 17**


**Press Releases Evincing the Nexus Between Defendant Amit Raizada and the State of New York Through the New York Securities Marketing, Sale and Distribution as well as Other Means of Transacting Business**

**Exhibit 17 (cont'd)**[79]





# Prominent VVP partner Amit Raizada invests in Team Echo Fox

Published Wednesday, Jan. 31, 2018, 8:20 am
Join AFP's 100,000+ followers on **Facebook**
**Purchase** a subscription to AFP | **Subscribe** to AFP podcasts on iTunes
News, press releases, letters to the editor: **augustafreepress2@gmail.com**
Advertising inquiries: **freepress@ntelos.net**

Amit Raizada is a well-known investor and entrepreneur who has a legacy of impressive achievements. He is the founder of Spectrum Business Ventures, a company that has business interests in a variety of industries, including finance, technology, energy and eSports. He has acquired and sold assets worth up to hundreds of millions of dollars. Furthermore, he has a track record of successfully investing in winning companies such as Stone Financial Services, AT&T, HDFilms and Select Quote. However, it is his latest investment in eSports company Echo Fox that is currently making news in the sports and finance industries.

The Amit Raizada eSports entrepreneur investment is backed by Vision Venture Partners, a firm that is composed of industry experts who know how to invest in companies that have the potential to grow exponentially in a short amount of time. VVP partner Jace Hall is famous in the gaming industry for his ability to successfully design and market game titles. Stratton Sclavos is the former CEO of VeriSign who enabled the company to become a NASDAQ-traded corporation valued at over $25 billion. Rick Fox has a track record for successfully using his traditional sports background to increase an awareness of all that e-sports have to offer. Together, the four highly successful men hope to turn Echo Fox into a leading e-sports company that will be an industry leader both now and in the future. They recently announced that they are hiring former NBA star and Front Office executive Jared Jeffries as president of Echo Fox.

Echo Fox was founded in 2015 but already fields teams in a number of well-known games, including Call of Duty, Global Offensive, League of Legends and Gears of War 4. The main shareholder of the company, Vision eSports, also owns Twin Galaxies and Vision Entertainment. The company has had mixed success in a number of fields but has managed to win a number of important games in an impressive manner thanks at least in part to the fact that is has acquired some impressive players for a number of games it competes in.

Amit Raizada and **his team at VVP** are not the only ones who are showing an interest in Echo Fox's potential for success. The New York Yankees have recently made an equity investment in Echo Fox's parent company. While the move made news in the sports industry, it is not entirely surprising given the fact that a number of sport team owners have shown an interest in investing in the eSports industry by either providing funding to eSports game companies or even creating their own.

The fact that **Amit Raizada and other highly successful investors** are putting their money on Echo Fox shows that the company has what it takes to succeed. These investors have closed literally hundreds of successful deals and know what to look for in successful companies. What is more, they also know how to turn ordinary looking companies into highly successful ventures. It is no secret that VVP's involvement in Echo Fox is not just about providing the company with money but also providing direction to the company so that it can become wildly successful. By following their long-term recipe for success, these investors are almost certain to turn Echo Fox into a gaming company that tens of millions of people the world over will enjoy.

---

[79] Source:  https://augustafreepress.com/prominent-vvp-partner-amit-raizada-invests-team-echo-fox/ (last visited March 10, 2021).

**Exhibit 17 (cont'd)**[80]





[80] https://www.einpresswire.com/article/434506026/vision-esports-lp-founded-by-rick-fox-amit-raizada-and-stratton-sclavos-raises-38m

**Exhibit 17 (cont'd)**



our passion, committing not only capital but also their organizational resources and relationships in our quest to change the professional sports landscape."

The Team Echo Fox founder and executive Rick Fox is also his partner in previous ventures that were rewarded with handsome profits. This recent investment is backed by Vision Ventures, and at the helm are industry experts like Jace Hall and Sttraton Sclavos. Sclavos is a former CEO of Verisign who played an instrumental role in its IPO. Jace Hall is one of best marketers in egaming with a talent for game design.

Rick Fox's Team Echo Fox is set to benefit from Sclavos & Raizada's shrewd business acumen, his impeccable timing and his diligence. He has served as Fox's mentor of sorts, schooling the former LA Lakers' player in the basics of formulating an effective and attractive franchise plan and in the hiring of the business executives who have the right skills for the job. This has also resulted in the creation of an impressive stable of egaming crews that play in such games as Call of Duty and Gears of War. In 2016, the team signed Torque, which played in the Counter-Strike Global Offensive. A year later, Jared Jeffries joined the organization as president.

With Sclavos, Fox, and Amit Raizada's help, the team is poised to be one of the largest gaming teams, especially with access to the world's best gaming coaches and top-of-the-line gaming facilities and equipment. With a strong executive core and unparalleled insight into traditional and egaming, Team Echo is on its way to becoming one of the leading esports companies in the field today.

**About Vision Esports**

Vision Esports is an esports investment fund and management company.

Vision Esports is a special purpose investment vehicle (SPV) established by Vision Venture Partners, a private equity firm based in Los Angeles and founded by Rick Fox, Amit Raizada and Stratton Sclavos. Vision Esports has a mandate to raise a substantial amount of capital to directly invest in Echo Fox, Twin Galaxies, and Vision Entertainment with the intent of becoming the single largest shareholder in each company. The General Partners of Vision Esports, LP are Stratton Sclavos, Jace Hall and Chris Nordling.


Source:

https://techcrunch.com/2018/02/22/sports-stars-franchises-and-hollywood-agencies-are-betting-38-million-on-an-esports-revolution/

https://www.crunchbase.com/organization/vision-esports-lp


ESPORTS Marketing Blog
Esportsmarketingblog@mailinator.com

**Exhibit 17 (cont'd)**[81]



---

[81] Source:  https://theledgesports.com/2017/12/13/growth-esports-business-yankees-buys-equity-vision-esports/ (last visited March 10, 2021).

**Exhibit 17 (cont'd)**

theledgesports.com/2017/12/13/growth-esports-business-yankees-buys-equity-vision-esports/



They include Jeff Vinik, a principal owner of aXiomatic, Peter Guber, former manager of the Columbia Pictures and owner of the Golden State Warriors, and Robert Kraft, owner of New England Patriots.

### Echo Fox, Twin Galaxies, and Vision Entertainment Impact

Rick Fox launched Echo Fox in 2010, and currently, the brand boasts of 10 competitive teams which participate in the League of Legends, Vainglory, H1Z1, Call of Duty, and Street Fighter, Gears of War, Tekken, Injustice 2, and Smash Brothers. "Yankees Sign with Rick Fox & Amit Raizada" headline hit a wide range of media outlets, an indication that the global community is watching closely this new deal. Rick Fox is really positive about this new deal with the Yankees, and he believes that Echo Fox will have a big role to play as part of Vision Esports.

As for Twin Galaxies, the brand has demonstrated impressive market results in the recent past. Earlier this month, the league operator announced that they had established a new Pro league gaming division that creates, operates, and governs new Pro eSport Leagues. This is in partnership with the publishers of the video games. The contribution of Vision Entertainment is very vivid and the prospects are high for the brand. The company produces authentic scripts and formats of eSports material. Currently, Vision entertainment has five shows that are broadcasted live on Facebook. They enjoy over one million active subscriptions on social media. The New York outfit is in the middle of their season, and they are enjoying a good run in the MLB.

This new deal is believed to promote their brand as they also hope for good returns in exploring the eSport market. All the stakeholders of Vision Esports, especially Rick Fox, Amit Raizada, and Stratton Sclavos are very optimistic about the investment deal with the Yankees. Considering the market reputation of the Yankees, there is no doubt that the investment deal is perfect for both parties. They will be both waiting for their investments to materialize. Due to the rise in eSport, it's evident that the wait will not be that long, and sooner, they will reap the results of their input.

TAGS    eSports    New York Yankees



**Exhibit 17 (cont'd)**[82]



[82] https://hashtagsports.com/daily-02-22-2018 (last seen November 19, 2020; on March 10, 2021, the article was no longer accessible via this page).

## Exhibit 17 (cont'd)

unigamesity.com/blurring-the-line-between-the-virtual-and-the-real-worlds/

ogle   Print worksheet   Birthpage State Par.   Documents   Google Maps   sm   Herstory - Google D...   affidavit   New Tab

sports ownership that has caught the interest of the fabled New York Yankees. The reason for this surprising move is a simple one.

There's a whole new ballgame in town and some of the biggest players in more established realms of sporting activity have been quietly stepping up to the plate. While they are not the first to plunge into the world of online sports, the Yankees certainly made a huge splash when they recently announced that they were investing in Rick Fox and Amit Raizada's enterprise – a diversified eSports holding company known as Vision Esports.

Vision ESports is involved in almost all aspects of the burgeoning new arena of competitive online gaming. One part of the conglomerate is represented by former NBA player Rick Fox's Echo Fox, which is a talent management firm that fields 10 teams in the competitive gaming field. As for the concept of competitive gaming itself, this is a rapidly growing spectator sport where fans log in to watch individuals or teams of professional gamers play each other in all of the most popular online gaming universes such as Call of Duty or Gears of War.

While one arm of Vision provides the talented players, a second part of the company is league operator Twin Galaxies, which is in effect providing organized pro-level online leagues analogous to MLB or the NFL in the real world. These are not just virtual reality rotisserie leagues for First Person Shooters. Instead, these are actual professional sports organizations which have now reached the point of issuing franchises that come with price tags in the $20 million range in some instances.

In addition to their prowess as a league operator, Twin Galaxies is also involved in what might be called "level playing field issues" such as providing performance metrics for video game platforms and also of offering a stats division that is used to monitor player performance and, as a result, their rankings

Finally, the third part of the Vision ESports triad is content producer Vision Entertainment. In this case, that means that they are in effect designing the venues upon which the leagues will operate and the players will maneuver upon. When you put all three of these pieces together, you end up with a company that is providing expertise in creating leagues, designing venues, keeping statistics, and managing the players. This is a level of vertical integration that no sports league in the world can hope to match.

It is no wonder that the Yankees, as well as numerous other professional sports ownership groups, have been quietly getting into the action. What Vision ESports offers to the Yankees organization is a turn-key operation that is already up-and-running and making money. What the Yankees can bring to eSports is their heft in the world of advertising, broadcasting, and branding, as well as a significant capital injection that will allow the nascent enterprise to grow at a much faster rate than would otherwise be organically possible.

That rate of growth is only going to get quicker as the eSports leagues coalesce around the idea of global franchises that are based in premier cities worldwide. Teams from each city's franchise will "travel" to the digitally-created home venue of their opponents and slug it out



**LATEST ARTICLES**



**Best iOS Games**
Unigamesity Staff

**Gaming News**
**Playing Bingo is not just for Pensioners**
Unigamesity Staff



**How to Never Die Again in COD: Modern Warfare**
Unigamesity Staff



All you Want to Know About Quick

**Exhibit 17 (cont'd)**



Yankees organization is a turn-key operation that is already up-and-running and making money. What the Yankees can bring to eSports is their heft in the world of advertising, broadcasting, and branding, as well as a significant capital injection that will allow the nascent enterprise to grow at a much faster rate than would otherwise be organically possible.

That rate of growth is only going to get quicker as the eSports leagues coalesce around the idea of global franchises that are based in premier cities worldwide. Teams from each city's franchise will "travel" to the digitally-created home venue of their opponents and slug it out on local turf that is easily recognizable to the hosting team's fans. Since the promise of a truly global sports league has always foundered on the rocks of jet lag, time zone variances, and travel time, the idea of a virtual league may be the first pro sports organization to successfully clear the bar.

For now, however, companies such as Vision Esports serve as a reminder of the power of venture capitalism. The dynamic duo of private equity firm Vision Venture Partners Amit Raizada and Stratton Sclavos provided the initial impetus to get Rick Fox's dream up and running, and it is now time for the Yankees to serve as the corporate angel that takes the venture up to its next level. Regardless of where that next level is, it is clear that many big league names are moving into what is an all-but-unknown endeavor outside of the hardcore gaming community. They have clearly decided that this is a massive ground floor opportunity which is a perfect match for their own suite of professional connections and expertise.

All you Want to Know About Quick Checkers

Unigamesity Staff

5 of the Best Games for Cheat Codes in 2020

Unigamesity Staff

Tips For Narrowing Down Your Online Casino Options

Best Casual Games of November 2017

**Exhibit 17 (cont'd)**



# Vision Esports Closes $38 Million Capital Raise - Invests in 3 Leading Esports Companies, Becoming the Largest Shareholder in Echo Fox, Twin Galaxies and Vision Entertainment

PRESS RELEASE PR Newswire
-- Feb 22, 2018, 03:00 PM

BEVERLY HILLS, Calif., Feb. 22, 2018 /PRNewswire/ -- Vision Esports, L.P., today announced it has closed a $38 million capital raise led by Evolution Media, the investment firm backed by Creative Artists Agency (CAA) and private equity fund TPG Growth, as well as some of the most renowned organizations and athletes in professional sports, including Odell Beckham Jr.







**Exhibit 17 (cont'd)**



"At Vision Esports 'We Play to Win' and we know that esports are Pro Sports, with the same ecosystem components and business drivers," said Stratton Sclavos, Managing General Partner, Vision Esports. "Our investors are some of the smartest and most accomplished names in sports and media and they share our passion, committing not only capital but also their organizational resources and relationships in our quest to change the professional sports landscape."

The Vision Esports platform was created to target and invest in complementary companies spanning the entire esports ecosystem. With the close of this capital raise, Vision Esports is now the largest shareholder in Echo Fox, Twin Galaxies and Vision Entertainment.

- Echo Fox was formed in January 2016 by three-time NBA Champion Rick Fox. Today, Echo Fox has over 40 esports athletes on its roster, competing in 12 competitive leagues. In the closely watched League of Legends Championship Series, Echo Fox is currently ranked first in North America and top 10 in the world. Echo Fox also competes in the top professional leagues for Call of Duty, Gears of War, Madden and H1Z1. Echo Fox also boasts the world's most accomplished Fighting Games (FGC) team, competing in Injustice 2, Marvel vs. Capcom, Skullgirls, Smash Brothers, Street Fighter V and Tekken 7. Echo Fox's Dominique "Sonic Fox" McLean is considered the best all-around FGC player in the world, with recent championships in Injustice 2, Marvel vs. Capcom and Skullgirls.
- Twin Galaxies has been the recognized authority for video game world record validation since 1981. The TG Sports Bureau and World Records Division houses the world's most comprehensive library of video game statistics and player analytics. In October 2017, Twin Galaxies announced a Pro League Division to establish, operate and govern new professional esports leagues in partnership with leading video game publishers. Twin Galaxies' H1Z1 Pro League will commence its inaugural season in April 2018.
- Vision Entertainment is a producer of original esports content and live esports events. The company currently produces five weekly shows airing on Facebook Live, reaching a combined audience of more than two million video game



**Exhibit 17 (cont'd)**



MARKETS INSIDER

Search markets

Subscribe

U.S. MARKETS CLOSED

| DOW FUTURES | S&P FUTURES | NASDAQ FUTURES | GOLD | OIL (WTI) | EUR/USD |
|---|---|---|---|---|---|
| +0.50% +150.00  30,259.00 | +0.63% +23.25  ^3,718.25 | +0.56% +71.25  12,775.75 | -0.79%  1,894.65 | -0.35%  48.06 | +0.16%  1.22 |

with leading video game publishers. Twin Galaxies' H1Z1 Pro League will commence its inaugural season in April 2018.

- Vision Entertainment is a producer of original esports content and live esports events. The company currently produces five weekly shows airing on Facebook Live, reaching a combined audience of more than two million video game enthusiasts. Vision Entertainment also produces live esports events for digital and linear broadcasts, such as last year's "H1Z1: Fight for the Crown," which aired in a primetime slot on The CW in April 2017, reaching the largest viewing audience ever for an esports event on network TV.

"Evolution Media has spent several years advising and analyzing companies in the esports sector, and we're particularly excited to partner with a world class management team led by Stratton, who we've known since his days running Strikeforce and the San Jose Sharks," said Rick Hess, founder and co-managing partner of Evolution Media. "Esports is one of the highest growth sectors within all media and entertainment. We couldn't be more bullish on the space and Vision's market position."



Vanguard Digital Advisor®
Enroll by Dec. 31, enjoy
90 days with no advisory fees.

Make it happen

+ Important information

Vanguard® Digital Advisor

This new group of investors join the New York Yankees in committing to the Vision Esports platform. Additional investors in the round include Shamrock Holdings, the private investment arm of the Disney family; Seth Bernstein Capital Management; Simon Tikhman of First Access Entertainment and several other high-profile professional athletes and entertainers.

"We have been following the esports sector for several years," said Dan Good, VP Business Development, St. Louis Cardinals. "In the last year, we have gotten to know



+ Important information

Vanguard® Digital Advisor

SPONSORED FINANCIAL CONTENT


What Every Trader Should Know About Margin
Charles Schwab


7 Mistakes You'll Make When Hiring a Financial Advisor
smartasset


Get a 0% Intro APR on Purchases for 15 Months
Citi Rewards+℠ Card


Man Who Called March 2020 Crash Has New Prediction
Empire Financial Research


Wall Street Quietly Predicts Massive Market Event in 2021
Stansberry Research



**Exhibit 17 (cont'd)**



professional athletes and entertainers.

"We have been following the esports sector for several years," said Dan Good, VP Business Development, St. Louis Cardinals. "In the last year, we have gotten to know the team at Vision Esports and felt this was an exciting investment opportunity. In addition to the sector's growth potential, we were impressed with Vision's depth of experience that is applicable to the new esports ecosystem, including Stratton Sclavos' experience with the San Jose Sharks; Jace Hall at Warner Brothers Interactive; Chris Nordling at MGM Resorts and Mike Mossholder at UFC."

### About Vision Esports

Vision Esports, L.P., an esports investment fund and management company formed by Vision Venture Partners, is the largest shareholder in 3 esports companies – Echo Fox, Twin Galaxies and Vision Entertainment, all serving unique, but complementary components of the esports ecosystem. Vision Esports' offices, production studios and esports training facilities are located in 30,000 square feet of commercial space in Beverly Hills, California. The General Partners of Vision Esports, LP are Stratton Sclavos, Jace Hall and Chris Nordling and major investors include Evolution Media, New York Yankees, St. Louis Cardinals and Shamrock Holdings.

### About Vision Venture Partners

Vision Venture Partners (VVP) is a private equity firm formed by Amit Raizada, Rick Fox and Stratton Sclavos. The firm targets hyper-growth segments in esports, entertainment, lifestyle and technology. VVP leverages its partners' experience, relationships and long track record of business success to seek out great entrepreneurs and operating executives in its mission to build the next generation of companies for Generation Always – Always Connected, Always Social, Always Mobile, Always Aware.

### Media Contacts:





U.S. MARKETS CLOSED

| DOW FUTURES | S&P FUTURES | NASDAQ FUTURES | GOLD | OIL (WTI) | EUR/USD |
|---|---|---|---|---|---|
| +0.49% +148.00 30,257.00 | +0.62% +23.00 3,718.00 | +0.57% +72.00 12,776.50 | -0.79% 1,894.65 | -0.31% 48.08 | +0.18% 1.22 |

Esports, LP are Stratton Sclavos, Jace Hall and Chris Nordling and major investors include Evolution Media, New York Yankees, St. Louis Cardinals and Shamrock Holdings.

**About Vision Venture Partners**

Vision Venture Partners (VVP) is a private equity firm formed by Amit Raizada, Rick Fox and Stratton Sclavos. The firm targets hyper-growth segments in esports, entertainment, lifestyle and technology. VVP leverages its partners' experience, relationships and long track record of business success to seek out great entrepreneurs and operating executives in its mission to build the next generation of companies for Generation Always – Always Connected, Always Social, Always Mobile, Always Aware.

**Media Contacts:**



Haley Hey, Director of Public Relations
**haley@vvpllc.com**   -   424.389.2275

## Find News

search text

GO





**<u>Exhibit 18</u>**

**<u>Email Correspondence From Mr. Bernstein in Respect of the New York Yankees</u>**

**(Filed Separately)**

**Exhibit 19**



B u z z e r     Buzzer     Videos

## Rick Fox explains how eSports helped him connect with his son

**Nick Schwartz** 🐦 @nick_schwartz
Mar 22, 2016 at 9:49a ET



Three-time NBA champion Rick Fox became one of the first high-profile athletes to jump into the world of eSports by purchasing a professional League of Legends team in 2015, Echo Fox.

Before Fox was an eSports team owner, though, he was simply a passionate fan of the game, and he explained in a revealing interview with *Vice Sports* that video games and eSports helped him forge a bond with his son, Kyle.

While Fox was playing for the Los Angeles Lakers  in the early 2000s, his son lived on the East Coast, leading to what Fox called a "broken family." Though he couldn't be with his son in person, Rick and Kyle connected online by playing games like World of Warcraft, and later, League of Legends.

Via *Vice Sports*:

Kyle introduced his dad to League of Legends years later, and after Fox witnessed Counter Logic Gaming beat Team Solo Mid in a sold-out Madison Square Garden last summer, he quickly became more involved in the scene.



**Exhibit 20-A**



## *$6.1M Jury Verdict for PHC Holding Company, LLC*

### Jackson County, Missouri

Represented Defendants/Counterclaim-Plaintiffs in successfully obtaining a $6.1 million jury verdict for breach of fiduciary duty and civil conspiracy, including $5.5 million in punitive damages, following a thirteen-day jury trial in Jackson County, Missouri. The plaintiffs initially filed claims against clients on various theories, all of which were dismissed by the Court prior to trial. At trial, persuaded the jury that Counterclaim-Defendants improperly used their control over Counterclaim-Plaintiffs to take monies for lavish personal entertainment and other self-dealing transactions, and that the award of punitive damages was appropriate to deter future conduct. Raizada Group, LP et. al. v. PHC Holding Company, LLC, et. al., No. 1416-CV14245 (Jackson County, Missouri, November 1, 2017).

*Attorneys*

Daniel E. Blegen
Catherine D. Singer

Print this Page

## Exhibit 20-B

## Amit Raizada, payday profiteer, hit with $6 million verdict in civil case

*November 7, 2017  by David Hudnall*



Lately, former Kansas City businessman Amit Raizada has been featured in fawning stories by Bloomberg and ESPN's the Undefeated. Raizada is a partner, along with former Los Angeles Lakers basketball player Rick Fox and former San Diego Sharks owner Stratton Sclavos in Vision Venture Partners  a Los Angeles–based firm that is investing aggressively in esports.

Many of us back in flyover country remember Raizada differently.

He first turned up on *The Pitch's* radar back in 2013  as a character in our series on Kansas City's morally disgusting but highly lucrative online-payday-lending industry. Raizada's firm, Spectrum Business Ventures  owned a sizable stake in eData Solutions  a technology company for online lenders founded by Joel Tucker  brother of recently convicted Scott Tucker  In 2012  eData was sold to Wyandotte Nation  an American Indian tribe, for $277 million  By the time Raizada and his wife divorced  in 2014, their estate was valued at $90 million

When the payday bubble burst, Raizada moved to Miami  where he opened a nightclub  It flailed. He has since been accused of all manner of financial skullduggery  self-dealing through shell companies, fraudulent land deals in Mexico, lying to investors in Verizon Wireless stores he purchased in St  Louis  We've written all about it.

In 2014  Raizada's former business partners at Spectrum Business Ventures — Scott Asner and Michael Gortenburg — sued him, via their holding companies, for liquidating various accounts, making unauthorized loans to himself through the company, and racking up exorbitant tabs at restaurants and bars  (Raizada testified under oath that spending $100 000 or $200,000 in an evening at a club entertaining was "normal and ordinary business.)

That civil case went all the way to trial last week, and on Monday a jury returned a $6 1 million verdict against Raizada  finding him guilty of breaching his fiduciary duty to two of those holding companies  PHC Holding Co  LLC and ASM41 LLC  Court records show actual damages awarded amount to $611 000  with punitive damages totaling about $5 4 million

Raizada's lawyers didn't respond to a request for comment  But plenty more billable hours lie ahead  In September Raizada filed a new suit against Asner, Gortenburg and several jointly owned LLCs in which he is a minority partner, alleging that he is the victim of "self-dealing unauthorized borrowing and expenditures of money  unauthorized distributions to themselves  conversion of money belonging to [Raizada]  breaches of contract and tortious interference  — basically  all the same things Raizada was found guilty of on Monday

The defendants have yet to file an answer in that case

**Update**  Raizada's attorney  Linda McFee  of McDowell  Rice  Smith & Buchanan  writes to *The Pitch* regarding Monday's verdict

"Amit Raizada and Spectrum Business Ventures were surprised and disappointed by the jury's verdict, both as to the $611 000 in compensatory damages and the grossly excessive punitive award  Neither Raizada nor SBV were designated as the Manager of either company  nor were they entrusted with management duties that would give rise to a fiduciary duty  Raizada and SBV presented evidence at trial that the disputed transactions were part of ongoing efforts to expand the business, resulted in profits for the business  and were disclosed to and approved by the companies  Manager  Raizada and the defendant entities will be filing motions for judgment or for new trial based on numerous grounds  and plan to appeal if those motions are denied "

**CATEGORIES: NEWS**
Tags: amit raizada, joel tucker, news, News, payday-lending, Scott Tucker



145

**<u>Exhibit 21</u>**

45,430 views  |  Oct 19, 2017, 09:58am

# New York Yankees Take Big Swing At Esports



**Mike Ozanian**  Forbes Staff

SportsMoney
*Traffic cop at the intersection of money and sports*

🚫 **This article is more than 2 years old.**



NEW YORK, NY – JUNE 3: Hal Steinbrenner, Managing General Partner of the New York Yankees (Photo by... [+]

The New York Yankees are getting into Esports.

Baseball's most valuable team announced today an investment partnership with Vision Esports, the largest single shareholder of three esports-related companies. The two organizations will create and manage an "ecosystem" of esports properties that include Echo Fox, Twin Galaxies, and Vision Entertainment.

Game plan: accelerate the growth and increase the global brand awareness of the three companies. Echo Fox, a leading professional esports organization founded by three-time NBA Champion Rick Fox; Twin Galaxies, a one-of-a-kind League Operator considered an authority on performance validation, statistics and skill indexes; and Vision Entertainment, a studio that creates esports-specific content for scripted and non-scripted platforms.

The size of the investment was not disclosed.

146

**<u>Exhibit 22</u>**

**Erroneous Capitalization Table**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction*)

**Exhibit 23**

**Initial Resignation Letter**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction*)

**Exhibit 24**

**Detailed Resignation Letter**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)*

**Exhibit 25**

**Text Message Exchanged From Mr. Fox to Ms. Suber**



Sat, Jul 27, 3:05 PM

No - Amit Stratton and Ali are really bad people - I can share with you when you are free

**Exhibit 26**

**Promissory Note for the Sclavos Concealed Loan**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction)*

## Exhibit 27

## Liens Granted by Prometheus Ventures / Stratton Sclavos In Respect of his Principal Residence

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)          923540 001

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)
NDG
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, ILLINOIS 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PROMETHEUS VENTURES, LLC, a California limited liability company | | | |

| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 737 Bryant Street | Palo Alto | CA | 94301 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIRST CREDIT BANK, a California banking corporation | | | |

| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9255 SUNSET BOULEVARD | WEST HOLLYWOOD | CA | 90069 | USA |

4. COLLATERAL: This financing statement covers the following collateral

ALL OF DEBTOR'S PERSONAL PROPERTY ASSETS AS FULLY DESCRIBED ON THE PERSONAL PROPERTY SCHEDULE ATTACHED HERETO AS EXHIBIT "B", WHETHER ANY OF THE FOREGOING IS OWNED NOW OR ACQUIRED LATER; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KIND RELATING TO ANY OF THE FOREGOING; ALL PROCEEDS RELATING TO ANY OF THE FOREGOING (INCLUDING INSURANCE, GENERAL INTANGIBLES AND ACCOUNTS PROCEEDS), INCLUDING WITHOUT LIMITATION ALL BUILDING MATERIALS AND EQUIPMENT LOCATED IN OR AROUND OR RELATED TO DEBTOR'S BUSINESS CONDUCTED ON REAL PROPERTY COMMONLY KNOWN 1305 COLLINGWOOD PLACE, LOS ANGELES, CA 90069 AND LEGALLY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box.
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

D+H
400 S.W. 6th Avenue, Portland, Oregon 97204

**Exhibit 27** (*cont'd*)

## Liens Granted by Prometheus Ventures / Stratton Sclavos

### UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**PROMETHEUS VENTURES, LLC, a California limited liability company**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                        SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)   D+H 400 S.W. 6th Avenue, Portland, Oregon 97204

**Exhibit 27 (*cont'd*)**

**Liens Granted by Prometheus Ventures / Stratton Sclavos**

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 56 OF TRACT NO. 17290, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 440, PAGES 27 TO 30 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: **5560-003-003**

## Exhibit 27 (*cont'd*)

## Liens Granted by Prometheus Ventures / Stratton Sclavos

Debtor: PROMETHEUS VENTURES, LLC
a California limited liability company

### PERSONAL PROPERTY SCHEDULE

All of Debtor's (or Trustor's or Grantor's, as applicable) right, title, and interest in and to any and all of the present and future property, items, and interests described below, now owned or hereafter acquired by Trustor and/or Debtor and now or hereafter attached to, situated in, on, or about, used in or about, or arising in connection with the Land (herein so called) more particularly described on Exhibit A attached hereto (whether fee or leasehold) or in the Financing Statement to which this List of Collateral is attached and the Improvements (herein so called) thereon (the Land and Improvements are hereinafter sometimes referred to as the "Real Property"):

(i)    All fixtures, building materials, machinery, equipment, furniture, furnishings, inventory, and personal property, and all renewals, replacements and substitutions thereof and additions thereto (all property described or referred to in this subsection (i) being hereinafter sometimes called the "Personal Property");

(ii)   All portions of the Personal Property which are either fixtures or personal property, tangible or intangible;

(iii)  All revenues, receipts, income, accounts, accounts receivable, general intangibles, payment intangibles, cash proceeds, and other receivables arising under, out of, in connection with or related to the Real Property and including, without limitation, revenues, receipts, income, receivables and accounts relating to or arising from rentals, rent equivalent income; all liquidated damages following defaults under any lease; all proceeds payable under any policy of insurance covering loss of rents, issues, profits, royalties, bonuses, revenue, receipts, income, accounts, accounts receivable and other receivables, and other benefits; and any and all other rights which Trustor and/or Debtor may have against any lessee or against any other person under or in connection with any lease;

(iv)   All building materials and equipment, machinery, and other items of personal property of any kind or character now or hereafter related to, situated upon or used, or acquired for use, upon or in connection with any part of the Real Property;

(v)    All accounts, deposit accounts, cash proceeds, noncash proceeds, inventory, instruments, chattel paper, documents, goods, consumer goods, insurance proceeds, leases, letter of credit rights, contract rights, general intangibles, payment intangibles, now, or hereafter related to, any of the Real Property and the Personal Property, including, without limitation, the following:

(A)   All contracts now or hereafter entered into by and between Trustor and/or Debtor, as owner, and any contractor, or any other party, as well as all right, title, and interest of Trustor and/or Debtor in, to, and under any subcontracts, providing for the construction (original, restorative or otherwise) of any of the Improvements, and of any other buildings, structures, or improvements to or on the Real Property (or any part thereof), or the furnishing of any materials, supplies, equipment, or labor in connection with any such construction;

(B)   All of the plans, specifications, and drawings (including, without limitation, plot plans, foundation plans, utility facilities plans, floor plans, elevations plans, framing plans, cross-sections of walls plans, mechanical plans, electrical plans, architectural and engineering plans and specifications, and architectural and engineering studies and analyses) heretofore or hereafter prepared by any architect or engineer with respect to any of the Real Property;

(C)   All agreements now or hereafter entered into with any party with respect to architectural, engineering, management, brokerage, promotional, marketing, or consulting services rendered or to be rendered, with respect to the planning, design, inspection, or supervision of the construction, development, management, marketing, promotion, leasing, operation, or sale of any of the Real Property;

EXHIBIT "B"
PAGE 1 OF 3

## Exhibit 27 (*cont'd*)

## Liens Granted by Prometheus Ventures / Stratton Sclavos

Debtor:   PROMETHEUS VENTURES, LLC
    a California limited liability company

(D) To the extent assignable, all commitments (and the proceeds therefrom) issued by any lenders or investors to finance or invest in any of the Real Property and Personal property, or in Trustor and/or Debtor;

(E) Any completion bonds, performance bonds, labor and material payment bonds, and any other bonds (and the proceeds therefrom) relating to any of the Real Property or to any contract providing for construction of any of the Improvements or any other buildings, structures, or improvements to, or on, any of the Real Property;

(F) All rights or awards due to Trustor and/or Debtor arising out of any eminent domain proceedings for the taking or for loss of value of any of the Real Property;

(G) All rents, issues, profits, royalties, bonuses, revenue, receipts, income, accounts, accounts receivable and other receivables, and other benefits derived from the Real Property and the Personal Property or arising from the use or enjoyment of any portion thereof or from any lease and any and all rights which Trustor and/or Debtor may have against any lessee or against any other person under or in connection with any lease; all chattel paper, general intangibles and accounts receivable owing to Debtor, Debtor's equipment, and all proceeds of the foregoing;

(H) All of Trustor's and/or Debtor's right, title, and interest in and to trademarks, trade names, or symbols under which any of the Real Property is operated or the business of Trustor and/or Debtor at the Real Property is conducted and all agreement now or hereafter entered by Trustor and/or Debtor with respect thereto.

(I) All revenues, receipts, income, accounts, accounts receivable, and other receivables arising out of the leasing or operation of, or the business conducted at or in relation to, any of the Real Property;

(J) All rights to payment from any consumer credit/charge card organization or entity (such as or similar to the organizations or entities which sponsor and administer the American Express, Carte Blanche, Diner's Club, Visa, the Discover Card and Mastercard cards);

(K) All monetary deposits which Trustor and/or Debtor has been, or may be, required to give to any public or private utility with respect to utility services furnished, or to be furnished, to the Real Property;

(L) All contracts of sale and options relating to the disposition of any of the Real Property;

(M) All products and proceeds arising by virtue of any transaction related to the disposition of any of the Real Property or the Personal Property;

(N) All deposits of cash, securities, or other property which may be held, at any time from time to time, by Trustor and/or Debtor to secure the performance by each lessee or other person or entity under any lease or other agreement (oral or written) with respect to such person's right to occupy, use or manage any of the Real Property or Personal Property;

(O) All permits, licenses, franchises, certificates, and other rights and privileges obtained by Trustor and/or Debtor in connection with any of the Real Property or Personal Property;

(P) The balance of every deposit account (now or hereafter existing) of Trustor and/or Debtor with Secured Party, Agent or any Lender (or any agent, affiliate, or subsidiary of Secured Party, Agent or any Lender) and any other claim of Trustor and/or Debtor against Secured Party, Agent or any Lender (now or hereafter existing) and all money, instruments, securities, documents, chattel paper, credits, demands, and any other property, rights, or interests of Trustor and/or Debtor which at any time shall come into the possession, custody, or control of Secured Party, Agent or any Lender (or any agent, affiliate, or subsidiary of Secured Party, Agent or any Lender);

EXHIBIT "B"
PAGE 2 OF 3

## Exhibit 27 (*cont'd*)

### Liens Granted by Prometheus Ventures / Stratton Sclavos

Debtor: PROMETHEUS VENTURES, LLC
a California limited liability company

      (Q)      All proceeds payable or to be payable under each policy of insurance relating to the Real Property and/or the Personal Property; and

      (R)      All books, records, computer programs, tapes, discs, computer software and other like records and information evidencing, securing, relating to or concerning the Real Property, the Personal Property, or any of the property described in clauses (ii) through (iv) and in subclauses (A) through (Q) of this clause (v); and

    (vi)      All leases, licenses, security agreements, and all other contracts and agreements governing or relating to Trustor's and/or Debtor's ownership, use, operation or sale of any of the Real Property, Personal Property or any of the property described in clauses (ii) through (v), above; and

    (vii)     All payments under insurance (whether or not Secured Party is the loss payee thereof) or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing, to the extent not otherwise included;

    (viii)    All replacements or substitutes for, all products and proceeds of, and all accessions to, any of the property described above.

**Exhibit 28**

**Facebook iMessenger Messages Between Mr. Hall and Ms. Suber
Regarding Defendant Sclavos's Drug Use**



## Exhibit 29-A

**Press Release Issued by the SEC Re: the SEC-Rashid Matter**
***(SEC v. Rashid, S.D.N.Y., No. 17-cv-8223, 2/11/19)***

Press Release



## Former Private Equity Firm Partner Charged With Secretly Billing Clients for His Vacations and Salon Visits

### Related Materials

- SEC Complaint

**FOR IMMEDIATE RELEASE**
**2017-199**

*Washington D.C., Oct. 25, 2017* — The Securities and Exchange Commission today charged Mohammed Ali Rashid, a former senior partner at Apollo Management L.P., with defrauding his fund clients by secretly billing them for approximately $290,000 in personal expenditures, including his family vacations, visits to a hair salon, and purchases of designer clothing and high-end electronics.

The SEC's complaint alleges that Rashid falsely claimed that certain individuals accompanied him to dinners to make it appear various personal expenses had a business purpose, and he doctored a receipt in an effort to justify his purchase of a $3,500 suit for his father as a business expense.

"As alleged in our complaint, despite earning millions of dollars, Rashid used client money to fund his lifestyle and personal expenses, including family vacations, designer clothing, and spa services. Rashid knew what he was doing was wrong because he took active steps to conceal his misconduct," said Anthony Kelly, Co-Chief of the SEC Enforcement Division's Asset Management Unit.

According to the SEC's complaint, despite being caught by the firm and told to stop on two occasions in 2010 and 2012, Rashid continued to expense personal items to clients into 2013. After he was confronted about his expenses for a third time, Rashid admitted that he charged approximately $220,000 in personal expenses. A forensic accountant then uncovered additional personal expenses that Rashid improperly charged to clients.

The SEC's complaint alleges that Rashid violated, and in the alternative aided and abetted violations of, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940.

The SEC's investigation was conducted by Donna Norman of the Asset Management Unit and Duane Thompson, and the litigation will be led by Mr. Thompson. The case is being supervised by Jan Folena and Corey Schuster.

###

**Exhibit 29-B**


**Complaint Filed by the U.S. Securities and Exchange Commission
in the SEC-Rashid Matter (*SEC v. Rashid, S.D.N.Y., No. 17-cv-8223, 2/11/19*)**


**(Filed Separately)**

## **Exhibit 30**

***Blum and Shkolnik v. Raizada Ali Rashid**, et al.*, **Case 3:18-cv-02513-DMS-BLM**

**(Filed Separately)**

**Exhibit 31**

**Text Message From Mr. Fox to Ms. Suber**

 

Rick >

Thank you Karen - Amit screwed Shaun and Larry as well and yes Jared is very much in the Stratton camp —— I have committed myself to stopping Amit for all people not just athletes

Someone has to he is a bad person and Stratton is right behind him but in debt to Amit as well

**Exhibit 32**

**Boies-Schiller/Bernstein Letter and the Scope of Engagement and Investigation**

**(Filed Separately)**

*(Pending Ruling from Judge Alison J. Nathan Regarding Sealing or Redaction*)

**Exhibit 33**

**Facebook iMessenger Messages Between Mr. Hall and Ms. Suber Regarding Investors Surprise Upon Realizing "They Were Getting Shafted"**



**Exhibit 34**

There is no Exhibit 34.[83]

---

[83] This placeholder is being used merely to maintain the numbering scheme in the First Amended Complaint, given that certain Exhibits that may be filed under seal or redacted have been shared with Defendants in advance.

**Exhibit 35**

**List of Comparators**

**(Filed Separately)**

*(Filed Under Seal*)

**Exhibit 36**

**Email, Dated April 1, 2019 (1:12:21 PM PDT), from Defendant Raizada to Mr. Hall in Which Defendant Raizada Uses a Racial Epithet to Describe Mr. Hall**

**From:** Amit Raizada <amit@vvpllc.com>
**Date:** April 1, 2019 at 1:12:21 PM PDT
**To:** Jace Hall <jace@twingalaxies.com>
**Subject: RE: Clarification - You are Lying again and misleading people**


That's because you're a nigger

Amit  Raizada

o: 424.389.2278 | m: 913.634.4805


**From:** Jace Hall <jace@twingalaxies.com>
**Sent:** Monday, April 1, 2019 1:12 PM
**To:** Amit Raizada <amit@vvpllc.com>
**Cc:** david@tashlawgroup.com
**Subject:** Re: Clarification - You are Lying again and misleading people


I'm no longer interested in this conversation

**Exhibit 37**

**Tweets made by LoL Esports
(League Championship Series Commissioner Chris Greeley of Riot Games)**

---

🐦       🔍  Search Twitter

**LoL Esports** ✔ @lolesports · May 15, 2019                              ⌄

The LCS has concluded its preliminary investigation into the alleged
comments made by a member of the Echo Fox ownership group. Hate
speech, threats, and bigotry have no place in the LCS. We have directed Echo
Fox to take appropriate corrective action within 60 days. (1/2)

💬 71            ⟲ 614            ♡ 5.3K            ⬆

**LoL Esports** ✔ @lolesports · May 15, 2019                              ⌄

If Echo Fox does not take action by removing any individuals whose actions
violate League rules and agreements within the required time period, the
League will take formal action that may adversely impact the future of Echo
Fox in the LCS. -Chris Greeley, LCS Commissioner (2/2)

💬 40            ⟲ 373            ♡ 4.4K            ⬆

**Exhibit 38**

Jacob Wolf, *Echo Fox LCS Slot Sale Funds of $30.5 Million to be Distributed by Court*,
ESPN, October 11, 2019

## Echo Fox LCS slot sale funds of $30.5 million to be distributed by court



Former NBA player Rick Fox subsidizes his League of Legends team, Echo Fox, compete at the LCS Arena in Los Angeles.
Colin Young-Wolff/Riot Games

Jacob Wolf
ESPN Staff Writer

Oct 11, 2019

The Superior Court of California County of Los Angeles will handle distribution of $30.5 million that is owed to Echo Fox by Riot Games for the sale of the team's League of Legends Championship Series Slot, according to a document filed with the court on Oct. 4.

That decision settles one disagreement between three-time NBA Champion and Echo Fox co-founder Rick Fox and one of his partners Stratton Sclavos over how the slot proceeds should be divided up between Echo Fox's stakeholders. The agreement to default to the court's judgement is signed by attorneys representing Vision Esports: Esports, LLC and Rick Fox.

EDITOR'S PICKS

Evil Geniuses confirm acquisition of Echo Fox's LCS spot

Sources: Rick Fox to be ousted from Echo Fox

Rick Fox sues business partners alleging fraud, conspiracy and breach of contract

Riot will pay the funds to the court, who will only distribute them if Echo Fox's general partner and over 80% of their limited partners agree or if the court makes a separate order of its own.

The new filing is a part of a lawsuit filed by the three Vision Esports funds -- which are led by Sclavos and contain backing from the likes of the New York Yankees, St. Louis Cardinals, Kevin Durant and more -- against Echo Fox majority owners Esports, LLC and Fox. Esports, LLC is comprised of a number of shareholders, the largest among them being an entity majority owned by Fox and Axis Digital Sports Group, another entity split between Fox and his partner Khalid Jones's SourceRock Ventures.

Fox and Esports, LLC are set to be removed as Echo Fox's general partner on Oct. 21, after over 80% of their limited partners agreed to oust him and notified him and Jones on Aug. 21. Jones himself was among the signatories of that removal letter that would begin the process of ousting Fox.

On Sept. 26, Riot Games agreed to sell the Echo Fox slot to Evil Geniuses for a total of $33 million -- $30.5 million due to Echo Fox and $2.5 million due directly to Riot.

That ended a saga that put the slot in jeopardy after Riot notified Echo Fox in May that it would have 60 days to remove co-founder and shareholder Amit Raizada from its cap table because of racist language he used towards former Echo Fox CEO Jace Hall.

Riot later gave the Echo Fox group an seven-day extension in July, which led to a deal with Kroenke Sports & Entertainment for $30.25 million. However, that deal fell through after the Kroenke group were sued by Sentinels CEO Rob Moore for the alleged violation of a verbal joint venture agreement that Moore claimed entitled him to take part in the Kroenke's esports businesses. Moore and the Sentinels operated Overwatch League team the Los Angeles Gladiators for the Kroenke group from late 2017 to September 2019.

After the Echo Fox deal with the Kroenkes collapsed, the shareholders evaluated between two deals -- one from Mosaic Media Investment Partners, led by Hollywood executive Allen Shapiro and another directly from Evil Geniuses. Fox and the other partners could not agree on a sale, which led to them forfeiting the slot to Riot Games on Aug. 15.

## Echo Fox LCS slot sale funds of $30.5 million to be distributed by court



Former NBA player Rick Fox watches his League of Legends team Echo Fox compete at the LCS Arena in Los Angeles
Colin Young-Wolff/Riot Games


Jacob Wolf
ESPN Staff Writer

Oct 11 2019

The Superior Court of California County of Los Angeles will handle distribution of $30.5 million that is owed to Echo Fox by Riot Games for the sale of the team's League of Legends Championship Series Slot, according to a document filed with the court on Oct. 4.

That decision settles one disagreement between three-time NBA Champion and Echo Fox co-founder Rick Fox and one of his partners Stratton Sclavos over how the slot proceeds should be divided up between Echo Fox's stakeholders. The agreement to default to the court's judgement is signed by attorneys representing Vision Esports, Esports, LLC and Rick Fox.



**EDITOR'S PICKS**

Evil Geniuses confirm acquisition of Echo Fox's LCS spot

Sources: Rick Fox to be ousted from Echo Fox

Rick Fox sues business partners alleging fraud, conspiracy and breach of contract

Riot will pay the funds to the court, who will only distribute them if Echo Fox's general partner and over 80% of their limited partners agree or if the court makes a separate order of its own.

The new filing is part of a lawsuit filed by the three Vision Esports funds -- which are led by Sclavos and contain backing from the likes of the New York Yankees, St. Louis Cardinals, Kevin Durant and more -- against Echo Fox majority owners Esports, LLC and Fox. Esports, LLC is comprised of a number of shareholders, the largest among them being an entity majority owned by Fox and Axis Digital Sports Group, another entity split between Fox and his partner Khalid Jones's SourceRock Ventures

Fox and Esports, LLC are set to be removed as Echo Fox's general partner on Oct. 21, after over 80% of their limited partners agreed to oust him and notified him and Jones on Aug. 21. Jones himself was among the signatories of that removal letter that would begin the process of ousting Fox.

On Sept. 26, Riot Games agreed to sell the Echo Fox slot to Evil Geniuses for a total of $33 million -- $30.5 million due to Echo Fox and $2.5 million due directly to Riot.

That ended a saga that put the slot in jeopardy after Riot notified Echo Fox in May that it would have 60 days to remove co-founder and shareholder Amit Raizada from its cap table because of racist language he used towards former Echo Fox CEO Jace Hall.

Riot later gave the Echo Fox group an seven-day extension in July, which led to a deal with Kroenke Sports & Entertainment for $30.25 million. However, that deal fell through after the Kroenke group were sued by Sentinels CEO Rob Moore for the alleged violation of a verbal joint venture agreement that Moore claimed entitled him to take part in the Kroenke's esports businesses. Moore and the Sentinels operated Overwatch League team the Los Angeles Gladiators for the Kroenke group from late 2017 to September 2019.

After the Echo Fox deal with the Kroenkes collapsed, the shareholders evaluated between two deals -- one from Mosaic Media Investment Partners, led by Hollywood executive Allen Shapiro, and another directly from Evil Geniuses. Fox and the other partners could not agree on a sale, which led to them forfeiting the slot to Riot Games on Aug. 15.

## Exhibit 39

*Affidavit of Haley Hey as filed in*

*AG613, LLC d/b/a 18 Capital Group, et al v. Raizada, et al*
*(Case No. 1816-CV26329, Cir. Ct. of Jackson County Missouri at Kansas City, Division 14)*

**(Filed Separately)**

## Exhibit 40

PROMETHEUS-SCLAVOS FORECLOSURE COMPLAINT

**(Filed Separately)**

## Exhibit 41

FORECLOSURE MOTION TO DISMISS

**(Filed Separately)**

**<u>Exhibit 42</u>**

**Email Referencing a "Backstop Agreement"**

**(Filed Separately)**

*(Filed Under Seal*)