UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:  3/23/2021           │
└─────────────────────────────────┘
```

Suber,

Plaintiff,

—v—

VVP Services, *et al.*,

Defendants.

20-cv-8177 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On March 11, 2021, the Court received the attached *ex parte* application for a temporary restraining order from Plaintiff. The Court denied that request in an Order on March 11, 2021. The Court ordered Plaintiff to show cause why the application and Order should not be filed on the public docket. Plaintiff filed a letter on March 18, 2021, stating that Plaintiff did not have any cause for the application to remain under seal. The *ex parte* application, Order, and letter are now unsealed and attached to this Order.

SO ORDERED.

Dated: March 22, 2021
        New York, New York

_____
ALISON J. NATHAN
United States District Judge



**Amos N. Jones, Attorney at Law**
1150 K Street Northwest, Washington, D.C. 20005-6809
Telephone: (202) 351-6187 | Facsimile: (202) 478-1654
www.amosjones.com | jones@amosjoneslawfirm.com

*via electronic mail to NathanNYSDChambers@nysd.uscourts.gov*

Wednesday March 10, 2021

The Honorable Alison J. Nathan, Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> **RE:** **Motion for Temporary Restraining Order being filed *ex parte* as justified
> under Fed. R. Civ. P. 65(b)(1) in *Karen M. Suber v. VVP Services, LLC*, et al,
> Case No. 1:20-cv-8177 – AJN (Netburn), and in accord with Her Honor's
> rules of practice in this Court**

Dear Judge Nathan:

I serve as lead counsel for Plaintiff Karen M. Suber in the above-captioned matter, and we respectfully submit *ex parte* the enclosed Motion for a Temporary Restraining Order along with a proposed order, a brief supporting the motion, a Rule 65 certification from me as lead counsel explaining why the *ex par*te filing with no notice to the non-movant is appropriate here, and the declaration of Plaintiff Karen M. Suber (which declaration is filed <u>under seal</u>) supporting the filing a motion for a temporary restraining order without notice to the non-movants *ex parte*. We present this letter for such an *ex parte* restraining-order motion in accordance with the official guidance advising litigants on the practices preferred by Your Honor. We thank you for your consideration.

Respectfully submitted,

Amos N. Jones

Enclosures:  As referenced

CC:  Karen M. Suber, Plaintiff
  Su Mi Park, Counsel to Plaintiff

Amos Jones is admitted in the District of Columbia and before the U.S. District Court,
District of Maryland, the U.S. District Court, Western District of Pennsylvania, the
U.S. Court of Appeals for the Third Circuit, the U.S. Court of Appeals for the Fourth Circuit, the
U.S. Court of Appeals for the Sixth Circuit, the U.S. Court of Appeals for the District of Columbia
Circuit, the U.S. Court of Appeals for the Federal Circuit, and the Supreme Court of the United
States.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KAREN M. SUBER,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| v. | § | |
| | § | **CERTIFICATION OF COUNSEL** |
| **VVP SERVICES, LLC,** | § | **IN *EX PARTE* APPLICATION** |
| **VISION VENTURE PARTNERS, LLC,** | § | |
| **ELEVEN STONES, LP,** | § | |
| **AMIT RAIZADA,** | § | **Case No. 1:20-cv-8177 – AJN (Netburn)** |
| **PROMETHEUS VENTURES, LLC, AND** | § | |
| **STRATTON SCLAVOS,** | § | |
| | § | |
| **DEFENDANTS.** | § | |
| | § | |
| | § | |

**RULE 65 CERTIFICATION AND DECLARATION OF COUNSEL IN SUPPORT OF
PLAINTIFF'S *EX PARTE* APPLICATION AND MOTION FOR
TEMPORARY RESTRAINING ORDER, ASSET RESTRAINING ORDER,
SELECTED EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE
FOR PRELIMINARY INJUNCTION**

I, Amos N. Jones, Lead Counsel in the above-captioned matter, certify and declare as follows:

1.  I am an attorney for Plaintiff Karen M. Suber.

2.  I am a member in good standing of the Bar of District of Columbia, Number 974919.

3.  I am submitting this declaration pursuant to Rule 65 of the Federal Rules of Civil Procedure
    in support of Plaintiff's *ex parte* Motion for a Temporary Restraining Order, Asset
    Restraining Order, Selected Expedited Discovery, and Order to show Cause for Preliminary
    Injunction (the "Motion").

4. I am filing this Certification in accordance with Fed. R. Civ. Pro. Rule 65's subdivision (b)(1), "Issuing Without Notice," which provides: "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

5. I have made no effort to give notice to the Defendants of the filing of this Motion, and I have made every effort to preserve the filing as *ex parte*, because no notice should be required.

6. No notice to the Defendants should be required because specific facts in both the accompanying Declaration of Plaintiff Karen M. Suber and in the voluminous Second Amended Complaint filed this evening clearly show that immediate and irreparable injury, loss, or damage will result to Movant Suber before the adverse party can be heard in opposition.

7. Especially and urgently sensitive is the actuality of the ticking time on Defendants' attempt to dispose of a considerable asset by Defendants' having listed for sale a known asset valued at approximately $29.5 million (the defined "**Collingwood Property**") ***shortly after Plaintiff's lawsuit was filed***. *See* ¶¶ 8-9 of Memorandum of Law in Support of Plaintiff's Motion.

8. As demonstrated in the Motion and supporting exhibits, Defendants have engaged in a concerted course of unlawful conduct over many years, inflicting multi-millions of dollars in harm as exposed in numerous lawsuits and judgments. Defendants have ample opportunity and motivation to conceal and dissipate assets and destroy important records given that (1)

Defendants operate a business enterprise that relies on misrepresentations and is pervaded by fraud, (2) Plaintiff is seeking a considerable monetary judgment against Defendants, (3) Defendants' assets can be easily transferred, hidden, encumbered, or dissipated to avoid discovery, and (4) electronic data and computer equipment used to run Defendants' business can be easily altered, wiped, and/or destroyed.

9.  Moreover, Defendants have persisted in presenting a parade of falsehood-laden affidavits to this Court in recent days by their own *Controller*, further demonstrating their willingness to nakedly run afoul of the law even before they have filed an Answer to the well-pleaded complaints Movant-Plaintiff has served in this Action.

10. It has been this Attorney's experience as a former Associate Professor of Law studying fraud in contractual relations and remedies that defendants who have engaged in deceptive schemes but who then receive advance notice of the filing of a temporary restraining order often seek to undermine the movant's efforts by dissipating or concealing assets and destroying evidence:

    a.  In *FTC v. Goldman Schwartz Inc.*, No. 13-cv-00106 (S.D. Tex. 2013), the FTC obtained a temporary restraining order (TRO) with an asset freeze against numerous defendants. Within an hour of being served with the TRO, but before the asset freeze had been fully implemented, the owner withdrew approximately $268,000 from a corporate account. Shortly thereafter, the owner sold approximately $160,000 in securities held in a personal trading account. The next day, the owner's wife withdrew another $18,500 from a non-defendant corporation's account that was subject to the asset freeze. Because the court had issued its asset freeze in advance of

these dissipation efforts, the FTC and a court-appointed monitor were able to recover the money.

b. In *FTC v. Prime Legal Plans*, et al, Case No. 0:12-cv-61872-RNS (S.D. Fla. 2012), upon hearing that the TRO had been granted, the Defendants went straight to the bank and transferred $1.7 million in assets to a girlfriend and a mother. The bank was able to claw most of the money back, but the Commission, and thus consumers, ended up losing about $200,000.

c. In *FTC v. Lakhany*, Case No. 12-337-CJC (C.D. Cal. 2012), the day after the court granted an *ex parte* TRO, but before the FTC could effect service, the defendant's employee notified the defendant of the FTC's lawsuit and receivership. The individual defendant proceeded to withdraw $204,000 from corporate bank accounts in violation of the asset freeze. The defendant later stipulated to contempt, and the majority of the funds were recovered.

11. Consequently, there is good cause to believe that, absent an *ex-parte* TRO, immediate and irreparable damage will result to Movant-Plaintiff Suber, and to the Court's ability to craft complete and effective final relief to Movant-Plaintiff Suber from the concealment, transfer, and/or destruction of Defendants' assets and evidence.

**I declare under penalty of perjury that the foregoing statement is true and correct.**

Amos N. Jones, Counsel for Plaintiff-Movant Karen M. Suber

**Dated: March 10, 2021**

Respectfully submitted,

**THE AMOS JONES LAW FIRM**

/s/*Amos N. Jones*

_____

**Amos N. Jones,** Esquire
*pro hac vice*
D.C. Bar No. 974919
AMOS JONES LAW FIRM
1150 K ST NW
Washington, D.C. 20005-6809
Tel.: (202) 351-6187
Fax: (202) 478-1654
E-mail: jones@amosjoneslawfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KAREN M. SUBER**, | § | |
| | § | |
| **PLAINTIFF,** | § | |
| v. | § | |
| | § | |
| **VVP SERVICES, LLC,** | § | |
| **VISION VENTURE PARTNERS, LLC,** | § | Case No. 1:20-cv-8177 – AJN (Netburn) |
| **ELEVEN STONES, LP,** | § | |
| **AMIT RAIZADA,** | § | |
| **PROMETHEUS VENTURES, LLC, AND** | § | |
| **STRATTON SCLAVOS,** | § | |
| | § | |
| **DEFENDANTS.** | § | |
| | § | |
| | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S *EX PARTE* APPLICATION AND MOTION FOR
TEMPORARY RESTRAINING ORDER,
ASSET RESTRAINING ORDER,
SELECTED EXPEDITED DISCOVERY,
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

Plaintiff Karen M. Suber hereby submits this Memorandum of Law in support of Plaintiff's *ex parte* Application and Motion for a Temporary Restraining Order, Asset Restraining Order, Selected Expedited Discovery Order, and Order to Show Cause for Preliminary Injunction as against all Defendants pursuant to Fed. R. Civ. P. Rule 65 and Fed. R. Civ. P. Rules 26 and 34, as applicable.

## I.    PRELIMINARY STATEMENT

1.       As a threshold matter, in New York, preliminary injunctions are "appropriate to thwart a defendant from making a judgment uncollectible." *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.*, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001). This

practice is consistent with a leading principle from longstanding Supreme Court authority that a court may grant a preliminary asset-freeze injunction based on claims for equitable relief. *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 288–89 (1940) (finding injunctive relief appropriate because plaintiff sought rescission and restitution). Here, Plaintiff's Second Amended Complaint, filed today, sets out and documents a profoundly evasive and deleterious project of evasion, obfuscation, and outright lies conducted by Defendants in order to procure funds and/or services and to avoid paying parties they plainly owe, including Plaintiff.  Before an Answer has been filed, even the ***Controller*** of a Defendant, Angela Correll, already has been exposed before this Court for producing an affidavit [D.E. 87] with a serious falsehood, *see* D.E. 88 (Plaintiff's Motion to Strike) – and Defendants' response to exposure of the ***Controller's*** false affidavit was to brazenly replace it with another affidavit similarly discredited already. Defendants' conduct is causing, and will continue to cause, irreparable damage, harm, and injury to Plaintiff. Plaintiff therefore respectfully requests that this Court issue: (i) a temporary restraining order and preliminary injunction against Defendants enjoining certain conduct of Defendants; (ii) an order temporarily restricting the transfer of certain of Defendant Sclavos's and/or Defendant Prometheus Ventures' assets, including the Collingwood Property (as defined below), to preserve Plaintiff's rights to an equitable accounting of the VVP Fraudulent Enterprise and other equitable relief sought by Plaintiff; and (iv) an order for selected expedited discovery allowing Plaintiff to access, inspect, and copy Defendants' records, and records of third parties, relating to the "**Sclavos Concealed Loan**."[1]

---

[1] The "**Sclavos Concealed Loan**" is discussed in ¶¶ 58 (including Footnote 37 thereto) 90, 127, 153, 172 of, and Exhibit 26 to, the FAC and ¶¶ 61 (including Footnote 39 thereto), 99, 136, 162, 181 of, and Exhibit 26 to, the SAC.

2.　　　Plaintiff requests this relief *ex parte*, because if given notice, Defendants may dispose of or hide their business records, and/or further obfuscate Defendant Sclavos's and/or Defendant Prometheus Ventures' equity and/or other ownership interests in Collingwood Property (as defined below), or Defendants may cause other, third parties to do any or all of the foregoing. Without *ex parte* relief, Defendants can ignore applicable laws, thus extending the damage, harm, and injury they are inflicting upon Plaintiff and others, as Defendants clearly continue to operate without any fear of consequences.

Plaintiff does not request this relief lightly and narrowly tailors her request. Without entry of the requested relief, Defendants' continued conduct will irreparably damage, harm, and injure Plaintiff, because Defendants will continue to conceal or misrepresent material facts before the Court and Defendants Sclavos and Prometheus Ventures, in concert with other Defendants, will continue to obfuscate Sclavos's assets, including Sclavos's equity or other interests in the Collingwood Property (as defined below).

3.　　　Karen M. Suber submits an affidavit in support of this *ex parte* Application and Motion attached hereto as Exhibit A ("**Affidavit of Ms. Suber**").

## II.　　FACTUAL BACKGROUND

### A. Defendants' Illegal Activities across Jurisdictions, Including Defendants' Active Concealment of Material Facts

4.　　　Plaintiff Ms. Suber hereby incorporates herein the pleadings set forth in in the Second Amended Complaint, which was filed on Wednesday, March 10, 2021 [**D.E. 91**] ("**SAC**"). The pleadings, including, in particular, the causes of action, set forth in the SAC illustrate how Defendants Sclavos, Prometheus Ventures, Raizada, and Eleven Stones, working through the VVP Fraudulent Enterprise and the "VVP Conspiracy" (working with and through Defendants Vision

Venture Partners, LLC and VVP Services, LLC), violated, or caused to be violated, multiple laws across several jurisdictions, including, without limitation, the State of New York and the State of California. *See* ¶ 22 of the SAC for the definitions of the "**VVP Fraudulent Enterprise**" and "**VVP Conspiracy**."

5.      Here are examples, among other documented facts discussed and/or exhibited in the SAC:

a.      In effecting the Sclavos Concealed Loan and making false statements to investors within New York, all of the coordinating and conspiring Defendants violated The Martin Act (N.Y. Gen. Bus. Law, Article 23-A, §§ 352 – 353)). *See, e.g.*, ¶ 68 of the FAC and ¶ 71 of SAC.

b.      Defendants, acting in a coordinated and concerted manner, concealed then-current and existing material facts from Plaintiff Ms. Suber, and in so doing, Defendants engaged in conduct in violation of the laws of the States of New York and California. *See, e.g.* ¶ 99 of the SAC. In making the misrepresentations of then-current and existing material facts, Defendants induced Ms. Suber to relocate to California and accept employment with VVP Services.

6.      Defendants, again, acting in a coordinated and concerted manner, are working to continue to conceal current and existing material facts in furtherance of the VVP Fraudulent Enterprise and VVP Conspiracy through their misrepresentations to the Court in the form of affidavits submitted by Defendants Raizada and Sclavos and third parties, Ravi Srivastava and Correll.

7.      Through their illegal conduct, Defendants, acting in a coordinated and concerted manner, have caused, and are continuing to cause, damage, harm, and injury to Plaintiff Ms. Suber and other former employees of Defendants Vision Venture Partners, VVP Services, Prometheus

Ventures, and/or other entities created through and for the benefit of the VVP Fraudulent Enterprise.

**B. The Collingwood Property Maintained with Proceeds from the VVP Fraudulent Enterprise and the VVP Conspiracy**

8.      Defendants have benefited handsomely and reaped "rewards" from their use of the proceeds of the VVP Fraudulent Enterprise and the VVP Conspiracy (the "**Fraudulent Enterprise Proceeds**").  For example, Defendants Sclavos and Prometheus Ventures, with the knowledge and acquiescence of the other Defendants, used the Fraudulent Enterprise Proceeds, ***including portions of each of the Sclavos Concealed Loan***, to fund the operation, maintenance, repair, mortgage, and other obligations in respect of a lavish, 11,800-square-foot mansion at 1305 Collingwood Place in Los Angeles, California, in one of the world's most exclusive residential enclaves (the "**Collingwood Property**") in addition to funding Sclavos's decadent "lifestyle of the rich and famous" and the Sclavos Drug Problem defined in the SAC. *See, e.g.*, ¶ 99 of the SAC.  Were it not for the Sclavos Concealed Loan, the primary lender of the Collingwood Property would have foreclosed on the Collingwood Property well in advance of the May 2020 foreclosure, which foreclosure led to a separate legal proceeding.  *See* **Exhibit A** ("**Prometheus-Sclavos Foreclosure Complaint**") and **Exhibit B** ("**Foreclosure Motion to Dismiss**") attached hereto, which Exhibits are also referenced in Footnote 14 to ¶ 19 of the SAC (the "**Fraudulent Enterprise Diagrams**"). In addition, were it not for the Sclavos Concealed Loan, Sclavos could not have jet-setted around the world on luxurious vacations and seeking to defraud other investors, including investors located in New York, New York (and including in this District) and the State of California, among other jurisdictions.

9.    In essence, then, the value of the Collingwood Property, which is currently estimated to be $29,500,000.00,[2] is based on and a result of the Fraudulent Enterprise Proceeds. To be clear, then, Defendants Sclavos and Prometheus Ventures, with the knowledge and acquiescence of the other Defendants, violated laws and caused damage, harm and injury to others, including Plaintiff Ms. Suber, other employees and investors in order to generate the Fraudulent Enterprise Proceeds to help support the opulent home that is the Collingwood Property. Defendants Sclavos and Prometheus Ventures, with the knowledge and acquiescence of the other Defendants, even robbed the retirement funds of a former employee, Michael Mossholder of at least two of the Defendants to generate those Fraudulent Enterprise Proceeds to support the Collingwood Property in addition to supporting Sclavos's decadent lifestyle.

10.    Defendants Sclavos and Prometheus Ventures have estimated their equity stake in the Collingwood Property as approximately between $10,000,000 and $17,000,000,[3] and they will likely realize cash proceeds through the sale of the Property. Other interest holders in the Collingwood Property, including Defendant Raizada and his associates Derek M. Nelson and Joseph Michael Warner also stand to gain from the forthcoming sale of the Collingwood Property.

---

[2] *See* the agency listing at https://www.thealtmanbrothers.com/listing/1305-collingwood-pl-los-angeles-ca-90069/ ("Positioned to capture one of the most impressive views in the Hollywood Hills, this sophisticated + elegant compound offers the pinnacle of luxury living. Spanning 11,800 sqft surrounded by explosive views spanning from Downtown L.A. to the Pacific Ocean, the estate boasts 6 bdrms, 8 bthrms & every world class amenity desirable. Upon entry, the automatic retractable wall of glass seamlessly opens vertically creating quintessential indoor/outdoor living. Walls of glass vanish offering a perfect flow out onto the expansive deck with an infinity edge pool, spa, BBQ, & fire feature. On the second level, the master retreat displays unobstructed views, a balcony, luxurious bthrm w/a soaking tub & dual walk-in closets. The lower level features a fully appointed spa w/ a sauna surrounded by salt walls, media room, bar, wine cellar & state-of-the-art fitness center. Completely controlled by Savant Technology, the living experience is second to none. 20ft, 3car garage can accommodate 6 w/lift.") last visited March 10, 2021.
[3] See ¶ 34 of the Prometheus-Sclavos Foreclosure Complaint.

11.     Because the Collingwood Property is currently for sale and has been on the market only 107 days, *see* https://www.zillow.com/homedetails/1305-Collingwood-Pl-Los-Angeles-CA-90069/20799161_zpid/ (last visited March 10, 2021), it is only a matter of time before Defendants and others realize the proceeds from the sale of the Property, including the fruits of the VVP Fraudulent Enterprise and VVP Conspiracy – THE FRAUDULENT ENTERPRISE PROCEEDS.

## III.    ARGUMENT

## IV.    PLAINTIFF IS ENTITLED TO THE RELEIF REQUESTED HERIEN RESTRAINING AND ENJOINING DEFENDANTS' CONDUCT

12.     Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." This is such a case. It is well-established that courts have the inherent authority to grant temporary restraining orders "'to preserve the status quo pending a final determination of the rights of the parties,' in order 'to preserve the power to render a meaningful decision on the merits.'" *Resolution Tr. Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992) (quoting *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Tri-State Generation & Transmission Ass'n, Inc*. v. *Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)).

13.     Injunctive relief is appropriate where the party seeking the injunction shows: (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015); *Salinger v.*

7

*Colting*, 607 F.3d 68 (2d Cir. 2010). The temporary restraining order standard is the same. *See, e.g., Local 1814 v. New York Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Echo Design Grp. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

14.     **Plaintiff Ms. Suber Has Shown a Strong Likelihood of Success on the Merits; Plaintiff Ms. Suber is Likely to Prevail on Plaintiff Ms. Suber's Claims; and, Thus, Plaintiff Ms. Suber Ultimately will be Entitled to Equitable Relief in Various Forms**. To establish a likelihood of success on the merits, a plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent'." *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Ms. Suber has shown a strong likelihood of succeeding on the merits of her claims, or at the very least, she has raised sufficiently serious questions on the merits of her claims and causes of action as set forth in the SAC. As demonstrated throughout the SAC, with its significant sourcing, exhibits, and factual development based largely on public records and reputable news sources, Ms. Suber will be entitled to both equitable and legal remedies. For example, Ms. Suber has shown a strong likelihood that, among other remedies, she will be entitled to an equitable accounting of the VVP Fraudulent Enterprise so that the Court is able to determine the equity compensation to which she is entitled. As examples of Plaintiff Ms. Suber's likelihood of success on the merits and the likelihood that she will, in fact, prevail of her claims, and therefore be entitled to relief, Plaintiff respectfully asks the Court to consider the following:

a.      **The Sclavos Concealed Loan.** The Sclavos Concealed Loan is but one aspect of the VVP Fraudulent Enterprise and the VVP Conspiracy. Plaintiff Ms. Suber will be able to easily show, beyond any doubt, that Defendants Raizada and Sclavos concealed the $2,000,000 loan to Sclavos by effectively forcing then-Chief Operating Officer Christopher Nordling to accept a loan

from HD Films, LLC, that Nordling knew he would have to substantially contemporaneous therewith turn around and send the funds to Sclavos, who was, at the time, desperate for cash. All the evidence necessary is readily available to illustrate the Loan and, thus, the VVP Fraudulent Enterprise and the VVP Conspiracy: (i) bank accounts of Sclavos and Prometheus Ventures from and after November 1, 2017; (ii) bank accounts of Christopher Nordling from and after November 1, 2017; and (iii) an affidavit of Christopher Nordling providing the details surrounding his "passing through" the concealed loan from his bank account to Sclavos's bank account.

b.      **The Material Misrepresentation of Then-Current and Existing Material Facts about Defendant Sclavos's Net Worth.**  Myriad misrepresentations and concealments of current and existing material facts by Defendants are discussed throughout the SAC, and one such material misrepresentation and concealment is the net worth of Defendant Sclavos. Defendant Sclavos, in concert and coordination with the other Defendants and other of their respective associates, misrepresented that he had a net worth of several billion dollars. This material misrepresentation and concealment, among other material misrepresentations and concealments, was part of the VVP Fraudulent Enterprise and VVP Conspiracy, and this material misrepresentation caused damage, harm, and injury to Plaintiff Ms. Suber and others.  Yet, Plaintiff Ms. Suber will be able to easily show that Sclavos's net worth was nowhere near a billion dollars and was, in fact, closer to $0, if not negative. All the evidence necessary is readily available to illustrate Sclavos's illiquidity and/or insolvency and, thus the VVP Fraudulent Enterprise and the VVP Conspiracy: (i) the financial records of Sclavos and (ii) affidavits of selected vendors, including, e.g., Tishman Speyer, who were also intentionally and falsely led to believe that Sclavos had a net worth of several billion dollars.

      c.      Plaintiff is positioned to provide additional examples of the ample evidence in support of the claims set forth in the SAC that is readily available.

15.      **Plaintiff has Shown the Likelihood of Irreparable Harm Absent Injunctive Relief**. To demonstrate irreparable harm, a plaintiff must show an injury that is "actual and imminent" and "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation and internal quotation marks omitted). An award of money damages is inadequate "where a non-movant's assets may be dissipated before final relief can be granted, …, such that an award of monetary relief would be meaningless[.]" *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990) (citation omitted). Defendant Sclavos has whittled away his purported fortune over the last several years on an excessive lifestyle, including fueling the Sclavos Drug Problem. Unless Defendant Sclavos, through himself and Prometheus Ventures and with the assistance of other Defendants, is restrained from dissipating his assets, including the Collingwood Property, there will be no common resource left to satisfy the equitable or other remedies to which Ms. Suber will ultimately be entitled in this multi-Defendant case filed five months ago – before Defendants listed The Collingwood Property for sale. Significantly, Plaintiff Ms. Suber is informed that the wrongful foreclosure suit that was ultimately settled by Defendant Sclavos and the defendants in that suit was actually a process put in place by Defendant Raizada and other associates of Raizada, including two named defendants in the wrongful foreclosure suit, Derek M. Nelson and Joseph Michael Warner.

16.      **The Balance of Hardships Tip Decidedly in Favor of Plaintiff Ms. Suber, and the Public Interest Favors Entry of a TRO and Preliminary Injunction**. Neither Defendant Sclavos nor any of the other Defendants will suffer any conceivable hardship if the Court freezes

the disposition of the Collingwood Property (or any other assets of Defendants Sclavos and

Prometheus Ventures), especially if they have been truthful in various representations about their

assets and liquidity in various interactions and proceedings around the country lately. Neither

Defendant Sclavos nor any of the other Defendants have any right to use the profits of a fraudulent

enterprise – THE FRAUDULENT ENTERPRISE PROCEEDS – to continue supporting their

unlawful activities or for personal uses.

17.     **The public interest favors granting Plaintiff Ms. Suber the equitable relief**

**requested herein**.  Defendants are engaged in fraudulent activities and have defrauded employees

and investors in violation of the laws of the State of New York and the State of California.  The

public has an interest in knowing about and arresting the fraudulent conduct of Defendants so that

other prospective employees and/or investors and/or other potential victims of the VVP Fraudulent

Enterprise and VVP Conspiracy are not defrauded.

18.     Public policy strongly supports the issuance of a temporary restraining order,

injunction, and asset freeze where, as is the case here, significant fraudulent activity has been

unmasked. There is no conceivable social utility in allowing Defendants to continue the facilitation

of widespread illegality, including the VVP Fraudulent Enterprise and the VVP Conspiracy, or in

allowing Defendants Sclavos or any of the other Defendants continue to benefit by using the

FRAUDULENT ENTERPRISE PROCEEDS.  To let them do so is the very definition of unjust

enrichment.

19.     **Bond to Secure the Injunction**.  Because of the active concealment of assets and

material facts by Defendants Sclavos and Prometheus Ventures and the robust nature of Plaintiff

Ms. Suber's evidence, Ms. Suber respectfully requests this Court require her to post a bond of no

more than five hundred dollars ($500.00). The posting of security upon issuance of a temporary

restraining order or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ.

P. 65(c).  *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) (approving the

District Court's setting of a bond amount at $0.00).

## V.   THE COURT HAS AUTHORITY TO ISSUE AN *EX PARTE* ASSET FREEZE ORDER

20.     Plaintiff Ms. Suber seeks, among others, the equitable remedies of both rescission

and an accounting of profits of the VVP Fraudulent Enterprise (*see* § XXI of the SAC).

Consequently, the Court has the equitable authority to issue a pre-judgment asset freeze injunction.

*Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 130 (2d Cir. 2014) (finding that in circumstances

where plaintiffs seek equitable remedies, the district court has the equitable authority to issue an

asset freeze injunction).  *See also Deckert v. Independence Corp.*, 311 U.S. 282, 290 (1940) ("It is

well settled that the granting of a temporary injunction, pending final hearing, is within the sound

discretion of the trial court; and that, upon appeal, an order granting such an injunction will not be

disturbed unless contrary to some rule of equity, or the result of improvident exercise of judicial

discretion."); *Prendergast v. New York Telephone Co.*, 262 U.S. 43, 50-51; *Meccano, Ltd. v.

Wanamaker*, 253 U.S. 136, 141 ("As already stated, there were allegations that Independence was

insolvent and its assets in danger of dissipation or depletion. This being so, the legal remedy against

Independence, without recourse to the fund in the hands of Pennsylvania, would be inadequate.").

21.     It is well settled that a "preliminary injunction may issue to preserve assets as

security for a potential monetary judgment where the evidence shows that a party intends to

frustrate any judgment on the merits by making it uncollectible." *Pashaian v. Eccelston Properties*,

88 F.3d 77, at 86-87 (citations omitted); *see also Republic of Philippines v. Marcos*, 806 F.2d 344,

356 (2d Cir. 1986) (preventing transfer or encumbrance of properties that would place them

beyond reach or prevent their reconveyance); *In re Feit & Drexler, Inc*., 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring [their] assets") (quotations and citations omitted); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va*., 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001), quoted *supra* ("Preliminary injunctions" are "appropriate to thwart a defendant from making a judgment uncollectible.").

22.     The Court has ample authority to grant such relief under the Federal Rules of Civil Procedure. The Court may freeze Defendants' assets for a potential judgment through a Rule 65 preliminary injunction. *See, e.g*., *Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077, at *4 (S.D.N.Y. May 7, 1997) ("[T]he United States Supreme Court and the Second Circuit have made Rule 65 available to secure assets for the ultimate judgment.").

23.     Courts have identified three prerequisites to the granting of a preliminary injunction freezing a defendant's assets: "(1) that the defendant may be unable to satisfy a final monetary judgment; (2) that the final relief requested is equitable in nature; (3) that the frozen assets are related to the subject matter of the action." Mason Tenders, 1997 WL 223077, at *8. Each of these threshold requirements is readily satisfied here: (1) There is a high probability that Defendants Sclavos and Prometheus Ventures will be unable to satisfy a final judgment in this case given the Sclavos Drug Problem (*see* ¶ 117 of the SAC) and given the excessive lifestyle led by Defendant Sclavos, which Sclavos financed, and continues to finance, with the Fraudulent Enterprise Proceeds; (2) As described in the SAC, Plaintiff Ms. Suber possesses equitable remedies enforceable against Defendants Sclavos and Prometheus Ventures, and, hence, possess equitable interests in the Collingwood Property (and the proceeds arising therefrom); and (3) The assets

sought to be frozen, the Collingwood Property and other liquid assets of Defendants Sclavos and Prometheus Ventures, were, and continue to be, financed through the Fraudulent Enterprise Proceeds.  Thus, there is an articulable nexus between the injunctive relief sought by Plaintiff Ms. Suber and the ultimate equitable remedies sought by Ms. Suber. *Gucci Am., Inc.*, 768 F.3d at 133. If a temporary restraining order and, then, a preliminary injunction, freezing Defendants Sclavos's and Prometheus Venture's assets are not granted by the Court, neither Defendant will have any resources with which to satisfy the final judgment against them; if the TRO and preliminary injunction are not granted, Defendants Sclavos and Prometheus Venture will go through their remaining assets, that will ultimately include the proceeds from the sale of the Collingwood Property, as fast as Imelda Marcos ran through shoes.

## VI.   PLAINTIFF IS ENTITLED TO SELECTED EXPEDITED DISCOVERY

District Courts have broad power to require early document production and to permit expedited discovery. Fed. R. Civ. P. Rule 26(d) provides that a party to a civil action may seek discovery before the parties have conferred as required by Rule 26(f) when authorized by court order. Applications for expedited discovery should be considered and reviewed under the flexible standard of reasonableness and good cause, along with particularly careful scrutiny since Plaintiff is moving for expedited discovery on an *ex parte* basis. *Strike 3 Holdings v. Doe*, 20-cv-6596 (AJN), at *3 (S.D.N.Y. Dec. 15, 2020) ("When considering whether to grant a motion for expedited discovery prior to a Rule 26(f) conference, courts apply a 'flexible standard of reasonableness and good cause.' *Digital Sin*, 279 F.R.D. at 241 (quoting *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)"); *see also Stern v. Cosby*, 246 F.R.D. 453,457 (S.D.N.Y. 2007); *accord* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 2046.l (3d ed. 2011)"). *See also Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-327 (S.D.N.Y. 2005).

Plaintiff has made a strong evidentiary showing of the substantiality of her claims. In the context of that showing, and in consideration of the fact that Defendants Sclavos and Prometheus Ventures are foreign persons, domiciled outside of the State of New York and outside of this District, who have both incentive and capacity to hide their assets, there is considerable urgency to Plaintiff Ms. Suber's need to seek information about Defendants Sclavos and Prometheus Ventures and their assets. *Cf. In re Ishihara Chem. Co.*, 121 F. Supp. 2d 209, 225 (E.D.N.Y. 2000) (*ex parte*-application-for-discovery case noting that "the U.S. system of broad discovery is fundamentally different from that of most foreign countries [in that] most other countries fiercely limit the scope of discovery").

## VII.    CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion and rule in the form of the Proposed Order attached to Plaintiff Ms. Suber's Emergency *Ex Parte* Application and Motion for Temporary Restraining Order, Asset Restraining Order, Selected Expedited Discovery, and Order to Show Cause for Preliminary Injunction.

Respectfully submitted,

**THE AMOS JONES LAW FIRM**

/s/*Amos N. Jones*

_____
**Amos N. Jones,** Esquire
*pro hac vice*
D.C. Bar No. 974919
E-mail: jones@amosjoneslawfirm.com

15

/s/*Su Mi Park*

_____

**Su Mi Park**, Esquire
*pro hac vice*
D.C. Bar No. 155118
E-mail: park@amosjoneslawfirm.com

AMOS JONES LAW FIRM
1150 K ST NW
Washington, D.C. 20005-6809
Tel.: (202) 351-6187
Fax: (202) 478-1654

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KAREN M. SUBER, | § | |
| | § | |
| **PLAINTIFF,** | § | |
| v. | § | |
| | § | |
| VVP SERVICES, LLC, | § | Case No. 1:20-cv-8177 – AJN (Netburn) |
| VISION VENTURE PARTNERS, LLC, | § | |
| ELEVEN STONES, LP, | § | |
| AMIT RAIZADA, | § | |
| PROMETHEUS VENTURES, LLC, AND | § | |
| STRATTON SCLAVOS, | § | |
| | § | |
| **DEFENDANTS.** | § | |
| | § | |
| | § | |

**PLAINTIFF'S EMERGENCY _EX PARTE_ APPLICATION AND MOTION FOR
TEMPORARY RESTRAINING ORDER,
ASSET RESTRAINING ORDER,
SELECTED EXPEDITED DISCOVERY, AND
ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

Plaintiff Karen M. Suber, through her undersigned attorneys, on an _ex parte_ basis, does respectfully apply to this Court, based upon the accompanying Memorandum of Law in support hereof and the pleadings set forth in the other filings made by Plaintiff Ms. Suber in this proceeding through the date hereof, for entry of (1) a temporary restraining order, (2) asset restraining order, (3) order authorizing expedited discovery, and (4) order to show cause for a preliminary injunction pursuant to Rule 65 of the Fed. R. Civ. P. for the reasons set forth below:

1. Defendants, acting individually and in concert, have been, and are continuing to be, actively engaged in the concealment of assets and of material facts relating to the claims set

forth in the Second Amended Complaint, which was filed on Wednesday, March 10, 2021 [**D.E. 91**] ("**SAC**").

2.      The SAC and the pleadings set forth in the other filings made by Plaintiff through the date hereof demonstrate the likelihood of Plaintiff Ms. Suber's success on the merits of her claims against Defendants and set forth Plaintiff Ms. Suber's clearly ascertainable rights to equitable relief.

3.      Plaintiff Ms. Suber has no adequate remedy at law for the compounding damages, harm, and injuries Plaintiff Ms. Suber has sustained and will continue to sustain unless Defendants' conduct is restrained and unless the Court grants the other equitable relief requested herein, and, absent the equitable relief requested herein, Plaintiff Ms. Suber will suffer irreparable damage, harm and injury.

4.      The balance of hardships as between Plaintiff Ms. Suber, on the one hand, and Defendants, on the other hand, tilts decidedly in favor of Plaintiff Ms. Suber.

5.      The public interest favors granting Plaintiff Ms. Suber the equitable relief requested herein.

6.      Pursuant to Fed. R. Civ. P. Rule 65(b)(1)(A), attached as Exhibit A to the Memorandum of Law in Support of this Application and Motion is the affidavit of Plaintiff Ms. Suber ("**Ms. Suber's Affidavit**").

7.      Pursuant to Fed. R. Civ. P. Rule 65(b)(1)(B), the undersigned counsel hereby certify:

      a.   No efforts have been made to give notice of this Application and Motion to Defendants; and

b. Notice to the Defendants should not be required, because as stated in Ms. Suber's Affidavit, there are more than sufficient reasons to believe that if Defendants are provided with notice of this Application and Motion, Defendants will endeavor to further hide any assets in which Defendants, particularly Defendants Sclavos and Prometheus Ventures, have, direct or indirect, interests or other rights or claims.  *See* ¶ 9 of Plaintiff Ms. Suber's Affidavit.

**WHEREFORE**, Plaintiff prays for entry, without bond, of the [Proposed] Temporary Restraining Order, Asset Restraining Order, Selected Expedited Discovery, and Order to Show Cause attached hereto as **<u>Exhibit 1</u>**, pending hearing on Plaintiff's Emergency *Ex Parte* Application and Motion for Temporary Restraining Order, Asset Restraining Order, Selected Expedited Discovery, and Order to Show Cause for Preliminary Injunction.

Respectfully submitted,

/s/ Amos N. Jones

_____

Amos N. Jones, Esquire
*pro hac vice*
D.C. Bar No. 974919
E-mail: jones@amosjoneslawfirm.com

/s/Su Mi Park

_____

Su Mi Park, Esquire
*pro hac vice*
D.C. Bar No. 155118
E-mail: park@amosjoneslawfirm.com

AMOS JONES LAW FIRM
1150 K ST NW
Washington, D.C. 20005-6809

Tel.: (202) 351-6187
Fax: (202) 478-1654

*Attorneys for Plaintiff Karen M. Suber*

Dated: March 10, 2021

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KAREN M. SUBER,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| v. | § | Case No. 1:20-cv-8177 – AJN (Netburn) |
| | § | |
| **VVP SERVICES, LLC,** | § | |
| **VISION VENTURE PARTNERS, LLC,** | § | **[PROPOSED] EMERGENCY _EX PARTE_** |
| **ELEVEN STONES, LP,** | § | **TEMPORARY RESTRAINING ORDER,** |
| **AMIT RAIZADA,** | § | **ASSET RESTRAINING ORDER,** |
| **PROMETHEUS VENTURES, LLC, AND** | § | **SELECTED EXPEDITED DISCOVERY** |
| **STRATTON SCLAVOS,** | § | **ORDER AND ORDER TO SHOW** |
| | § | **CAUSE FOR PRELIMINARY** |
| **DEFENDANTS.** | § | **INJUNCTION** |
| | § | |
| | § | |
| | § | |

**UPON CONSIDERATION OF**:

(I)   Plaintiff Ms. Suber's _ex parte_ Motion for a temporary restraining order, asset restraining order, order authorizing expedited discovery, and order to show cause for a preliminary injunction pursuant to Rule 65 of the Fed. R. Civ. P. ("**Plaintiff's Ex Parte Motion for TRO**"), no notice having been given, for the reason that Defendants, acting individually and in concert, have been, and are continuing to be, actively engaged in the concealment of assets and of material facts relating to the claims set forth in the Second Amended Complaint, which was filed on Wednesday, March 10, 2021 [**D.E. 92**] ("**SAC**");

(II)   Plaintiff's memorandum of law in support of Plaintiff's Ex Parte Motion for TRO; and

(III)   the other relevant filings on the ECF Docket,

**THE COURT FINDS**:

A.   Plaintiff Ms. Suber is likely to succeed in on the merits of the causes of action pleaded in the SAC.

B.   Defendants, or other persons acting in concert with Defendants, would likely move, hide, or otherwise make assets and business records inaccessible to the Court if Plaintiff proceeded on notice to Defendants, thus frustrating the ultimate relief that Plaintiff seeks in this action.

C.   Plaintiff Ms. Suber has no adequate remedy at law for the damages, harm, and injuries Plaintiff Ms. Suber has sustained and will continue to sustain unless Defendants' conduct is restrained and unless the Court grants the other equitable relief requested herein, and, absent the equitable relief requested herein, Plaintiff Ms. Suber will suffer irreparable harm.

D.   The balance of hardships as between Plaintiff Ms. Suber, on the one hand, and Defendants, on the other hand, tilts decidedly in favor of Ms. Suber.

E.   Entry of an order other than an *ex parte* order would not adequately preserve the equitable remedies available to Plaintiff, including, *inter alia*, rescission, an accounting of profits and specific performance.

F.   The public interest favors granting Plaintiff Ms. Suber the equitable relief requested herein.


**THEREFORE, IT IS HEREBY ORDERED**, that Defendants appear to show cause on _____, 2021 at _____ a.m. / p.m. prevailing eastern time, as further directed by the Court at its discretion or as contemplated by the Local Rules of United States District Courts for the Southern and Eastern Districts of New York and/or the Individual Practices in Civil Cases of the Honorable Alison J. Nathan, including the Emergency Individual Rules and Practices in

Light of Covid-19 of the Honorable Alison J. Nathan, why an Order pursuant to Rule 65 of the

Fed. R. Civ. P. should not be entered granting a preliminary injunction as set forth below.

## SUBJECT SCLAVOS ASSETS AND FROZEN ASSETS ESCROW ACCOUNT

1.  *Restraining and enjoining* Defendants Sclavos or Prometheus Ventures *and all other*
    *Defendants, and their respective officers, directors, agents, representatives, successors or*
    *assigns, and/or heirs, and all persons acting in concert or in participation with any of them,*
    *from*:

    i.  Transferring, disposing of, concealing or secreting any money, stock, bonds, real
        property,  personal property, or other assets (of any kind or nature whatsoever) of
        Defendants Sclavos or Prometheus Ventures (or the proceeds from any of the
        foregoing), whether, directly or indirectly, held by or held for the benefit, or on
        behalf, of or in trust for any of Defendants Sclavos or Prometheus Ventures  (all of
        the foregoing, the "**Subject Sclavos Assets**") into or out of any accounts or
        arrangements associated with or utilized by, directly or indirectly, any of Defendants
        Sclavos or Prometheus Ventures or any other Defendants, except as expressly set
        forth further herein; and

    ii. Assisting, aiding, or abetting any person or business entity in engaging in or
        performing any of the activities referred to in the above subparagraph (i), or effecting
        any assignments, transfers or other dispositions, forming new entities, trusts, or
        associations, or utilizing any other device for the purpose of circumventing or
        otherwise avoiding the prohibitions set forth in subparagraph (i).

iii.    For the avoidance of doubt, the term "**real property**" as used in this Order shall

include the land, all of the buildings thereon, other improvements thereto and all of

the rights and interests (of any kind or nature whatsoever) accruing thereto or held

therein, all of which, together, are commonly known as 1305 Collingwood Place,

Los Angeles, California, 90069, with Assessor's Parcel No. 5560-003-003, and with

the land described as follows:


**LOT 56 OF TRACT NO, 17290, IN THE CITY OF LOS ANGELES, COUNTY**

**OF LOS ANGELES, ST A TE OF CALIFORNIA, AS PER MAP RECORDED**

**IN BOOK 440, 'PAGES 27 TO 30 INCLUSIVE OF MAPS, IN THE OFFICE**

**OF THE COUNTY RECORDER OF SAID COUNTY.**


The real property so described in this paragraph 1.iii. hereinafter referred to as the

"**Collingwood Property**."

2.    IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER

ORDERED that, within forty-eight (48) hours, Defendant Sclavos, at his sole cost and

expense, shall be required to establish an escrow account (a) situated with, and held

within, the private bank of Citibank, N.A. located in Los Angeles, California, and (b)

subject to an escrow agreement in a form acceptable to (i) the Court, and (ii) Plaintiff

Ms. Suber, pending the final resolution of this proceeding and, in any case, until the

earlier of (A) a settlement agreement among, and duly executed and delivered by

Plaintiff Ms. Suber and all of Defendants, and (B) a final, non-appealable verdict of

all of the causes of action in this proceeding (the "**Frozen Assets Escrow Account**").

4

Any and all interest accruing to such Account shall be maintained in the Account and shall not be included with, or used in the determination of whether the Minimum Frozen Escrow Balance (as defined below) is contained in the Frozen Assets Escrow Account.

3. IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER ORDERED that, after the Full Accounting of the Sclavos Assets (as defined in ¶ 12 below) is presented to the Court and Plaintiff Ms. Suber in a form that is acceptable to the Court and Plaintiff Ms. Suber, Defendants Sclavos and Prometheus Ventures may proceed with the transfer, sale or other disposition of any of the Subject Sclavos Assets, including the Collingwood Property; provided, however, that any and all proceeds arising from or relating to any such transfers, sales or other dispositions shall be placed in the Frozen Assets Escrow Account until the balance contained in such Account is $6,000,000.00 (such amount, exclusive of any interest accrued thereupon, the "**Minimum Frozen Escrow Balance**").

4. IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER ORDERED, FOR THE ADVOIDANCE OF DOUBT, THAT, SUBJECT TO ¶ 31.3 HEREOF, UPON ANY SALE OR OTHER DISPOSITION OF ANY INTEREST IN OR OF THE COLLINGWOOD PROPERTY, OR UPON THE RECEIPT OF ANY INSURANCE OR OTHER PROCEEDS IN RESPECT OF THE COLLINGWOOD PROPERTY, OR INTEREST THEREIN, THAT DEFENDANTS SCLAVOS AND PROMETHEUS VENTURES SHALL BE REQUIRED TO PLACE, OR CAUSED TO BE PLACED, ANY SUCH PROCEEDS IN THE FROZEN ASSETS ESCROW ACCOUNT UNTIL THE ACCOUNT CONTAINS THE MINIMUM FROZEN

ESCROW BALANCE, AND, PROVIDED, FURTHER, THAT THE ALTMAN BROTHERS SHALL BE REQUIRED TO ENSURE THAT SUCH PROCEEDS ARE DISTRIBUTED AND TRANSFERRED INTO THE FROZEN ASSETS ESCROW ACCOUNT IN FURTHERANCE OF THE FOREGOING AND PRIOR TO THE DISTRIBUTION OF ANY OTHER PROCEEDS TO ANY OTHER PERSON, OTHER THAN THOSE DISTRIBUTIONS THAT ARE, IN THE OPINION OF COMPETENT LEGAL COUNSEL, REQUIRED BY APPLICABLE LAW TO BE MADE TO ANY GOVERNMENTAL AUTHORITIES.

5.  IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER ORDERED that, within two (2) hours after entry into any agreement or other arrangement (whether written, oral or otherwise) relating to or in respect of the Collingwood Property (or the ownership, equity or security interests held therein), which agreement or other arrangement affects or could reasonably be expected to affect the disposition (including, without limitation, through sale or otherwise), or value, of the Collingwood Property, each of Defendants Sclavos and Prometheus Ventures, the other Defendants and The Altman Brothers of Los Angeles, California (or any partners, agents, affiliates or representatives thereof (including without limitation DouglasElliman), and, including, without limitation, in each case, any successors thereto) in respect of the Collingwood Property (collectively, the "**Altman Brothers**") shall provide, or caused to be provided, written notice of such agreement or other arrangement to Plaintiff's counsel [Plaintiffs' counsel], and such written notice shall include a copy of any such agreement or arrangement, or if the agreement

6

or arrangement is oral, then a written summary of any such oral agreement or arrangement.

6. IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER ORDERED that the Altman Brothers, or any successors thereto, shall be required to cooperate with Plaintiff Ms. Suber in carrying out the intent of this Order.

7. IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER ORDERED that in accordance with Rule 65 of the Fed. R. Civ. P. and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, Defendants Sclavos or Prometheus Ventures and their officers, directors, agents, representatives, successors or assigns and heirs, and all persons acting in concert or in participation with any of them, and any banks, savings and loan associations, credit card companies, credit card processing agencies, merchant acquiring banks, financial institutions, or other companies or agencies that engage in the processing or transfer of money and/or real or personal property, who receive actual notice of this Order by personal service or otherwise, are, without prior approval of the Court, temporarily restrained and enjoined from transferring, disposing of, concealing or secreting any Subject Sclavos Assets, or otherwise paying or transferring any of the Subject Sclavos Assets into or out of any accounts or arrangements associated with or utilized by, directly or indirectly, any of Defendants Sclavos or Prometheus Ventures or any other Defendants, except as expressly set forth further herein.

8. IN FURTHERANCE OF THE FOREGOING RESTRAINTS, IT IS FURTHER ORDERED that the Court grants Plaintiff Ms. Suber the right to make any filings with

any government authority or agency as may be advisable or necessary in accordance with applicable law, including without limitation, notice(s) of pendency of action (lis pendens) in furtherance of the intent of this Order.

9.  IT IS FURTHER ORDERED that upon two (2) days written notice to the Court and Plaintiff's counsel, any of Defendants Sclavos or Prometheus Ventures or restrained third party may appear and move for the dissolution or modification of the provisions of this Order concerning the restriction upon the transfer of Defendants Sclavos's or Prometheus Ventures' assets upon an appropriate evidentiary showing by Defendants Sclavos or Prometheus Ventures.

10. IT IS FURTHER ORDERED that Plaintiff shall post a corporate surety bond, cash or a certified or attorney's check in the amount of five hundred dollars ($500.00) as security, determined adequate for the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint hereunder.

11. IT IS FURTHER ORDERED that Defendants Sclavos's or Prometheus Ventures' answering papers, if any, shall be filed with the Court and served upon the attorneys for Plaintiff by **MARCH      , 2021**.

**EXPEDITED DISCOVERY**

12. IT IS FURTHER ORDERED that Plaintiff's motion for expedited discovery in respect of all Defendants is GRANTED; that Plaintiff shall serve with this Order requests for disclosures pursuant to Fed. R. Civ. P. 26 and 34, and that Defendants shall produce documents responsive to such requests on or before **MARCH     , 2021**, in respect of requests to be made within the categories set forth below:

i.  Any and all financial and accounting records of Defendants Stratton Sclavos and Prometheus Ventures, LLC, and any trusts in which either or both of these Defendants holds an interest or of which either or both of these Defendants is or may become a beneficiary.

ii.  Defendants Stratton Sclavos and Prometheus Ventures, LLC shall be required to provide a full accounting of the Subject Sclavos Assets (a) as of August 15, 2017,[1] and (b) as of the date of this Order (the "**Full Accounting of the Sclavos Assets**"), and to the extent that there is a difference between the Full Accounting of the Sclavos Assets as of August 15, 2017[2] and as of the date of this Order, Defendants Stratton Sclavos and Prometheus Ventures, LLC, shall be required to explain the difference, including nature, type and kind of any and all sales, transfers or other dispositions of any Subject Sclavos Assets, any and all proceeds generated therefrom and how any such proceeds were used, transferred or otherwise disposed;

iii.  Any and all agreements, instruments and/or other documents relating to the Collingwood Property, including, without limitation, those agreements, instruments and/or other documents, that:

(x) relate to the ownership of the Collingwood Property, including, for the avoidance of doubt and without limitation, the land, all of the buildings thereon, other improvements thereto and all of the rights and interests (of any

---

[1] August 15, 2017 is the day on which Ms. Suber began working for Defendant VVP Services.
[2] August 15, 2017 is the day on which Ms. Suber began working for Defendant VVP Services.

kind or nature whatsoever) accruing to or held in or with respect to the Collingwood Property; or

(y) affect or could reasonably be expected to affect the disposition (including, without limitation, through sale or otherwise), or value, of the Collingwood Property, including, for the avoidance of doubt and without limitation, the land, all of the buildings thereon, other improvements thereto and all of the rights and interests (of any kind or nature whatsoever) accruing to or held in or with respect to the Collingwood Property;

iv. An accounting of ALL persons (including both natural and other persons) holding any interest or right, whether direct or indirect, in or to the Collingwood Property, including the extent and value of such interest, and including the name and the current physical address, telephone number and email address for ALL such persons and, if different, a physical address and email address at which each such person can be served with documents in this proceeding;

v. Any and all agreements with the Altman Brothers;

vi. Any and all settlement agreements or other arrangements in respect of the claims, causes of action and other matters arising from or relating to the proceeding known as *Prometheus Ventures, LLC and Sclavos v. CNB Default Loan Acquisitions, LP*, *et al*, Case No. 208CV01332 (Superior Court, Los Angeles County, West District) (Sept. 18, 2020);

vii. All agreements and other documents, including all relevant business records, which illustrate the interest held by Defendants Sclavos and Prometheus Ventures in the Collingwood Property, including the portion of the proceeds arising from

such sale or other disposition, to which Defendants Sclavos and Prometheus

Ventures are, will or may be entitled; and

viii.   All records (including, without limitation, all bank account statements and all

issued and/or cleared checks) for all bank accounts of, or held by or for the benefit

for, (x) Christopher Nordling, the former Chief Operating Officer of Defendants

Vision Venture Partners, LLC and VVP Services, LLC, and (y) HD Films, LLC,

in each case from and after November 1, 2017 (including all bank account records

prior to the merger of HD Films, LLC with an into Twin Galaxies, LLC[3]).[4]

13. IT IS FURTHER ORDERED that all records for all bank accounts referenced in this

Order shall be accompanied by declaration of the custodian of such records, or such

other person authorized to make such a declaration, in each case pursuant to 28 U.S.

§ 1746, and such declaration shall contain the following language in respect of all

records:

i.   "The attached copies of the records/documents are true and accurate copies of the

original records/documents that were made and kept in the regular course of [*insert

the name of the organization furnishing the records/documents*];

---

[3] HD Films, LLC d/b/a Vision Entertainment, a Florida limited liability company, on or about
August 3, 2018, was merged with and into Twin Galaxies, LLC with Twin Galaxies as the entity
surviving the merger.  See Articles of Merger for Florida Limited Liability Company available at
http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2
018%5C0808%5C00225969.Tif&documentNumber=L16000151560  (last  visited  August  20,
2020).

[4] November 1, 2017, is believed to be one day prior to the Sclavos Concealed Loan as discussed
in ¶¶ 58 (including Footnote 37 thereto) 90, 127, 153, 172 of, and Exhibit 26 to, the FAC and ¶¶
61 (including Footnote 39 thereto), 99, 136, 162, 181 of, and Exhibit 26 to, the SAC.

ii.     the attached copies of the records/documents were made at or near the time that the information contained therein was recorded or otherwise documented;

iii.    it was the regular practice of [*insert the name of the organization furnishing the records/documents*] to record the information set forth in the attached records/documents;

iv.    the declarant is familiar with the records and the circumstances under which they were made and are maintained; and

v.     [*insert the name of the organization furnishing the records/documents*] is not a party to the action in connection with which these records/documents were required and will be used."

14. IT IS FURTHER ORDERED that Defendants are hereby given notice that failure to attend the hearing scheduled therein may result in confirmation of the relief provided herein, immediate issuance of the requested preliminary injunction to take effect immediately upon expiration or dissolution of the temporary order, and may otherwise extend for the pendency of this action upon the same terms and conditions as comprise this Order. Defendants are hereby given further notice that they may be deemed to have actual notice of the issuance and terms of such preliminary injunction and any act by them or anyone of them in violation of any of the terms thereof may be considered and prosecuted as contempt of this Court.

15. IT IS FURTHER ORDERED that service of this Order and all related documents (including subpoenas) may be effected through electronic mail, U.S.P.S. mail, express courier services such as FedEx and U.P.S. and any means allowed or allowable by the Federal Rules of Civil Procedure.

16. IT IS FURTHER ORDERED that, unless otherwise provided herein, the Temporary Restraining Order shall remain in effect through the end of the day (11:59 p.m. prevailing eastern time) on the date for hearing on the Order to Show Case for Preliminary Injunction set forth above, or such other and further date(s) as set by the Court

**SO ORDERED**.

_____
**THE HONORABLE ALISON J. NATHAN**

**New York, New York**        **United States District Court Judge**

**Date Issued:**        **_____, 2021**

**Time Issued:**        **_____ a.m. / p.m. prevailing eastern time**

13

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KAREN M. SUBER**, | § | |
| | § | |
| **PLAINTIFF,** | § | |
| v. | § | Case No. 1:20-cv-8177 – AJN (Netburn) |
| | § | |
| **VVP SERVICES, LLC,** | § | |
| **VISION VENTURE PARTNERS, LLC,** | § | **DECLARATION OF** |
| **ELEVEN STONES, LP,** | § | **KAREN M. SUBER** |
| **AMIT RAIZADA,** | § | |
| **PROMETHEUS VENTURES, LLC, AND** | § | **FILED UNDER SEAL** |
| **STRATTON SCLAVOS,** | § | |
| | § | |
| **DEFENDANTS.** | § | |
| | § | |
| | § | |

I, Karen M. Suber, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.

1.      I reviewed, and I am aware of the contents set forth in the "**Second Amended Complaint**," which was filed on Wednesday, March 10 [D.E. 92].

2.      As stated in the Second Amended Complaint, the allegations I have made against Defendants are based upon my personal knowledge as to my own acts and observations and upon information and belief as to all other matters alleged therein.

3.      In furtherance of my *Ex Parte* Application and Motion for Temporary Restraining Order, Asset Restraining Order, Selected Expedited Discovery and Order to Share Cause for Preliminary Injunction (the "**TRO Application**"), I respectfully set forth the following specific facts that clearly show that I am currently suffering, and will continue to suffer, immediate and irreparable injury, loss, and damage as a result of Defendants' conduct, and that such current,

immediate irreparable injury, loss, and damage will continue to be exacerbated before any of the Defendants can be heard in opposition.

4.      As a result of Defendants' fraudulent conduct, which included intentional and material misrepresentations of then-current material facts and other forms of fraudulent inducement, in 2017, I moved clear across the country from New York City to Los Angeles. And in doing so, I incurred substantial financial and other costs, including significant disruption to my family's life, including the life of my then-nine-year-old daughter. If, among other then-current facts, I had known (a) that Defendant Sclavos was then-illiquid or insolvent, or (b) that Defendant Sclavos was already-then suffering from the Sclavos Drug Problem, as discussed in ¶ 95 of the Second Amended Complaint, I never would have accepted the position with Defendant VVP Services, LLC.  I also never would have accepted the role – clear across the country – without the commitment of equity compensation that Defendants expressly made.

5.      Because of Defendants' conduct, as set out in my Detailed Resignation Letter, which is Exhibit 24 to the Second Amended Complaint (and defined in ¶ 56 thereof), and based on my consultation with a law firm with a specialty practice area of legal ethics, which I engaged as my legal counsel, ___*I resigned from my role as Deputy General Counsel on January 22, 2018 at or about 9:30 a.m. Pacific Daylight Time, after less than six months of working with and for the Defendants*___.  At that time, in consultation with my legal counsel, I made the determination that I could no longer work for or with the Defendants and comply with my ethical obligations as an attorney under the New York Rules of Professional Conduct. On January 22, 2018, at or about 9:30 a.m. Pacific Daylight Time, a date and time I will remember for the rest of my life, I resigned without having another job. I remember, and will remember, that date and time, because I stood up to individuals – Defendants Raizada and Sclavos – whom I describe as "bullies" on the

"corporate playground," and I effectively said through the Detailed Resignation Letter, the equivalent of: "*No, I will not help or aid you in what you seek to do, which is to benefit yourselves to the detriment of others*."

6.      **TO BE CLEAR**:  I DID NOT GO TO HARVARD LAW SCHOOL, AND INVEST MY TIME, MONEY, AND EFFORTS INTO BECOMING A LAWYER, IN ORDER TO HELP INDIVIDUALS SUCH AS DEFENDANTS SCLAVOS AND RAIZADA – INDIVIDUALS WHO HAVE LIVED, AND WHO CONTINUE TO LIVE PRIVILEGED EXISTENCES – DO HARM TO OTHERS.  I DID NOT WORK FOR YEARS AT TWO MAJOR LAW FIRMS TO BUILD MY SKILL SET AS A LAWYER ONLY TO LET INDIVIDUALS SUCH AS DEFENDANTS SCLAVOS AND RAIZADA USE MY SKILLS IN FURTHERANCE OF THEIR OWN PECUNIARY GAINS, AGAIN, TO THE DETRIMENT AND HARM TO OTHERS.  I HAVE ALREADY PRESENTED TO THE COURT EVIDENCE ILLUSTRATING THE CONDUCT OF DEFENDANTS, AND I HAVE ADDITIONAL EVIDENCE THAT I CAN, AND I WILL, SUBMIT TO THE COURT AS THIS PROCEEDING CONTINUES THAT WILL PROVE BEYOND A DOUBT THAT DEFENDANTS ENGAGED IN FRAUDULENT CONDUCT THAT HAS DONE IRREPARABLE HARM, INJURY, AND DAMAGE TO ME AND OTHERS, AND THAT SUCH IRREPARABLE HARM, INJURY, AND DAMAGE IS CONTINUING.

7.      At the time of my resignation, I was in Los Angeles, forced to look for new employment without the benefit of being employed and without the benefit of having an incoming salary, which made, and has made, the task of finding new employment as an executive a Herculean task.  What added to the Herculean task was Defendant Sclavos's defamatory comments about me to third parties, including, for example, David Robbins, Esq., of Shamrock Holdings,

among others, which defamatory comments have gone unchecked and un-rescinded for almost two

years now, and the effects have lingered and are continuing, all damaging my reputation.

8.      And, for an extended period of time, I had to maintain two households and look for

a new position at the same time. In fact, I have had to significantly pivot in my career choices, and

in doing so, I have had to use my savings to build my future, which I would not have had to have

done if Defendants had not made intentional misrepresentations and concealments of then-current

and existing material facts. As of this date, notwithstanding extensive employment searches (which

I can, and will, demonstrate with objectively verifiable data) and the pivot in my career choices, I

have not yet found a full-time position as an executive. Given the financial and other resources,

including without limitation, the time I wasted working for Defendants, I have had to change

entirely the planning for my retirement and for my daughter's educational future.  I am almost 53

years old, and at this juncture, I believe my financial future is, or will be, permanently changed,

following a different trajectory than if I had not accepted employment as the Deputy General

Counsel of VVP Services, unless I am made whole for the damages, harm, and injury Defendants

have inflicted and are inflicting on me.

9.      I was told by Defendant Raizada, and Raizada promised, that I would receive a

grant of equity – specifically a "couple of points" of equity in Vision Venture Partners, VVP

Services, and their respective affiliates.  Defendant Raizada made this promise, on behalf of his

co-conspirator Sclavos, with Defendants Raizada and Sclavos being principals of Defendant

entities, for which the entities are vicariously liable, and as an overt act pursuant to and in

furtherance of the VVP Fraudulent Enterprise and the VVP Conspiracy. If Defendants are not

required to perform their promise, and if Defendants are not made to perform, and complete, an

accounting of the profits of the VVP Fraudulent Enterprise, I will continue to suffer irreparable damage, harm, and injury as a result of Defendants' fraudulent conduct.

10.     Having worked around them full time, I am **100% CERTAIN** that if Defendants are provided with notice of the TRO Application, Defendants will endeavor to further hide any assets that Defendants, particularly Defendants Sclavos and Prometheus Ventures, may have to satisfy their obligations to me and to others, including the Collingwood Property (as defined in the Proposed Emergency Ex Parte Temporary Restraining Order, Asset Restraining Order, Selected Expedited Discovery Order, and Order to Show Cause for Preliminary Injunction (the "**Proposed TRO**"), attached as Exhibit 1 to the TRO Application).

11.     Defendants practice obfuscation on a regular basis, and I have personally seen them do this. For example, even though Defendant Raizada continues to maintain that he does not control Defendant Eleven Stones, L.P., including in at least two legal proceedings going on across the United States, ***on multiple occasions*** throughout my tenure with VVP Services, I observed Defendant Raizada direct the business affairs of Eleven Stones, L.P., on a regular basis.

12.     In fact, I believe, based upon due diligence that I have done, that the Collingwood Property may be the last valuable asset in which Defendants Sclavos and Prometheus Ventures hold an interest that is available to satisfy the equitable and other relief that I have requested in the Second Amended Complaint.

13.     What is equally alarming is that even if the Collingwood Property is not the last valuable asset in which Defendants Sclavos and Prometheus Ventures hold an interest, Defendants Sclavos and Prometheus Ventures have been actively engaged in asset sales, including from Sclavos's extensive and valuable wine collection and at least one of Sclavos's Bentleys (specifically, a sport utility vehicle).  And, I believe that the proceeds from the asset sales will be

used to fuel the excessive "Hollywood," "Keeping-up-with-the-Kardashians" lifestyle that Defendant Sclavos has been living, which lifestyle is steeped in fantasy and well beyond his means. In fact, the stories of his purportedly "million dollar" Christmas parties were the stuff of legend in Los Angeles, with his assistant, Tanji, at one point suggesting that Sclavos's infinity pool at the Collingwood Property overlooking the Hollywood Hills and the L.A. skyline be frozen-over so that attendees at the 2017 Christmas party could ice skate.  The point here is that there is plenty of objectively verifiable evidence illustrating that Defendant Sclavos is to cash as an elephant is to peanuts.  If Sclavos is able to liquidate any assets, I fully believe that the proceeds will be used faster than anyone – EXCEPT THIS COURT – can say, "FREEZE."

14.    I respectfully request that the Court grant the TRO Application and, ultimately, the preliminary injunction ***preventing***, among other things stated in the Proposed TRO: (a) Defendants Sclavos and Prometheus Ventures or any other Defendant, acting individually, together with other Defendants or together with other third parties, and (b) other third parties holding interests in the Collingwood Property from selling or otherwise disposing of her, his or their interest(s) in the Collingwood Property (or the proceeds arising therefrom or relating thereto) in any manner other than as provided in the Proposed TRO until this proceeding has been finally and fully resolved, all as further specified in the Proposed TRO.


By:

_____
Karen M. Saber

Executed on:     March 10, 2021

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Suber,

                    Plaintiff,

          —v—                                              20-cv-8177 (AJN)

VVP Services, *et al*.,                                        ORDER

                    Defendants.

ALISON J. NATHAN, District Judge:

      The Court has received Plaintiff's *ex parte* application for a temporary restraining order,

asset restraining order, selected expedited discovery, and order to show cause for preliminary

injunction pursuant to Fed. R. Civ. P. 65(b). Such requests are only granted in extraordinary

circumstances where a party can meet the multiple "stringent" requirements for obtaining *ex*

*parte* injunctive relief. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-49

(1974). Under this standard, Plaintiff must show not just a "mere *possibility* of irreparable

harm," but that she "is '*likely* to suffer irreparable harm if equitable relief is denied.'" *AIM Int'l*

*Trading LLC v. Valcucine SpA*., 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002) (citing *JSG Trading*

*Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990)). The potential injury must be "actual

and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

Rule 65(b)(A) requires that "specific facts in an affidavit or a verified complaint clearly show

that immediate and irreparable injury, loss, or damage will result to the movant before the

adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

      No such showing has been made in this application. The primary bases for Plaintiffs'

request is that Defendant Sclavos has "whittled away his purported fortune over the last several

years on an excessive lifestyle," including an alleged drug problem, and that 107 days ago,

Defendants recently put an approximately $30 million property on the market.   *See* Pl. Br. for

Ex Parte TRO at 10.   These allegations do not establish "imminent" harm and do not meet the

"*extremely high*" bar for demonstrating the need for immediate, *ex parte* relief without giving

Defendants notice and opportunity to respond.   *Firemen's Ins. Co. of Newark, New Jersey v.*

*Keating*, 753 F. Supp. 1146, 1150 (S.D.N.Y. 1990) (emphasis added).   Plaintiff's motion for the

requested *ex parte* relief is therefore DENIED.

Within one week of the date of this Order, Plaintiff shall show cause in writing why this

Order and the moving papers should not be docketed on ECF.


SO ORDERED.

Dated: March 11, 2021
         New York, New York

_____
        ALISON J. NATHAN
     United States District Judge

2



**Amos N. Jones, Attorney at Law**
1150 K Street Northwest, Washington, D.C. 20005-6809
Telephone: (202) 351-6187 | Facsimile: (202) 478-1654
www.amosjones.com | jones@amosjoneslawfirm.com

*via electronic mail to NathanNYSDChambers@nysd.uscourts.gov*

Thursday March 18, 2021

The Honorable Alison J. Nathan, Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    RE:    **Response to Order dated 3/11/21 on *Ex Parte* Motion for Temporary Restraining Order under Fed. R. Civ. P. 65(b)(1) in *Karen M. Suber v. VVP Services, LLC,* et al, Case No. 1:20-cv-8177 – AJN (Netburn)**

Dear Judge Nathan:

    We thank you for your consideration of Plaintiff's *ex parte* Application referenced above, on which you ruled one week ago today. In accordance with your ruling that "Plaintiff shall show cause why this Order and the moving papers should not be docketed on ECF," we respectfully submit that no cause can be shown as far as Plaintiff's interests go because, in light of the denial in the March 11 Order, we promptly notified Defendants and Defendants' counsel of our desire to apply for a temporary restraining order and simultaneously tendered for their consent all moving papers including the attachments (with Plaintiff's declaration marked "UNDER SEAL," as it was in the *ex parte* approach of last week).

    Thus, all application materials – amended to reflect that the application not made *ex parte* and nearly identical to those already filed *ex parte* – were disclosed already to the non-movants as we followed the process under the <u>Individual Practices in Civil Cases</u> Procedure 3.K., published on page            six            and            available            at https://www.nysd.uscourts.gov/sites/default/files/practice_documents/AJN%20Nathan%20Individual%20Rules%20of%20Practice%20in%20Civil%20Cases.pdf.

    Though Defendants' counsel this afternoon wrote back denying consent and offering a starting-point range of unspecified dates, we await their agreeing to several specific dates that we set out in our notice to them so that our Application can specify several as per Procedure 3.K.  Defendants' Counsel Van Vliet notified us via electronic mail at 6:22 p.m. today that she is "check[ing] people's calendars" before getting back with us once more, aware that we intended to file today but assured at 6:26 p.m. via electronic mail that we now "can live with Friday," as undersigned counsel put it. Defendants' counsel needs a bit more time, but they have had the Application and all related documents in hand since Wednesday.

We envision re-appearing on ECF with our Application, including the required documents related to it, as soon as Defendants' counsel equips us with affirmations of specific dates we pre-confirmed with them. With the Application being filed openly tonight or Friday and nearly identical to that which we had presented *ex parte*, we cannot show cause why that *ex parte* pleading functionally already disclosed fully to the non-movants should not be docketed.

Respectfully submitted,

Amos N. Jones

CC:        Su Mi Park, Counsel to Plaintiff
           Karen M. Suber, Plaintiff

Amos Jones is admitted in the District of Columbia and before the U.S. District Court, District of Maryland, the U.S. District Court, Western District of Pennsylvania, the U.S. Court of Appeals for the Third Circuit, the U.S. Court of Appeals for the Fourth Circuit, the U.S. Court of Appeals for the Sixth Circuit, the U.S. Court of Appeals for the District of Columbia Circuit, the U.S. Court of Appeals for the Federal Circuit, and the Supreme Court of the United States.

