UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Karen M. Suber,

               Plaintiff,

        –v–

VVP Services, LLC, *et al.*,

               Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/21

20-cv-08177 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff, a transactional attorney, brings various claims against Defendants under state and federal law arising out of Plaintiff's previous employment. Defendants filed motions to dismiss for lack of personal jurisdiction and for failure to state a claim. For the reasons that follow, Defendants' motions to dismiss for lack of personal jurisdiction is GRANTED and Plaintiff's complaint is dismissed without prejudice.

I.    **BACKGROUND**

  **A. Facts**

The following allegations are drawn from Plaintiff's Second Amended Complaint. Dkt. No. 92. Defendant Vision Venture Partners is a Florida company that was purportedly established "to become a major player in the burgeoning e-sports field as well as the entertainment, hospitality, and real estate spaces." *Id.* ¶¶ 2, 12. Vision Venture is the "manager" of another Florida company, Defendant VVP Services LLC. *Id.* ¶ 11. Defendants Amit Raizada and Stratton Sclavos are individuals domiciled in California and are both officers and employees of Vision Venture and VVP. *Id.* ¶¶ 14, 16. Defendant Eleven Stones, LP, a Florida company,

and Defendant Prometheus Ventures, LLC, a California company, are controlled by and are the alter egos of Raizada and Sclavos, respectively.  *Id.* ¶¶ 13, 15.

Vision Venture has a number of "portfolio companies" in which it has "direct and/or indirect" investments, including in a company called "Vision Esports."  *Id.* ¶ 12.  Vision Esports is not a party to this litigation.  The company was "formed or caused to be formed" by Sclavos.  *Id.* ¶ 12 n.7.

Plaintiff Karen Suber is a transactional attorney.  *Id.* ¶ 1.  In June 2017, Plaintiff was employed by the law firm Gibson, Dunn & Crutcher LLP in New York City. *Id.* ¶ 2.  Around that time, Plaintiff learned of a job opportunity through a New York based recruiting firm, Crossdale Paul LLC, to serve as the lead transactional attorney for VVP Services and affiliated entities.  *Id.* ¶ 29.  Plaintiff was told by persons at Crossdale Paul that "the partners at VVP Services [had] a great deal of capital available and at their disposal to invest in the esports, entertainment, hospitality, and real estate industries." *Id.*  ¶ 30.  This information was conveyed to Crossdale Paul by partners at VVP Services.  Crossdale Paul had been engaged by the general counsel of VVP Services to seek out candidates for the position "with the approval of Defendants Raizada and Sclavos."  *Id.* ¶ 29.

Following these initial discussions with Crossdale Paul, Plaintiff was interviewed by the general counsel of VVP Services by phone on June 29, 2017.  *Id.* ¶ 31.  After the interview, the general counsel invited Plaintiff to come to the offices of VVP Services in Beverly Hills, California to interview in-person.  The general counsel made this invitation with "the full knowledge and approval of" Raizada.  *Id.*

Plaintiff attended two in-person interviews in July 2017, during which she spent the full day at the Beverly Hills office and met multiple officers and employees at the company,

including Raizada. *Id.* ¶¶ 31–42. Over the course of these interviews, multiple representations were made to Plaintiff. She was told that Vision Venture and VVP Services possessed substantial capital and liquidity to invest, and that Raizada and Sclavos had personal fortunes. *Id.* ¶ 33. She was told that she would receive "quality work" as the lead transactional attorney. *Id.* ¶ 35. She was also told that, as part of her compensation for her employment, she would receive a grant of equity in Vision Venture and related entities. *Id.* ¶ 40. She was advised that the equity compensation package would not be formalized until after she was hired because one of her duties would be to draft the "Vision Venture Partners Equity Participation Plan." *Id.*

In August 2017, VVP Services extended a written offer of employment to Plaintiff. *Id.* ¶ 41. She accepted. Plaintiff soon began working remotely but then moved to California less than a month later to work out of Defendants' office. She signed a 12-month rental lease. *Id.* ¶ 46. Plaintiff incurred substantial costs relocating from New York to California. While employed by VVP Services, Plaintiff performed various services in her role as a transactional attorney, such as assisting in the restructuring of related entities and preparing documentation related to potential investments and transactions. *Id.* ¶¶ 48–53.

In 2017 and 2018, Sclavos and Raizada were involved in the solicitation of investments from potential investors in New York, including the New York Yankees, on behalf of Vision Esports. Though neither Sclavos or Raizada ever physically entered the state of New York, Plaintiff claims that both of them solicited the investments through the help of various persons. Individuals named Mr. Rashid and Mr. Bernstein, "at the direction of Defendants Raizada and Sclavos," solicited investments from their New York offices. *Id.* ¶¶ 22, 23. An individual referred to as "JG" who is an investment banker "used his connections to help Defendants Raizada and Sclavos" market securities in Vision Esports. *Id.* ¶ 21. Additionally, Sclavos

directly communicated via email and telephone with representatives of the New York Yankees to pitch them the investment.  *Id.* ¶ 21

At one point during her employment, Plaintiff assisted Sclavos and Raizada with the New York Yankees investment deal.  *Id.* ¶¶ 12, 50.  Plaintiff worked in conjunction with Raizada and Sclavos to draft documentation related to the potential investment.  On October 2, 2017, once the agreements were executed, Sclavos caused representatives of the Yankees to "wire funds for their investment in a Vision Esports Entity" to an account belonging to Vision Venture Partners and/or VVP Services located outside of New York.  *Id.* ¶ 21. Through the Yankees deal and other investments, "Defendants raised $38 million" for Vision Esports.  *Id.* ¶¶ 23–24.  A "material portion" of these amounts were solicited "from persons in the State of New York," including the New York Yankees, Odell Beckham, Jr., Kevin Durant and Rich Kleiman.  *Id.*

Beginning in October 2017, Plaintiff became aware of "multiple instances of questionable conduct" that "led her to be concerned about the actions of" Sclavos and Raizada, and "led her to believe that the 'quality work' she had been promised amounted to aiding and abetting fraud." *Id.* ¶ 53.  Plaintiff also became aware that Sclavos was insolvent and had a pervasive substance abuse problem.  *Id.* ¶¶ 60–61.  Additionally, Plaintiff learned that Sclavos caused a loan to be made out of Vision Esports to himself for personal use.  *Id.* ¶ 58, Dkt. No. 92-6.

Plaintiff, who is African-American, further alleges she was treated in a discriminatory manner based on her race. *Id.* ¶ 10. She was excluded from important meetings, prevented from communicating with important investors, and was compensated less well than her colleagues.  *Id.* ¶ 72.  Moreover, Raizada referred to his colleagues using racial slurs.  *Id.* ¶ 73.

In January 2018, Plaintiff consulted with outside counsel about her concerns regarding Defendants' conduct and decided she could no longer serve as their attorney.  *Id.* ¶¶ 55–56.  On

January 22, 2018, she resigned. *Id.* The promised equity compensation program was never drafted and Plaintiff never received any equity in VVP Services or any related entities. *Id.* ¶ 54. After Plaintiff voluntarily resigned, Sclavos told various third parties that Plaintiff was terminated for cause. *Id.* ¶¶ 77–78.

### B. Procedural History

On October 2, 2020, Plaintiff filed a complaint in this Court. Dkt. No. 1. In Plaintiff's Second Amended Complaint, the operative complaint in this action, Plaintiff brings claims against all Defendants for fraudulent inducement, negligent and intentional misrepresentation and related claims, breach of contract, wrongful termination via constructive discharge, defamation, civil conspiracy, and unfair business practices under either or both New York and California state law. She also alleges claims for racial discrimination under 42 U.S.C. § 1981. Dkt. No. 92. Defendants each individually filed a motion to dismiss the Second Amended Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 66–77.

## II. DISCUSSION

Defendants move to dismiss Plaintiff's claims for lack of personal jurisdiction.[1] At the motion to dismiss stage, the Plaintiff must establish personal jurisdiction by making a *prima facie* showing. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The Court must resolve all doubts in favor of the Plaintiff and construe her pleadings and affidavits in the light most favorable to her. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). In order to assess whether the Court has personal jurisdiction over Defendants, the Court

---

[1] Defendants also move to dismiss for failure to state a claim. Because the Court determines in this opinion that Plaintiff's complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), the Court will not address Defendants' arguments with respect to 12(b)(6).

must first determine whether personal jurisdiction is established under New York's long-arm statute, and if so, then determine whether the exercise of personal jurisdiction in this case comports with due process. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990). Personal jurisdiction must be established for each defendant and for each asserted claim. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

Plaintiff claims that the Court has specific jurisdiction over each of her claims for every defendant pursuant to § 302(a)(1)–(3) of New York's long arm statute. That provision permits the court to exercise personal jurisdiction over a non-domiciliary who has sufficient contacts with the state of New York through either business transactions or by committing tortious acts. *See* N.Y. C.P.L.R. § 302(a)(1)–(3). Each "cause of action" Plaintiff asserts must also "aris[e] from" those "acts" under § 302(a). *Id.* In her complaint, Plaintiff raises two potential contacts that Defendants allegedly had with New York that she argues constitute a business transaction, a tortious act, or both under § 302(a)(1)–(3). First, she points to Defendants' alleged efforts to recruit her in New York through a recruitment firm. Second, she argues that Defendants' alleged solicitation of investments for Vision Esports in New York from the Yankees and other persons or entities are also sufficient under § 302(a).

The Court concludes for the reasons discussed in this opinion that Defendants' alleged contacts with New York are insufficient to confer specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1)–(3) for any of Plaintiff's claims. Therefore, the Court need not address whether personal jurisdiction comports with due process.

### A.  N.Y. C.P.L.R. § 302(a)(1) (claims arising out of business transactions)

Section 302(a)(1) allows the Court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent. . . transacts any business within the state or

contracts anywhere to supply goods or services in the state[.]"  "To establish personal

jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have

transacted business within the state; and (2) the claim asserted must arise from that business

activity."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir.

2006).

As discussed below, the only alleged contact that constitutes a business transaction in this

case are Sclavos and Raizada's alleged investment solicitation activities in New York.  However,

none of Plaintiff's claims against either of those defendants "arise out of" that contact.

Therefore, § 302(a)(1) does not provide a basis for the Court to assert personal jurisdiction over

any of Plaintiffs' claims.

### 1. Only Sclavos and Raizada's investment solicitation activities constitutes a "business transaction" for the purposes of § 302(a)(1)

Under New York law, a defendant "transact[s] business" under § 302(a)(1) when it

engages in "some act by which [it] purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best*

*Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up). When determining

whether a defendant's contacts with the state are sufficiently purposeful, courts have routinely

stated that it is the *quality* of the contact, not the quantity, that matters.  *See Licci ex rel. Licci v.*

*Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012) (cleaned up).  A defendant need

not step foot in the state to "transact business," *see Parke-Bernet Galleries, Inc. v. Franklin*, 256

N.E.2d 506, 508 (N.Y. 1970), and in some instances a single phone call could be sufficient, *U.S.*

*Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993).   The

focus of the inquiry is instead whether the "defendant s[ought] to consummate a New York

transaction or to invoke [the] State's laws." *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 835 (N.Y. 2007).

> ### a. VVP Services' alleged recruitment of Plaintiff did not constitute a business transaction.

Plaintiff argues that VVP Services alleged recruitment of Plaintiff in New York, which included engaging a recruitment firm to find Plaintiff and conducting an initial phone interview, constitutes a transaction of business under § 302(a)(1).

Under New York law, an out of state defendant can "transact business" in New York under § 302(a)(1) by soliciting the services of an individual in New York, such as the legal services of an attorney, even though the defendant never physically entered the state.   *Fischbarg v. Doucet*, 880 N.E.2d 22, 26–28 (N.Y. 2007).  However, the fact that a defendant knowingly contacted an attorney in New York alone is insufficient, as "[n]ot all purposeful activity" aimed at New York "constitutes a 'transaction of business' within the meaning of N.Y. C.P.L.R. § 302(a)(1)." *Licci ex rel. Licci*, 673 F.3d at 62 (cleaned up).  The defendant must be seeking to "consummate a New York transaction or to invoke [the] State's laws[,]" *Ehrenfeld*, 881 N.E.2d at 835, for example by contracting for legal services to be performed *in* New York and maintaining ongoing communications with the attorney in New York.  *Fischbarg*, 880 N.E.2d at 26–28.  Courts have declined to find that a business transaction occurred based solely on limited communications between an out-of-state defendant and a plaintiff in New York for the narrow purpose of discussing services to be provided outside of the state.  *See Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574 (2d Cir. 2020); *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir. 1982); *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844 (CS), 2019 WL 2578306, at *6 (S.D.N.Y. June 24, 2019), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020); *Beem v. Noble Grp. Ltd.*, No. 14 CIV. 9046, 2015

WL 8781333, at *4 (S.D.N.Y. Dec. 14, 2015); *Lipson v. Birch,* 46 F. Supp. 3d 206, 218 (E.D.N.Y. 2014).

VVP Service's alleged recruitment of Plaintiff did not constitute a business transaction for the purposes of § 302(a)(1). Plaintiff argues that VVP Services purposefully engaged a New York recruiting firm and therefore should have been aware that they were recruiting a New York attorney, but that alone is not sufficiently "purposeful" under New York law. Plaintiff does not allege that she was hired in New York or asked to work in New York. Instead, Plaintiff alleges that VVP Services reached out to her so they could interview her *in California* for a job located *in California* that required the performance of legal services *in California*. This activity did not consummate a "New York transaction" or "invoke" the protection or benefits of the laws of New York. *Ehrenfeld*, 881 N.E.2d at 835; *see Yih*, 815 F. App'x at 574 (conducting two Skype interviews and exchanging emails with a plaintiff in New York through a third-party agent regarding a position in Taiwan did not constitute a business transaction); *Hanback v. Ocean Ships, Inc.*, No. 97 CV 0025, 1997 WL 419644, at *3 (E.D.N.Y. July 18, 1997) (hiring a third-party recruiter to identify a candidate located in New York and flying him out to Dubai to sign an employment contract did not constitute a business transaction).

Additionally, Plaintiff points out that after accepting the offer of employment, she worked remotely in New York for less than a month while she was preparing to move to California. This allegation does not change the calculus. "[A] plaintiff may not 'rely[] on his own activities within the State, rather than on defendant's independent activities' to invoke long-arm jurisdiction." *Fischbarg*, 880 N.E.2d at 29. The job offer was for Plaintiff to come work as the company's in-house transactional attorney in California, and the fact VVP Services permitted

Plaintiff to work remotely for a brief period during that transition does not constitute purposeful business activity with New York.

Therefore, VVP Services' recruitment activities of hiring the recruitment firm, conducting an initial phone interview with Plaintiff, and permitting her to work remotely for a brief period prior to moving do not constitute a business transaction for the purposes of § 302(a)(1). This holding applies equally to the remaining defendants, who Plaintiff either alleges were much less involved in recruitment or does not allege they were involved at all.

### b. The alleged investment solicitation activities in New York constitute a business transaction, but only as to Sclavos and Raizada.

Next Plaintiff claims that Defendants are subject to personal jurisdiction because they transacted business in New York through their alleged investment solicitation activities. Plaintiff argues that Sclavos engaged in a business transaction by directly soliciting investments from potential investors via email and telephone on behalf of non-party Vision Esports in New York state, including from the New York Yankees. Plaintiff argues that Raizada transacted business in New York as well when, according to the allegations in the complaint, he similarly solicited investments in New York on behalf of Vision Esports through various agents. Finally, Plaintiff argues that personal jurisdiction is also appropriate for the entity Defendants because they were engaged in a larger conspiracy with Sclavos and Raizada to defraud investors.

The Court agrees that Sclavos's alleged activities in New York are sufficient to constitute a business transaction for the purposes of § 302(a). Engaging in frequent and sustained communications with individuals or entities in New York for the purposes of soliciting investments from them in New York is sufficiently purposeful to constitute a New York business transaction. *See Best Van Lines, Inc.*, 490 F.3d at 248 (cleaned up).

Plaintiff has made this showing for Raizada as well. While, unlike Sclavos, Raizada is not alleged to have directly communicated with potential investors, a defendant may consummate a business transaction "through an agent" under § 302(a). To be considered an "agent," the individual must have acted in the state "for the benefit of, and with the knowledge and consent of the non-resident principal," and the principal must have exercised some control over the agent. *CutCo Indus., Inc.*, 806 F.2d at 366 (cleaned up). Plaintiff alleges in her complaint that individuals named Mr. Rashid and Mr. Bernstein solicited investments out of their New York offices "at the direction of Defendants Raizada and Sclavos" and that a New York investment banker "used his connections to help Defendants Raizada and Sclavos" market securities in Vision Esports. Dkt. No. 92 ¶¶ 21–23. Although not by much, these allegations are sufficient to make a *prima facie* showing that Raizada transacted business in New York for the purposes of § 302(a)(1). While Raizada and Sclavos have submitted affidavits in support of their motion in which they directly deny that any of these individuals communicated with investors on their behalf, at this stage "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993).

For the entity Defendants, Plaintiff argues they are on the hook under the conspiracy theory of jurisdiction for their alleged co-conspirators Sclavos and Raizada's business transactions. *See PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2021 WL 1199363, at *7 (S.D.N.Y. Mar. 30, 2021). Under this theory of personal jurisdiction, a plaintiff must show that "in connection with an act in New York," an "out-of-state co-conspirator had an awareness of the effects of the activity in New York," that

"the New York co-conspirators' activity was for the benefit of the out-of-state conspirators," and that "the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.'" *Id.* (cleaned up).

Plaintiffs' argument with respect to the entity Defendants fails. As an initial matter, the conspiracy theory of jurisdiction is not available under section 302(a)(1), which is for business transactions and not torts. *See United States v. Besneli*, No. 14 CIV. 7339 (JFK), 2018 WL 443747, at *5 (S.D.N.Y. Jan. 16, 2018); *E-Z Bowz, L.L.C. v. Pro. Prod. Rsch. Co.*, No. 00 CIV.8670 LTS GWG, 2003 WL 22064259, at *9 (S.D.N.Y. Sept. 5, 2003); *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F. Supp. 2d 334, 342 (S.D.N.Y. 1998).

Even if it were, Plaintiff must plausibly allege the existence of a conspiracy in the first place and then satisfy the requirements for that theory of jurisdiction, which she has not done. A plaintiff cannot rely on vague and conclusory allegations to provide a foundation for establishing personal jurisdiction over a defendant. *See, e.g., Pieczenik v. Cambridge Antibody Tech. Grp.*, No. 03 CIV. 6336 (SAS), 2004 WL 527045, at *5 (S.D.N.Y. Mar. 16, 2004); *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 309 (S.D.N.Y. 2015). Plaintiff fails to provide specific allegations tying the each of the various entity defendants named in her complaint to a larger conspiracy to defraud potential investors into purchasing securities of non-party Vision Esports. While Plaintiff alleges that VVP Services has a "direct and/or indirect . . . interest" in Vision Esports, *see* Dkt. No. 92 ¶ 12, that does not establish that Vision Esports is owned or controlled by any of the entity defendants or that any securities sold for Vision Esports would directly benefit any entity defendant. And Plaintiff's vague allegation that Sclavos caused a wire transfer to be made by representatives of the Yankees to a bank account belonging to

Defendant VVP Services "and/or" Defendant Vision Venture Partners is also insufficient to demonstrate that either entity participated in a conspiracy to defraud investors.

Therefore, while the complaint provides sufficient allegations to show that Sclavos and Raizada transacted in business in New York, the same is not true for the entity defendants.

### 2. Although Plaintiff has plausibly alleged that Sclavos and Raizada transacted business in New York, none of Plaintiff's claims "arise out of" that activity.

While Plaintiff has plausibly alleged facts demonstrating that Sclavos and Raizada transacted business in New York by soliciting investments there, the Court can only assert personal jurisdiction over those defendants for claims that "arise out of" that business transaction. However, none of Plaintiffs' claims arise out of Sclavos and Raizada's investment solicitation activities.

"New York courts have held that a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted" and thus "[a] connection that is merely coincidental is insufficient to support jurisdiction." *Sole Resort, S.A. de C.V.*, 450 F.3d at 103 (cleaned up). Therefore, there is no personal jurisdiction if "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York." *Id.* at 104.

In her complaint, Plaintiff brings claims for fraudulent inducement, negligent and intentional misrepresentation and related claims, breach of contract, wrongful termination via constructive discharge, defamation, civil conspiracy, and unfair business practices under either or both New York and California state law, as well as a claim for racial discrimination under 42 U.S.C. § 1981. Dkt. No. 92.

None of these claims "arise out of" Sclavos and Raizada's alleged investment solicitation activities. Plaintiff's claims for fraudulent inducement and negligent and intentional misrepresentation are based on the allegedly false statements by certain defendants to induce Plaintiff to accept the position at VVP Services. Those statements and Plaintiff's alleged reliance on them both occurred *prior* to the alleged investment solicitation activities and are unrelated to them. The same is true for Plaintiff's promissory estoppel and breach of contract claims, which arise out of Defendants alleged promise to provide equity compensation. Moreover, Plaintiff does not allege that Defendants made any defamatory statements in connection with the investment solicitation activities—indeed, all of the statements allegedly occurred outside of New York after Plaintiff resigned from the company. Plaintiff also has not alleged any race-based harassment that occurred in relation to the investment solicitation activities that would support her § 1981 claim. Lastly, in her complaint, Plaintiff does not state which specific conduct of Defendants underlies her claims for Civil Conspiracy and Unfair or Deceptive Business Practices, and thus has not made a *prima facie* showing that the Court has personal jurisdiction over Defendants with regards to those claims.[2]

The only claim that is even remotely related to the alleged investment solicitation activities is Plaintiff's claim for wrongful termination via constructive discharge under California law. According to Plaintiff, she was forced to resign in part because Defendants were providing her work assignments that involved fraudulent activity and professional misconduct. One such work project, according to Plaintiff, involved the solicitation of investments from the New York

---

[2] While the Court holds that VVP Services' alleged recruitment activity does not constitute a business transaction, the Court notes that the majority of Plaintiff's claims also do not "arise out of" that activity either. Plaintiffs' breach of contract and promissory estoppel claims are based on promises that were made and broken in California. Moreover, the alleged conduct on which her wrongful termination and discrimination claims are based all took place in California after Plaintiff was hired, and the alleged statements on which her defamation claims are based were also allegedly made in California. That Plaintiff lived in New York prior to coming to California has at best a "a tangential relationship" to these claims. *Sole Resort, S.A. de C.V.*, 450 F.3d at 104.

Yankees.  However, only Sclavos and Raizada engaged in a business transaction in New York in relation to this activity, and Plaintiff cannot bring a claim for wrongful termination via constructive discharge against them.  The Supreme Court of California has held that "action for wrongful discharge can only be asserted against an employer," and "[a]n individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort." *Miklosy v. Regents of Univ. of California*, 188 P.3d 629, 644 (Cal. 2008).  Plaintiff does not argue that either was her employer, nor does she allege facts from which the Court could conclude that either was her employer.  Plaintiff instead alleges that it was VVP Services who extended an offer of employment, Dkt. No. 92 ¶¶ 41–42, but, as discussed above, Plaintiff has not demonstrated that VVP Services engaged in a business transaction of any kind.

Therefore, because Plaintiff has failed to make a *prima facie* showing that defendants transacted business in New York *and* that any of her claims arise out of transactions, the Court does not have personal jurisdiction over any defendant under § 302(a)(1).

### B.  N.Y. C.P.L.R. § 302(a)(2)–(3) (claims arising out of tortious acts)

Sections 302(a)(2) and (3) provide for personal jurisdiction in situations where the defendant commits a tort.  Under § 302(a)(2), the defendant is subject to personal jurisdiction if he or she commits a tort within the state of New York.  For § 302(a)(3), there may still be personal jurisdiction over a defendant who commits a tort outside of the state, so long as the tort "caus[es] injury to person or property" inside the state and the defendant either (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce."  Plaintiff has not demonstrated a *prima facie* showing of personal jurisdiction over any defendant for either provision.

### 1. Section 302(a)(2) does not apply because Plaintiff has not alleged that Defendants "commit[ed] a tort" within the state.

Section 302(a)(2) requires that a defendant "be physically present in New York" when committing the tort. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). Additionally, "if a tort is committed by a person who is physically present in New York but who is acting as an agent of or coconspirator with an out-of-state individual, courts may attribute the in-state acts to an out-of-state defendant for the purposes of obtaining personal jurisdiction." *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014).

As Plaintiff does not contest, none of the Defendants in this case were physically present in New York with respect to either contact.  For the recruitment activities, Plaintiff has not demonstrated the recruitment firm that allegedly passed on Defendants' alleged misrepresentations to Plaintiff, was acting as Defendants' agent when it communicated with Plaintiff in New York.  Nor has Plaintiff alleged that Crossdale Paul committed a tort—to the contrary Plaintiff claims that Crossdale Paul was unaware that Defendants' alleged statements were false.  Dkt. No. 92 ¶ 29 n. 24.  Likewise, for the investment solicitation activities, Plaintiff has not alleged that anyone allegedly acting as an agent of Defendants Sclavos or Raizada to solicit investments committed a tort.  Therefore, § 302(a)(2) is inapplicable.

### 2. Section 302(a)(3) does not apply because Plaintiff has not alleged that Defendants "derive[] substantial revenue" in either New York or interstate or international commerce.

Under § 302(a)(3), a defendant may still be subject to personal jurisdiction in New York if they commit the tort outside of the state and it causes injury to person or property inside the

state, so long as the requirements under § 302(a)(3)(i) or (ii) are met.  Both options require that

the defendant "derive[]" substantial revenue either from goods used or services rendered in New

York or in interstate or international commerce.

Plaintiff has not made a *prima facie* showing under either (i) or (ii).  Plaintiff's only

allegation regarding Defendants' generating revenue is the $38 million that Plaintiff alleges

Defendants solicited for Vision Esports, a "material portion" of which was allegedly from

investors in New York.  But the revenue requirements in § 302(a)(3)(i) and (ii) refer to funds

generated by the sale of goods or rendering of services.  *See* N.Y. C.P.L.R. § 302(a)(3)(i)

(requiring the defendant "derive[] substantial revenue *from goods used or consumed or services

rendered* in a state"); *Hammond v. Alpha 1 Biomedicals, Inc*., No. 91-CV-1477, 1992 WL

44365, at *4 (N.D.N.Y. Mar. 2, 1992) ("New York courts interpreting the § 302(a)(3)(ii)

substantial revenue requirement have indicated that the revenues required under § 302(a)(3)(ii)

must derive from sales of goods or services in interstate commerce.").  For that reason, "[c]apital

infused into a corporation by means of stock purchases cannot be considered revenue *per se*,

because it is not profit from sales" or from services rendered.  *Ziegler, Ziegler & Assocs. LLP v.

China Digital Media Corp*., No. 05 CV 4960 (LAP), 2010 WL 2835567, at *5 (S.D.N.Y. July

13, 2010); *Pincione v. D'Alfonso,* 506 F. App'x 22, 26 (2d Cir. 2012) (summary order)

(affirmatively citing *Zeigler* for this proposition); *Theraplant, LLC v. Makarechi*, No. 16CV0646

(DLC), 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016); *Trafalgar Cap. Corp. v. Oil

Producers Equip. Corp*., 555 F. Supp. 305, 311 (S.D.N.Y. 1983), *abrogated on other grounds

by Kreutter v. McFadden Oil Corp.,* 522 N.E.2d 40 (N.Y. 1988).  As the Court explained in

*Theraplant,* "[i]f offering securities in New York, or owning shares managed by a fund in New

York were sufficient to establish personal jurisdiction over a foreign company under § 302(a)(3),

then New York courts would have jurisdiction over every company that accesses New York's capital markets or invests in a New York managed fund so long as that company also committed a tort that harmed a New Yorker," which "would be a reach too far." *Theraplant, LLC*, 2016 WL 7839186, at *4.  The $38 million allegedly raised by selling securities in Vision Esports does not constitute revenue for these purposes.

Therefore, even assuming that any of the Defendants committed a tort outside the state that caused injury to Plaintiff within the state, Plaintiff has not alleged that Defendants have the requisite contacts with New York to establish personal jurisdiction under § 302(a)(3).

### 3. Plaintiffs' claims do not arise out of any purported tort.

Finally, even if Defendants had satisfied the requirements of § 302(a)(2) or (3), Plaintiff must still show that each of her "cause[s] of action . . . arise from that tortious act." *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 325–26 (S.D.N.Y. 2013).  As discussed above with respect to § 302(a)(1), the majority of Plaintiff's claims do not "arise out of" the recruitment activity or the investment solicitation activities.  Additionally, because § 302(a)(2) and (3) are limited to tortious conduct, neither can provide a basis for the Court to assert jurisdiction over Plaintiff's breach of contract claims, *see AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 361 (S.D.N.Y. 2014) (citing *Warck–Meister v. Diana Lowenstein Fine Arts*, 775 N.Y.S.2d 859, 860 (N.Y. App. Div. 2004)); *Amigo Foods Corp. v. Marine Midland Bank-New York*, 348 N.E.2d 581, 584 (N.Y. 1976), nor Plaintiff's promissory estoppel claim, which is "an equitable doctrine that sounds in contract rather than tort" and is duplicative of the breach of contract action. *AllGood Ent., Inc. v. Dileo Ent. & Touring, Inc.*, 726 F. Supp. 2d 307, 320 (S.D.N.Y. 2010); *Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir.

18

2012). Moreover, § 302(a)(2)–(3) expressly excludes claims for defamation. *See* N.Y. C.P.L.R. § 302(a)(2)–(3).

* * *

In conclusion, neither of the two contacts that Plaintiff alleges that the Defendants had with the state of New York are sufficient to confer personal jurisdiction under the specific jurisdiction sections of New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1)–(3). Plaintiff has not demonstrated that VVP Services' alleged recruitment activities constitute a business transaction, and while the alleged investment solicitation activities of Raizada and Sclavos do constitute a business transaction, none of Plaintiff's claims properly asserted against them "arise out of" that conduct. Further, Plaintiff has not alleged that any Defendants or their agents have committed a tort while physically present in New York under § 302(a)(2), nor has Plaintiff alleged facts satisfying the revenue requirements of § 302(a)(3).

Therefore, the Court does not have personal jurisdiction over any of the Defendants for any of Plaintiff's claims under § 302(a). Because Plaintiff has not established personal jurisdiction under New York law, the Court need not address whether asserting jurisdiction would comport with Due Process. Her complaint must be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). *See Machkour v. Espices W. 70th Corp.*, No. 11-CV-688 JPO, 2011 WL 6288006, at *4 (S.D.N.Y. Dec. 14, 2011).

## III.   MOTIONS TO SEAL AND MOTION TO STRIKE

The parties have made various sealing requests with respect to exhibits attached to Plaintiff's complaint and to the parties' motions. The parties jointly request to seal two exhibits attached to Plaintiff's complaint because they contain nonparty confidential information. *See* Dkt. No. 53 (Exhibits 14, 35). Defendants also seek to seal certain exhibits attached to Plaintiff's

complaint because they contain information relating to attorney-client privilege.  *See* Dkt. No. 55

(Exhibits 10, 13(A)–(C), 15, 22, 23, 24, 26, and 32).  Plaintiff has requested to file *ex parte* and

under seal an attachment to her motion to unseal certain documents.  Dkt. No. 60.  Plaintiff also

requested to file an attachment to her opposition to Defendant's motion to dismiss, an affidavit

by Plaintiff, under seal because it contains "private and personal information" and "other

confidential sources that Plaintiff wishes to protect from harm."  Dkt. No. 115.  Lastly, she

requests to file under seal two exhibits attached to her proposed sur-reply, which are her

Declaration and certain emails from one of the Defendants, for the same reasons.  Dkt. No. 120.

       The presumption of public access only applies to judicial documents, i.e., documents

filed with the Court that are "relevant to the performance of the judicial function and useful in

the judicial process."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

Courts may permit narrowly tailored requests for sealing only when there are other competing

interests at stake that overcome the presumption.  *Id.*  "The party seeking to maintain the judicial

documents under seal bears the burden of showing that higher values overcome the presumption

of public access."  *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 CIV. 655(LTS)(MHD), 2012

WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121

F.3d 818, 826 (2d Cir.1997)).  The attorney client privilege is one such potential justification for

maintaining judicial documents under seal.  *Id*.  The Court will also seal certain documents

where the court "did not rely on these documents in deciding the motion and they contain

sensitive financial and personal information related to third parties."  *City of Almaty, Kazakhstan

v. Ablyazov*, No. 15-CV-5345 (AJN), 2021 WL 1177737, at *1 (S.D.N.Y. Mar. 29, 2021).

       The Court grants all sealing requests.   Many of the aforementioned documents were not

relied upon by the Court in this action and thus do not constitute judicial documents in any event.

*Accord Moshell v. Sasol Ltd.,* No. 20 CIV. 1008 (JPC), 2021 WL 3163600, at *1 (S.D.N.Y. July 24, 2021).  Further, while Plaintiff argues that Defendants' sealing requests should be denied because the "crime fraud" exception applies to bar the protection of attorney client privilege, "[t]he burden is on the party invoking the crime-fraud exception to demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *Madanes v. Madanes*, 199 F.R.D. 135, 147–48 (S.D.N.Y. 2001).  Plaintiff has not met that burden.

Therefore, the documents contained in Dkt. Nos. 53, 55, 60, 116, and 121 shall remain under seal.  Additionally, Plaintiff's motion to strike the affidavit at Dkt. No. 88 is meritless and is denied.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is GRANTED and Plaintiff's complaint is dismissed without prejudice.  This resolves Dkt. Nos. 66, 68, 70, 72, 74, 76, 96, 98, 100, 102, 104, and 106.  The parties' sealing requests are GRANTED.  This resolves Dkt. Nos. 38, 58, 62, 115, and 120.  Plaintiff's motion to strike is DENIED.  This resolves Dkt. No. 88.  Additionally, Dkt Nos. 40, 47, 57 and 119 are administratively denied.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: September 27, 2021
         New York, New York

_____
         ALISON J. NATHAN
      United States District Judge

21