21-2649-cv
*Suber v. VVP Services, LLC, et al.*

**MANDATE**

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### AMENDED SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of January, two thousand twenty-three.

PRESENT:

    GERARD E. LYNCH,
    EUNICE C. LEE,
    BETH ROBINSON,
            *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Apr 03 2023

_____

KAREN M. SUBER,

    *Plaintiff-Appellant*,

    v.                        No. 21-2649

VVP SERVICES, LLC, VISION VENTURE PARTNERS, LLC, ELEVEN STONES, LP, AMIT RAIZADA, STRATTON SCLAVOS, PROMETHEUS VENTURES, LLC,

    *Defendants-Appellees*.
_____

MANDATE ISSUED ON 04/03/2023

| | |
|---|---|
| FOR APPELLANT: | KAREN M. SUBER (Amos N. Jones, *on the brief*, Amos Jones Law Firm, Washington, D.C.), New York, NY |
| FOR APPELLEE: | PAUL J. BATTISTA (Theresa M. B. Van Vliet, *on the brief*), Genovese Joblove & Battista, P.A., Ft. Lauderdale, FL |

Appeal from a judgment of the United States District Court for the Southern District of New York (Nathan, *J*.).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order appealed from entered on September 27, 2021, is **AFFIRMED IN PART** and **VACATED AND REMANDED IN PART**.

Karen M. Suber ("Suber") appeals from the judgment of the District Court (Nathan, *J*.), dismissing without prejudice her Second Amended Complaint ("SAC") against VVP Services, LLC, Vision Venture Partners, LLC, Eleven Stones, LP, Amit Raizada, Stratton Sclavos, and Prometheus Ventures, LLC (collectively, "Defendants") for lack of personal jurisdiction and granting the Defendants' motion to seal certain exhibits.  For the reasons explained below, we affirm the district court's order dismissing the SAC for failing to allege facts sufficient to establish personal jurisdiction under New York's long-arm statute. However, we remand with instructions for the district court to unseal exhibits no

2

longer in dispute and to evaluate each remaining exhibit individually for whether it is appropriately maintained under seal.

Suber alleges the following. In 2017, she was employed as a transactional attorney with Gibson, Dunn & Crutcher LLP in New York City when she was approached by the New York-based legal recruiting agency Crossdale Paul LLC with a job opportunity: lead transactional attorney for VVP Services, LLC, an up-and-coming esports venture. Crossdale Paul representatives informed Suber that the partners at VVP Services had ample capital to invest in the esports, entertainment, hospitality, and real estate industries. Following a telephone interview with David Diamond, the general counsel of VVP Services, Suber was invited to come to the Beverly Hills, California office of VVP Services to interview in person.

Over the course of two in-person interviews, Suber alleges Raizada, Diamond, and other representatives of VVP Services made several misrepresentations, including that VVP and its related entities were established by individuals with successful track records of starting new companies, VVP Services had large amounts of capital available to grow the venture and make new investments due to Raizada and Sclavos's extensive personal fortunes, and Suber, as the lead transactional attorney, would take the lead on structuring and

3

documenting additional fundraising efforts, complex commercial transactions, player contracts, and more. Suber was assured that while VVP Services would pay her less than Gibson Dunn, Suber would receive a valuable equity stake in VVP Services—and, in fact, one of her first responsibilities would be to draft the equity agreement. Suber accepted the position in August 2017 and worked remotely from New York for less than four weeks. In September 2017, Suber began to work primarily in California, and in October 2017, signed a 12-month lease on a Los Angeles apartment.

During Suber's time at VVP Services, Raizada and Sclavos helped solicit $38 million from investors in New York, including a major investment from the New York Yankees. Suber alleges Sclavos participated in meetings in New York as part of these solicitations, and that Suber assisted Raizada and Sclavos from Beverly Hills by drafting the documentation to effect one of the investments secured through Raizada and Sclavos' ongoing efforts in New York. Apart from that one instance, Suber is not alleged to have aided the New York investment solicitation efforts in any other way.

Between October 2017 and January 2018, Suber observed several instances of questionable conduct and began to worry that her work for VVP Services "amounted to aiding and abetting fraud." Supp. App'x 124. Suber also learned

4

that Raizada and Sclavos had misrepresented their financial ability to support the venture. Additionally, Suber, who is African-American, alleges she was treated in a discriminatory manner based on her race, including by being excluded from important meetings, prevented from communicating with African-American investors, being paid less than her colleagues, and working with an executive—Raizada—who was later accused of using racial slurs in referring to colleagues. After consulting with counsel, Suber resigned from VVP Services in January 2018. The equity compensation agreement was never drafted, and Suber never received the equity she had been promised. Suber later learned Sclavos was telling investors that Suber had been terminated for cause.

Suber initiated this action in October 2020 in the Southern District of New York and, after the Defendants moved to dismiss both her initial complaint and a subsequent amended complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, filed a Second Amended Complaint in March 2021, bringing sixteen causes of action against Raizada, Sclavos, VVP Services, Vision Venture Partners, Eleven Stones, and Prometheus Ventures[1] under New York, California, and federal law, including fraudulent inducement, breach of

---

[1] The SAC alleges that Eleven Stones and Prometheus Ventures are the alter egos of Raizada and Sclavos, respectively. Supp. App'x 103–04.

5

contract, defamation, constructive discharge, and racial discrimination in violation of 42 U.S.C. § 1981.  In September 2021, the District Court granted the Defendants' Motion to Dismiss Suber's Second Amended Complaint for lack of personal jurisdiction, concluding that Suber had failed to show that it had personal jurisdiction over any of the Defendants pursuant to New York's long-arm statute.  The District Court also granted the Defendants' motion to seal several exhibits Suber had filed, concluding that unspecified portions of the exhibits at issue were either subject to the attorney-client privilege or not judicial documents subject to the presumption of public access.  Suber timely appealed.  We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm in part and vacate and remand in part.

We review without deference a district court's dismissal of a complaint pursuant to Rule 12(b)(2).  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).  To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists, which "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir.

6

2010) (internal quotation and alteration marks omitted). A plaintiff must establish jurisdiction for each claim asserted. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018). In determining whether a *prima facie* showing of jurisdiction has been made, we construe the pleadings and supporting materials in the light most favorable to the plaintiff. *Licci*, 732 F.3d at 167. Additionally, a plaintiff must both demonstrate a statutory basis for jurisdiction and show that exercising personal jurisdiction comports with due process. *Id.* at 168.

On appeal, Suber argues that New York's long-arm statute affords personal jurisdiction over Defendants, and that the District Court erred in sealing certain exhibits. Additionally, Suber argues that if this Court does not find personal jurisdiction over the Defendants, it should remand with instructions to transfer the case to the Central District of California. We consider each argument in turn.

7

*1. Personal Jurisdiction*[2]

New York's long-arm statute states, in relevant part, that a court may exercise personal jurisdiction over:

> any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state[.]

N.Y. C.P.L.R. § 302(a)(1)-(3) (McKinney). Suber contends personal jurisdiction arises under each of these three prongs. We disagree.

As to section 302(a)(1), "jurisdiction is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (internal citation and quotation marks omitted). Suber argues that the Defendants purposefully

---

[2] Like the District Court, because we conclude that Suber has not alleged facts supporting personal jurisdiction under New York's long-arm statute, we do not determine whether asserting personal jurisdiction over Defendants would comport with due process.

8

transacted business within the meaning of the statute because they fundraised in New York and recruited Suber via Crossdale Paul in New York, thus attempting to form an attorney-client relationship with a "New York attorney." Appellant's Br. 33. Suber further argues her causes of action have a substantial relationship to these activities because the Defendants used Suber's work product during the New York fundraising efforts.

The District Court concluded, and we agree, that the recruitment of Suber did not constitute a business transaction for purposes of the long-arm statute. New York courts have held an activity is purposeful when a defendant "invoke[s] the benefits and protections of [New York's] laws." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007). Recruiting Suber was not a New York transaction because the Defendants did not invoke the benefits or protections of the laws of New York by contacting Suber in New York, inviting her to interview in California, and hiring her to work in California. *See Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 118 (2d Cir. 2002) (third-party union's use of a New York hiring hall to recruit seamen to work on a foreign shipping company's ships did not subject the shipping company to personal jurisdiction in New York); *see also Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574–75 (2d Cir. 2020) (summary order) (holding that "two Skype interviews and emails through a third-party

9

agent regarding a position in Taiwan" were "too limited to amount to a purposeful transaction of business in New York"); *cf. Fischbarg*, 9 N.Y.3d at 378 (defendants had transacted business in New York by soliciting a New York attorney to represent them in an action in Oregon and by telephoning the plaintiff "at least twice per week" for "approximately *nine months*" alongside dozens of emails, faxes, and other communications (emphasis added)).

We likewise agree with the District Court that the fundraising activities in New York amounted to a business transaction, but not one with a substantial relationship to the claims asserted. The New York Court of Appeals has explained that personal jurisdiction under section 302(a)(a) requires "an articulable nexus or substantial relationship between the business transaction and the claim asserted"—in other words, that there is "at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012) (internal citation and quotation marks omitted). Suber does not provide an "articulable nexus" between the Defendants' alleged defrauding of investors in New York and various claims arising from her employment by VVP Services in California. Many of Suber's claims—including the fraudulent inducement, negligent misrepresentation, and intentional

10

misrepresentation claims—center on alleged promises made prior to her employment in order to induce her to take the job, prior to nearly all of the investment solicitation activities themselves. Those claims have nothing whatsoever to do with the New York investment solicitation activities. And by the time of Suber's (minimal) involvement with the New York investment solicitation activities, the alleged damage had already been done. She had already been lied to; she had already relied upon those lies to her detriment; and to the extent there was still other unrelated damage to come in the form of unpaid compensation, race-based discrimination, or lies regarding the circumstances of her departure from VVP, those harms, and the legal claims they provoked, likewise have no connection to the New York investment solicitation activity. Accordingly, jurisdiction is not available under section 302(a)(1).

As to section 302(a)(2), "a Defendant's physical presence in New York is a prerequisite to jurisdiction." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999). Suber argues that the Defendants committed torts against third parties in New York in connection with the sale of securities. However, Suber does not bring any claims connected to this alleged fraud. Suber's causes of action in tort, including fraudulent inducement and misrepresentation, are based on events that took place *in California* during the

11

course of Suber's recruitment and work for VVP Services—primarily misrepresentations made to Suber about the nature of the organization and her promised equity stake in the company.[3] Because Defendants did not commit any alleged torts *against Suber* while Defendants were physically present in New York, section 302(a)(2) is not a basis for personal jurisdiction.

Finally, as to section 302(a)(3), "courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." *Id.* at 791 (internal quotation marks omitted). Suber argues personal jurisdiction is available under section 302(a)(3)(i) because she alleged that Defendants and their "New York Sales Agents" "effected the New York Torts" by making misrepresentations of material facts with respect to certain transactions in New York. Appellant's Br. at 35–36. But Suber does not explain how the Defendants' alleged tortious conduct in New York constitutes the original event that caused *her* injuries. Suber provides no explanation as to how the "New York Torts" involving the fraudulent marketing and sale of securities

---

[3] Suber does not allege that any misrepresentations made in New York through Crossdale Paul, as an agent of Defendants, caused her to accept the job. Rather, she alleges only that communications with Crossdale Paul caused Suber to continue to learn about the job opportunity through Diamond and fly to California to interview—where the vast majority of the alleged misrepresentations were made. *See* Supp. App'x 115–19.

12

relate to the alleged torts committed against her during the course of her employment in California. Moreover, as discussed above, the situs of the injuries *to Suber* alleged in the SAC is California, not New York. Accordingly, jurisdiction is not available under section 302(a)(3).

*2. Sealing Exhibits*

Suber argues the District Court erred in granting, based largely on claims of attorney-client privilege, the Defendants' Motion to Seal ten exhibits Suber submitted to the court to bolster allegations made in her pleadings. Appellant's Br. at 11–12 (defining "Disputed Exhibits" as Exhibits 10, 13(A), 13(B), 13(C), 15, 22, 23, 24, 26, and 32, submitted at Docket 55).

There is a presumption favoring public access to judicial records. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016). A judicial record or judicial document is a filed item that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal citation and quotation marks omitted). Whether a document is a judicial record turns on an evaluation of "the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before the court." *Bernstein*, 814

13

F.3d at 139–40 (2d Cir. 2016) (internal quotation and alteration marks omitted). But access to judicial records is not unlimited. *See United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995). As relevant here, the attorney-client privilege can be a justification for leaving documents under seal. *Lugosch*, 435 F.3d at 125. "In reviewing a district court's order to seal or unseal, we examine the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion." *Bernstein*, 814 F.3d at 139.

The District Court stated it did not rely on "[m]any" of the exhibits in deciding the Motion to Dismiss, and thus those "many" exhibits were not judicial documents entitled to the presumption of public access. *Suber v. VVP Services, LLC*, No. 20-CV-08177, 2021 WL 4429237, at *10 (S.D.N.Y. Sept. 27, 2021). But the District Court did not state which documents it relied on and which it did not. The District Court also assumed without analysis that the attorney-client privilege applied to the exhibits that did qualify as judicial documents and that it was Suber's burden to show the crime-fraud exception applied to overcome the

14

protection of the privilege. Finding Suber had not met that burden, the District Court granted all of the Defendants' sealing requests.

During oral argument, counsel for the Defendants admitted that while the Defendants maintain that any exhibits that fall under the attorney-client privilege should remain sealed, some of the exhibits may not implicate the privilege.

In a follow-up letter, the Defendants clarified that Exhibit 23 does not appear to contain privileged attorney-client information and could be unsealed, and that Exhibits 13A, 13B, 13C, and 24 should either remain sealed or could be redacted of privileged information and unsealed. The Defendants maintain that the remainder (Exhibits 10, 15, 22, 26, and 32) should remain sealed.

Because of the strong presumption in favor of access to judicial documents, we remand to the district court with instructions to: (1) unseal Exhibit 23, (2) address the exhibits under seal that remain in dispute on an individual basis and clarify (a) which exhibits are judicial documents, (b) which exhibits, if any, implicate the attorney-client privilege, and why, and (c) whether any exhibits implicating the attorney-client privilege fall under the crime-fraud exception. If any exhibits are determined to implicate the attorney-client privilege and not fall under the crime-fraud exception, the exhibits should be redacted of privileged information and unsealed wherever possible—but particularly in the case of

15

Exhibits 13A, 13B, 13C, and 24, which Defendants have already indicated could be unsealed with redactions. The exhibits should only remain sealed if they are found to implicate the attorney-client privilege and cannot be redacted in such a way as to avoid revealing privileged information.

*3. Sua Sponte Transfer of Venue*

Finally, Suber argues that the District Court erred by dismissing the case without prejudice rather than *sua sponte* transferring the case to the Central District of California. Even assuming this issue is properly before the Court on appeal,[4] we decline to exercise our discretion to transfer the case. Given her delay in seeking transfer, and lack of specificity as to the hardship she would face if we declined to transfer, we conclude that she has not shown that the interests of justice require a transfer.

\* \* \*

---

[4] Following dismissal of the SAC, Suber filed a Motion for Reconsideration before the District Court, which—among other things—sought transfer of the case instead of dismissal. The District Court denied the motion in June 2022, after the case on appeal was briefed, and Suber did not appeal the District Court's decision.

16

We have considered the remainder of Suber's arguments and find them to be unavailing. For the forgoing reasons, the District Court's judgment is

**AFFIRMED IN PART** and **VACATED AND REMANDED IN PART.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

17