USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 27, 2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Karen M. Suber,

                Plaintiff,

       –v–

VVP Services, LLC, *et al.*,

                Defendants.

20-cv-8177 (AJN)

MEMORANDUM
& ORDER

ALISON J. NATHAN, Circuit Judge, sitting by designation:

     Plaintiff Karen Suber, a transactional attorney, brought various claims against Defendants under state and federal law relating to Plaintiff's former employment. The Court dismissed Plaintiff's claims without prejudice for lack of personal jurisdiction. The Second Circuit affirmed that holding on appeal but remanded for further consideration of whether certain documents filed in this case can remain under seal. For the reasons that follow, the Court concludes that some documents can remain under seal in whole or in part, while others must be unsealed and filed on the public docket.

## BACKGROUND

     The Court assumes familiarity with the factual background underlying this case, which was described in the Court's September 27, 2021 Memorandum Opinion & Order granting Defendants' motion to dismiss. *See Suber v. VVP Servs., LLC*, No. 20-cv-8177 (AJN), 2021 WL 4429237, at *1–3 (S.D.N.Y. Sept. 27, 2021) (Dkt. No. 143). The Court recounts here only the procedural background relevant to the present sealing dispute.

Plaintiff filed her initial complaint in October 2020.  Dkt. No. 1.  On December 28, 2020, Plaintiff filed her First Amended Complaint (FAC).  Dkt. No. 52.  In addition to the five exhibits attached to the FAC filed on the public docket, Plaintiff shortly thereafter indicated her intention to file numerous additional exhibits to the FAC under seal.  Dkt. Nos. 53, 55.  On January 12, 2021, Plaintiff moved to unseal several of these exhibits.  Dkt. No. 58.  Plaintiff explained that after efforts to meet and confer with Defendants regarding these exhibits had failed, she "voluntarily and out of an abundance of caution filed the Disputed Exhibits under seal" in light of Defendants' contention that these documents could not be publicly disclosed by Plaintiff because they contained information protected by either the attorney-client privilege or Plaintiff's ethical obligations as Defendants' former attorney to protect client confidential information.  Dkt. No. 59 (Pl.'s Unsealing Mem.), at 2.

Plaintiff argued that these documents were judicial documents subject to a presumption of public access under the First Amendment and the common law, that the attorney-client privilege did not apply, and that even if it did, the crime-fraud exception to the privilege applied.  *Id.* at 2–20.  Defendants filed their opposition on January 26, 2021, arguing that these documents were not judicial documents subject to a presumption of public access, that the attorney-client privilege and/or Plaintiff's ethical obligations weighed in favor of non-disclosure even if they were judicial documents, and that the crime-fraud exception to attorney-client privilege did not apply.  Dkt. No. 78 (Defs.' Unsealing Opp'n), at 3–19.  Plaintiff filed a reply on February 9, 2021.  Dkt. No. 82.

The parties' briefing identified the following documents as the subjects of the sealing dispute: Exhibits 10[1]; 13(A), (B), and (C)[2]; 15[3]; 22[4]; 23[5]; 24[6]; 26[7]; and 32[8].

Meanwhile, after receiving leave to do so, Dkt. No. 91, Plaintiff filed the operative Second Amended Complaint (SAC) on March 10, 2021, Dkt. No. 92. Plaintiff also re-filed under seal the same documents that were the subject of the parties' sealing dispute as exhibits to the SAC. Dkt. No. 93. Defendants moved to dismiss the SAC on March 19, 2021 pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and for failure to state a claim. Dkt. No. 96. Following the completion of briefing on Defendants' motion, Dkt. Nos. 107, 114, 117, on September 27, 2021, the Court issued a Memorandum Opinion & Order granting Defendants' motion to dismiss for lack of personal jurisdiction and dismissed Plaintiff's claims without prejudice. *See Suber*, 2021 WL 4429237.

In doing so, the Court also granted all then-pending sealing requests. The Court explained that "[m]any of the aforementioned documents were not relied upon by the Court in this action and thus do not constitute judicial documents in any event." *Id.* at *10 (citing *Moshell v. Sasol Ltd.*, No. 20-cv-1008 (JPC), 2021 WL 3163600, at *1 (S.D.N.Y. July 24, 2021)). Furthermore, the Court determined that Plaintiff had failed to meet her burden to invoke the crime-fraud exception to the attorney-client privilege by "demonstrat[ing] that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and

---

[1] Dkt. No. 55-1. This document was also filed as Dkt. No. 93-11.
[2] Dkt. No. 55-2. This document was also filed as Dkt. No. 93-1.
[3] Dkt. No. 55-3. This document was also filed as Dkt. No. 93-3.
[4] Dkt. No. 55-4. This document was also filed as Dkt. No. 93-4.
[5] Dkt. No. 55-5. This document was also filed as Dkt. No. 41, at 6–7, Dkt. No. 46, at 7–8, and Dkt. No. 93-5.
[6] Dkt. No. 55-6. This document was also filed as Dkt. No. 46, at 10–23, and Dkt. No. 93-6.
[7] Dkt. No. 55-7. This document was also filed as Dkt. No. 93-7.
[8] Dkt. No. 55-8. This document was also filed as Dkt. No. 41, at 9–25, Dkt. No. 46, at 25–41, and Dkt. No. 93-8.

that the communications in question were in furtherance of the fraud or crime." *Id.* (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 147–48 (S.D.N.Y. 2001)).

Plaintiff then both moved for reconsideration pursuant to Rules 59(e) and 60(b)(6) of the Federal Rules of Civil Procedure and Rule 6.3 of the Southern District of New York's Local Rules, Dkt. Nos. 145, 149, and filed a notice of appeal, Dkt. No. 147. The Court denied the motions for reconsideration in an Order dated June 9, 2022. *Suber v. VVP Servs., LLC*, No. 20-cv-8177 (AJN), 2022 WL 2078197 (S.D.N.Y. June 9, 2022) (Dkt. No. 153). In relevant part, the Court explained that Plaintiff was "improperly attempting to take a second bite at the apple by citing the arguments raised when the Court first considered the [sealing] issue," and reiterated that the record "established an attorney-client relationship between the parties" and that the attorney-client privilege warranted maintaining the disputed documents under seal notwithstanding Plaintiff's invocation of the crime-fraud exception. *Id.* at *3.

In January 2023, the Second Circuit affirmed in part and vacated in part the Court's judgment. *Suber v. VVP Servs., LLC*, No. 21-2649, 2023 WL 115631 (2d Cir. Jan. 10, 2023) (summary order). Specifically, the Second Circuit affirmed the dismissal of Plaintiff's claims for lack of personal jurisdiction, *id.* at *3–4, but it vacated the Court's sealing determinations and remanded

> with instructions to: (1) unseal Exhibit 23, (2) address the exhibits under seal that remain in dispute on an individual basis and clarify (a) which exhibits are judicial documents, (b) which exhibits, if any, implicate the attorney-client privilege, and why, and (c) whether any exhibits implicating the attorney-client privilege fall under the crime-fraud exception. If any exhibits are determined to implicate the attorney-client privilege and not fall under the crime-fraud exception, the exhibits should be redacted of privileged information and unsealed wherever possible—but particularly in the case of Exhibits 13A, 13B, 13C, and 24, which Defendants have already indicated could be unsealed with redactions. The exhibits should only remain sealed if they are found to implicate the attorney-client privilege and cannot be redacted in such a way as to avoid revealing privileged information.

*Id.* at *5.

Following remand, the Court ordered the parties to meet and confer by April 24, 2023, and to file a joint letter identifying the scope of sealing issues remaining in dispute following the Second Circuit's decision. Dkt. No. 159. On April 24, instead of filing a joint letter, the parties separately moved for an extension of the deadline to meet and confer, Dkt. Nos. 160, 162, while Plaintiff sought leave to file yet another document under seal, namely a complaint she anticipated filing in a separate lawsuit, Dkt. No. 163. The Court granted an extension but denied the sealing request. Dkt. Nos. 161, 164. Plaintiff then moved to transfer this case to the Central District of California and to stay all deadlines pending resolution of the transfer motion. Dkt. Nos. 166, 168. The Court denied both motions on April 27, 2023. *Suber v. VVP Servs., LLC*, No. 20-cv-8177 (AJN), 2023 WL 3866516 (S.D.N.Y. Apr. 27, 2023) (Dkt. No. 169). The parties met and conferred on April 28, 2023, but they did not file the joint letter directed by the Court's orders, instead filing separate letters on May 1, 2023 with differing accounts of what occurred at their conference. Dkt. No. 170 (Defs.' Ltr.); Dkt. No. 171 (Pl.'s Ltr.).

## DISCUSSION

### I. Legal Standards

The public has a right of access to many documents filed with the Court, derived from both the common law and the First Amendment. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Accordingly, the Second Circuit has established a multi-step framework for determining whether documents may be placed under seal.

First, "a court must . . . conclude that the documents at issue are indeed 'judicial documents' . . . and that therefore a common law presumption of access attaches." *Id.* at 119. Notably, "the mere filing of a paper or document with the court is insufficient to render that

paper a judicial document subject to the right of public access." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). "Instead, for a court filing to be classified as a 'judicial document,' it must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* (cleaned up). "A document is . . . relevant to the performance of the judicial function if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (cleaned up). In making this determination, courts "evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (cleaned up). While a case-initiating pleading itself is a "[j]udicial record[] subject to a presumption of public access," *id.* at 140, "exhibits to a complaint are judicial documents only 'if they are *currently* relevant to the judicial function,' regardless of whether they could later become relevant," *C.R. Corps v. Pestana*, No. 21-cv-9128 (VM), 2022 WL 220020, at *3 (S.D.N.Y. Jan. 25, 2022) (quoting *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019)); *see also United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 140 (2d Cir. 2017) (rejecting "the proposition that if a filed document *could* later become relevant to the judicial function, then it *is* relevant to the judicial function").

However, the First Amendment and common law rights of public access to judicial documents are not unlimited. *See Amodeo*, 44 F.3d at 146. Where the common law right

attaches, "the court 'must determine the weight' of the presumption in favor of public access, which is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *In re IBM Arb. Agreement Litig.*, No. 21-cv-6296 (JMF), 2022 WL 3043220, at *2 (S.D.N.Y. Aug. 2, 2022) (quoting *Lugosch*, 435 F.3d at 119). The court must then balance "countervailing factors" against "the weight of the presumption of access." *Lugosch*, 435 F.3d at 120. Where the "more stringent First Amendment framework applies," *id.* at 124, "the proponent of sealing must demonstrate that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *Bernstein*, 814 F.3d at 144 (cleaned up).

One such higher value is the attorney-client privilege. *See Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987 (GHW), 2021 WL 4481853, at *2 (S.D.N.Y. Sept. 29, 2021) (collecting cases); *Campbell v. City of New York*, No. 16-cv-8719 (AJN), 2021 WL 826899, at *9 (S.D.N.Y. Mar. 4, 2021). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Pritchard v. County of Erie* (*In re County of Erie*), 473 F.3d 413, 419 (2d Cir. 2007). Notably, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Additionally, the privilege attaches only if "the predominant purpose of the communication is to render or solicit legal advice." *Erie*, 473 F.3d at 420.

There are exceptions to the attorney-client privilege's protections. As relevant here, the crime-fraud exception provides that communications cannot be protected where they were "made for the purpose of getting advice for the commission of a fraud or crime." *United States v.*

7

*Richard Roe, Inc.* (*In Re Richard Roe, Inc.*), 68 F.3d 38, 40 (2d Cir. 1995) (cleaned up). "[A] party seeking the production of otherwise privileged documents pursuant to the crime-fraud exception must make two showings." *New York v. Mayorkas*, No. 20-cv-1127 (JMF), 2021 WL 2850631, at *8 (S.D.N.Y. July 8, 2021). First, they "must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed"; and second, they must show "that the communications were in furtherance thereof." *Roe*, 68 F.3d at 40. "Probable cause" in this context requires the party seeking disclosure to show "that a prudent person [would] have a reasonable basis for believing that the objective of the client's communication with the attorney was to further a fraudulent scheme." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-cv-4921 (PGG) (KHP), 2021 WL 1930294, at *3 (S.D.N.Y. May 13, 2021) (quoting *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426–27 (S.D.N.Y. 2013)) (quotation marks omitted). "Significantly, with respect to the second prong of the test, the Second Circuit has stressed that 'the exception applies only when the court determines that the client communication . . . in question was *itself* in furtherance of the crime or fraud' and 'where there is probable cause to believe that the *particular* communication with counsel . . . was *intended* in some way to facilitate or to conceal the criminal activity.'" *New York*, 2021 WL 2850631, at *8 (quoting *Roe*, 68 F.3d at 40). "That is, to warrant disclosure of otherwise protected communications, a party must show a purposeful nexus, that the communications were *made with an intent to further* the crime or fraud. Mere relevance or temporal proximity does not suffice." *Id.* (cleaned up); *accord In re 650 Fifth Ave. & Related Props.*, No. 08-cv-10934 (KBF), 2013 WL 3863866, at *2 (S.D.N.Y. July 25, 2013).

II.   Application

Applying these principles to the remaining sealed documents in dispute, the Court concludes as follows.

The Court begins with those documents that must be unsealed in their entirety or near-entirety in light of Defendants' concessions:

- **Exhibit 23** shall be unsealed consistent with the Second Circuit's mandate. *Suber*, 2023 WL 115631, at *5.

- **Exhibit 13(A)** shall be unsealed because Defendants no longer identify any confidential information contained therein. *See* Defs.' Ltr. 3 (proposing limited redactions for Exhibits 13(B) and (C), but identifying no redactions in 13(A)).

- Defendants no longer identify privileged information in **Exhibit 26**, contending instead that it contains "third parties' personal and financial information." *Id.* at 2. They request an opportunity to propose limited redactions to protect those third parties' privacy. *Id.* Because the privacy interests of third parties can justify maintaining documents under seal even where the presumption of public access attaches, *see United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995); *United States v. Kakkera*, No. 22-cr-398-2 (GHW), 2023 WL 4624681 (S.D.N.Y. July 19, 2023); *Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-cv-9439 (PKC), 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020), Defendants' request to propose *limited* redactions to protect such privacy interests is GRANTED.

Defendants also now concede that significant portions of **Exhibit 24** can be unsealed, although they propose substantial redactions "of attorney client privileged information as well as information they contend Ms. Suber had an independent duty to keep confidential." Defs.' Ltr. 2–3; *see* Dkt. No. 170-1. The proposed redactions, however, do not specify which passages are purportedly protected by the attorney-client privilege, and which are purportedly protected by Plaintiff's ethical obligations to protect client confidential information.

Although there is overlap between these concepts, "[t]he attorney-client privilege and the duty to preserve client confidences and secrets are not co-extensive." *Bernstein*, 814 F.3d at 145 (cleaned up); *see Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 188 F.R.D. 189, 199 (S.D.N.Y. 1999) ("American law distinguishes between the lawyer's obligation of confidentiality

and the evidentiary privilege for confidential attorney-client communications."). "The broader ethical duty to preserve a client's confidences, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." *Bernstein*, 814 F.3d at 145 (cleaned up). Notably, "the Second Circuit has expressed doubt that th[is] 'broader ethical duty to maintain client confidences should be treated identically to . . . the narrower and more venerable attorney-client privilege' such that the duty to maintain client confidences overrides the presumption of access to judicial documents." *Haider v. Geller & Co.*, 457 F. Supp. 3d 424, 429 (S.D.N.Y. 2020) (quoting *Bernstein*, 814 F.3d at 145). At a minimum, *Bernstein* makes clear that in order to justify sealing, there must be a showing that the purportedly confidential client information "is likely to be embarrassing or detrimental to the client if disclosed," and that a "mere naked conclusory statement that publication will injure" the client does not suffice. 814 F.3d at 145 (cleaned up).

Defendants' filings fail to identity with any specificity what information contained in the disputed exhibits would be detrimental to them, or how it would be detrimental, and amount to little more than the "naked conclusory statement[s]" that *Bernstein* rejected in the context of a sealing dispute. Given that, and given the Second Circuit's focus on the attorney-client privilege in remanding to the Court, *Suber*, 2023 WL 11563, at *5, the Court hereby rejects Defendants' efforts to maintain documents under seal insofar as they rely on Plaintiff's duty of confidentiality, as distinct from the attorney-client privilege.

Nevertheless, with respect to Exhibit 24, the Court will allow Defendants the opportunity to propose more limited redactions to the extent they are justified by the attorney-client privilege.

Next, **Exhibit 15** and **Exhibit 32** shall remain under seal because they are not judicial documents to which a presumption of public access attaches. "[T]he Court of Appeals has made

10

it crystal clear that the universe of documents that can be considered 'judicial' is not limitless." *Giuffre v. Maxwell*, No. 15-cv-7433 (LAP), 2020 WL 133570, at *4 (S.D.N.Y. Jan. 13, 2020) (citing *Amodeo*, 71 F.3d at 1048; *Newsday LLC v. County of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013)). "The mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019) (cleaned up). Plaintiff has filed a voluminous array of exhibits in this case of varying degrees of relevance to her claims, notwithstanding the fact that the litigation never progressed beyond the pre-answer motion stage. Neither Exhibit 15—which consists of a single, brief, cryptic email—nor Exhibit 32—a letter drafted by Plaintiff well after the events underlying her claims—were in fact relied upon by Court in adjudicating the parties' pre-answer motions, nor did they have any "tendency to influence" the Court's ruling on the parties' motions, *Brown*, 929 F.3d at 49 (emphasis omitted), nor would access to them "materially assist the public in understanding the issues before the" Court, *Newsday*, 730 F.3d at 167. *See Newsday*, 730 F.3d at 166–67 (considering "the degree of judicial reliance on the document in question and the relevance of the document's specific contents to the nature of the proceeding" to conclude that the document at issue was not a judicial document). And, of course, "[t]he mere fact that a dispute exists about whether a document should be sealed or disclosed . . . cannot ipso facto create a presumption of access." *Id.* at 167.

That leaves **Exhibits 10, 13(B), 13(C), and 22**, which the Court concludes are judicial documents. Defendants contend that these documents should remain under seal because they contain information protected by the attorney-client privilege, although Defendants concede that Exhibits 13(B) and (C) also contain non-privileged material and propose more limited redactions. As the Court previously explained, the record supports a determination that an

attorney-client relationship existed "between the parties," *Suber*, 2022 WL 2078197, at *3, including, most prominently, VVP Services, the entity at which Plaintiff was employed as deputy general counsel, SAC ¶ 55; Dkt. No. 78-1 ¶ 7; Dkt. No. 78-2 ¶ 11.  Plaintiff's primary argument to the contrary is that the existence of the fraudulent conspiracy she alleges means "that, in fact, no attorney-client relationship could have been formed with any of Defendants."  Pl.'s Unsealing Mem. 6.  Plaintiff cites no authority for this proposition, which the Court rejects substantially for the reasons stated by Defendants.  *See* Defs.' Unsealing Opp'n 6–7*; cf. United States v. Zolin*, 491 U.S. 554, 562 (1989) ("The attorney-client privilege must necessarily protect the confidences of wrongdoers . . . .").

     Plaintiff's allegations of fraud may, of course, be relevant to her invocation of the crime-fraud exception to the attorney-client privilege.  But having reviewed the remaining documents at issue, the Court concludes that Plaintiff has not met her burden to establish the applicability of the crime-fraud exception.  Even assuming Plaintiff has demonstrated probable cause of the existence of a fraud, Plaintiff falls short at the second prong of the applicable test, as the Court is unable to conclude that "the client communication[s] . . . in question w[ere] *[themselves]* in furtherance of the crime or fraud" or that "there is probable cause to believe that the *particular* communication[s] with counsel . . . w[ere] *intended* in some way to facilitate or to conceal the criminal activity." *New York*, 2021 WL 2850631, at *8 (cleaned up); *see United States v. Nunez*, No. 12-cr-778-2, 2013 WL 4407069, at *4 (S.D.N.Y. Aug. 16, 2013) ("The Second Circuit has made clear that 'the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime,' but rather it 'applies only when the court determines that the client communication . . . in question was *itself* in furtherance of the crime.'" (quoting *Roe*, 68 F.3d at 40)); *cf. Zolin*, 491 U.S. at 562–63

(explaining that the crime-fraud exception is only applicable "where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing*" (citation omitted)).

Having said that, the Court concludes that (1) the December 5, 2017 10:50 a.m. email contained on p. 2 of Exhibit 10; (2) Exhibit 13(C); and (3) the November 29, 2017 email excerpted on both pages of Exhibit 22 are not protected by the attorney-client privilege because they are not attorney-client communications for which the predominant purpose was "to render or solicit legal advice." *Erie*, 473 F.3d at 420. Accordingly, these portions of these documents must be unsealed. The Court concludes the attorney-client privilege protects the remaining information in Exhibits 10 and 22, as well as the information encompassed by Defendants' proposed redactions in Exhibit 13(B).

## CONCLUSION

To summarize, within **one week of the date of this Memorandum & Order**,

- Defendants shall file unredacted copies of **Exhibits 13(A), 13(C),** and **23,** on the public docket;
- Defendants shall file **Exhibit 13(B)** on the public docket with redactions as described in Defendants' May 1, 2023 letter, Defs.' Ltr. 3;
- Defendants shall file **Exhibit 10** on the public docket with redactions to all but the December 5, 2017 10:50 a.m. email;
- Defendants shall file **Exhibit 22** on the public docket with redactions to all of page 2 except the November 29, 2017 email;
- Defendants shall file their proposed redactions under seal and a letter on the public docket justifying such proposed redactions for:
    - **Exhibit 24** with proposed redactions to attorney-client privileged information; and
    - **Exhibit 26** with proposed redactions to protect the privacy interests of third parties;
- **Exhibits 15** and **32** shall remain under seal.

And within **two weeks of the date of this Memorandum & Order**,

- Plaintiff may file a letter opposing any proposed redactions to **Exhibits 24** and **26**.

13

SO ORDERED.

Dated: July 27, 2023
       New York, New York

_____
ALISON J. NATHAN
United States Circuit Judge,
sitting by designation